

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO. 2016-12534

**SECTION:**

**DIVISION:**

**VITA C. CHENET**

**VERSUS**

**COLGATE-PALMOLIVE CO., ET AL**



**SECTION 6**

FILED: _____    _____

                                                    **DEPUTY CLERK**

CHELSEY RICHARD NAPOLEON

**ORIGINAL PETITION FOR DAMAGES**

402 CIVIL COURTS BUILDING

NOW COMES Petitioner VITA C. CHENET, by and through undersigned counsel, to respectfully

NEW ORLEANS, LA 70112

allege the following:

504 - 407 - 0000

1.    Made Petitioner herein is:

          Receipt Date      12/21/2018 11:53:00 AM

     A.   **VITA C. CHENET,** an adult resident citizen and domiciliary of the Parish of Jefferson, State

          Register          CDC Cash Register 1

          of Louisiana.

          Case Number       2018 - 12536

2.    Defendants, identified below, are either foreign corporations licensed to do and/or doing business

          Grand Total       $ 990.50

in the State of Louisiana, or domestic corporations licensed to do and doing business in the State of

          Balance Due       $ 0.00

Louisiana and are liable unto the Petitioner for the claims asserted herein:

          Check #  1254  $990.50

**MINER/MANUFACTURER/ SELLER/DISTRIBUTOR/SUPPLIER DEFENDANTS:**

     A.   **COLGATE-PALMOLIVE CO.**
          A Delaware Corporation, with a registered agent for service of process in the State of
          Louisiana, which may be at: C.T. Corporation, 3867 Plaza Tower Drive, Baton Rouge, LA
          70816.

     B.   **CYPRUS AMAX MINERALS CO., Individually, D/B/A and as Successor in Interest**
          **to, Amoco Minerals Co., Cyprus Mines Co., Cyprus Mines Corp., Cyprus**
          **Georesearch Co., Charles Mathieu Inc., American Talc Company Inc., Metropolitan**
          **Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.**
          A Colorado Corporation, which may be served via the Louisiana Long Arm Statute on its
          registered agent for service of process at 9100 East Mineral Circle, Englewood, CO 80112.

     C.   **CYPRUS MINES CORP., Individually, D/B/A and as Successor in Interest to, Sierra**
          **Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus**
          **Georesearch Co., a wholly-owned subsidiary of Cyprus Mines Corp. and successor to**
          **Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu, Inc.),**
          **American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products**
          **Co. Inc., and Resource Processors Inc.**
          A Colorado Corporation, which may be served via the Louisiana Long Arm Statute on its
          registered agent for service of process at 9100 East Mineral Circle Englewood, CO 80112

     D.   **IMERYS TALC AMERICA, INC.,  Individually and as Successor in Interest to and**
          **f/k/a Luzenac America, Inc., and f/k/a Luzenac Inc.(f/k/a Rio Tinto America Inc.,**
          **Luzenac America Inc., RTZ America Inc., and Cyprus Mines Corp. (d/b/a Cyprus**
          **Industrial Minerals Co. and Cyprus Talc Corporation), individually and as successor**
          **to Imerys Talc Ohio Inc. (f/k/a Luzenac Canfield Inc.), Imerys Talc Delaware Inc.**
          **(f/k/a U.S. Talc Company), Imerys Talc Vermont Inc. (f/k/a Windsor Minerals Inc.,**
          **Cyprus Windsor Minerals Corp. and Vermont Talc Inc.), Imerys Talc California Inc.**

1

**EXHIBIT**

**A**
_____

**(f/k/a Luzenac Western Source Corporation), and Cyprus Georesearch Co., a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc., American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.**
A Delaware Corporation, which may be served via the Louisiana Long Arm Statute on its registered agent for service of process: The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

E. **IMERYS USA INC., Individually, as dominating parent of and as Successor in Interest to Imerys Refractory Minerals USA Inc., Imerys Carbonates USA Inc., Imerys Clays Inc., Imerys Minerals California Inc., S&B Industrial Minerals North America Inc., Kentucky Tennessee Clay Co., and Imerys Talc America Inc.**
A Delaware Corporation, which may be served through its registered agent for service of process in Louisiana: CT Corporation System at 3867 Plaza Tower Dr. Baton Rouge, LA 70816

F. **IMERYS TALC VERMONT INC. Individually and f/k/a Windsor Minerals Inc., Cyprus Minerals Windsor Corp., Windsor Minerals Inc., and Eastern Magnesia Talc Co. Inc.**
A Vermont Corporation, which may be served through the Louisiana Long Arm Statute on its registered agent for service of process: CT Corporation System at 17 GW Tatro Dr. Jeffersonville, VT 05464.

G. **JOHNSON & JOHNSON CONSUMER COMPANIES, INC.**
A New Jersey Corporation, which may be served via the Louisiana Long Arm on its registered agent for service of process: Steven M. Rosenberg, One Johnson & Johnson Plaza, New Brunswick, N.J. 08933.

H. **JOHNSON & JOHNSON**
A New Jersey Corporation, which may be served via the Louisiana Long Arm on its registered agent for service of process: Steven M. Rosenberg, One Johnson & Johnson Plaza, New Brunswick, N.J. 08933.

I. **K&B LOUISIANA CORP., D/B/A RiteAid Corporation, Individually and as Successor in Interest to Katz & Bestoff, Inc.**
A Louisiana Corporation, which may be served via its registered agent for service of process in Louisiana: CT Corporation, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

3. Orleans Parish is the proper venue for this matter based on the following:

A. Orleans Parish is a proper venue for this matter pursuant to La. Stat. Ann. §22:1269B(1) because the events, accident, or injury occurred in Orleans Parish. Further, Orleans Parish is the proper venue for this matter pursuant to La. C.C.P Art. 74 because Orleans Parish is where wrongful conduct occurred and where Petitioner's damages were sustained. Specifically, over the course of many years as detailed below, while living in Orleans Parish, Petitioner Vita C. Chenet used, applied and was exposed to asbestos-containing/contaminated cosmetic talcum powder and/or asbestos-containing/contaminated cosmetic talcum powder products, which she purchased from various locations in Orleans Parish, including but not limited to locations in Orleans Parish which were/are owned and/or operated by Defendant K&B Louisiana Corp.

B. Orleans Parish is the proper venue for this matter pursuant to Louisiana Code of Civil Procedure Article 42(2) because Defendant K&B LOUISIANA CORPORATION DBA RITEAID CORP is a domestic corporation licensed to do and doing business in this State

and has designated as its primary business office and/or primary place of business in East Paton Rouge Parish of the State of Louisiana.

C. The action is within the jurisdiction of the court and Orleans Parish is proper venue pursuant to Louisiana Civil Code of Civil Procedure Article 42, 73, and 74 because each of the Defendants listed herein contributed to Vita C. Chenet's use and application of PRODUCTS and her subsequent contraction of malignant pleural mesothelioma, and therefore each are solidarily liable to Petitioner with each of their Co-Defendants, including Defendant K&B, a domestic corporation with its principle place of business as East Baton Rouge Parish, Louisiana.

4.      The damages sought by Petitioner, exclusive of interest and costs, exceed the minimum jurisdictional limits of the court.

## BACKGROUND

5.      On or about October 26, 2018, Petitioner, Mrs. Vita C. Chenet, was diagnosed with malignant pleural mesothelioma, which was due to and a consequence of her exposure to asbestos as set forth herein. Petitioner suffered exposure to asbestos and asbestos-containing/contaminated talcum powder products mined, designed, manufactured, sold, supplied, and/or distributed by the defendants, from which exposure ultimately resulted in her contraction of malignant mesothelioma.  As a direct and proximate result of the delictual conduct of the defendants, Mrs. Chenet contracted mesothelioma and has suffered physically, financially, mentally and emotionally as a result thereof.

6.      In connection with the Petitioner's hygienic use, dusting, application and inhalation of various asbestos containing/contaminated cosmetic talcum powder products from approximately 1934 through 2016, Petitioner Vita C. Chenet suffered exposure to asbestos and asbestos-containing/contaminated talcum powder products, which were mined, manufactured, supplied, processed, imported, converted, compounded and/or sold to Petitioner, which were then regularly applied, used, and inhaled by her when she was a resident of and domiciled in the Parish of Orleans in the State of Louisiana, and other locations in the State of Louisiana.

7.      Petitioner was regularly and directly exposed to asbestos-containing/contaminated cosmetic talc products from infancy (1934) through approximately 2016, at the home of her parents and her own home(s), all in the State of Louisiana.  Throughout this time period, on a regular and daily basis Petitioner applied, used, inhaled and was exposed to asbestos-containing/contaminated talcum powders, which were mined, manufactured, supplied, processed, imported, converted, compounded and/or sold by the all of the Defendants named in Paragraph 2 above.

8.      Petitioner Vita C. Chenet, for a period of many years, from approximately the 1934 through 2016, was exposed on a daily basis to Defendant's asbestos containing/contaminated talc products through the

normal use of these products, which included the hygienic dusting and powdering of herself, and her children.

9.  Throughout this period of time, Mrs. Vita C. Chenet was exposed on numerous occasions to asbestos containing/contaminated talc products, which were mined, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, tested, purchased, promoted and/or sold by the Defendants.

10.  Before, during, and even after Mrs. Vita C. Chenet's exposure period, each of the Defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, supplied, sold and/or held themselves out as the manufacturer of asbestos and asbestiform-containing/contaminated talc products.

11.  As a direct and proximate result of Petitioner Vita C. Chenet's unavoidable exposure to, and resultant inhalation and ingestion of asbestos containing/contaminated talcum powder fibers; contaminant elements therein including (but not limited to) asbestos and asbestiform substances; and dust(s) relating thereto as contained within and emanating from the Defendants' asbestos and asbestiform containing/contaminated talc products, Petitioner developed malignant pleural mesothelioma, and has suffered and will continue to suffer the effects attendant thereto, as a direct and proximate result of the unreasonably dangerous and defective nature of the Defendant's asbestiform and asbestos-containing/contaminated talcum powder/products, and the Defendants' wrongful and negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of their talcum powder products.

12.  Petitioner alleges that each and every exposure to Defendants' asbestiform and asbestos containing/contaminated talc products caused or contributed to her injuries, such that the Defendants' are liable jointly, severally and *in solido* unto Petitioner for her resultant diagnosis of malignant pleural mesothelioma, and for all damages alleged herein.

13.  Before and during Petitioner's exposure period, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, supplied, sold and/or held themselves out as the manufacturer of asbestos-containing/contaminated talc products for personal hygienic use in and around the State of Louisiana, where Petitioner was exposed to these asbestos-containing/contaminated products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

14.  When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, lung cancer and cardiac disease, among other diseases and injuries. Each of the Defendants knew, or should have known through industry and medical studies, as well as statutes and regulations, the existence of which were unknown to Petitioner, of the health hazards

4

inherent in the asbestos-containing/contaminated products they were manufacturing, mining, selling, purchasing, distributing or supplying.  Instead of warning Petitioner and the general public about these dangers, the Defendants collectively ignored and/or failed to disseminate such information, and/or condoned such failure to notify, in order to enhance profits and sell asbestos containing/contaminated talc products and to avoid litigation by those who were injured from asbestos inhalation. Those Defendants who have engaged in intentional misconduct, fraud or concealment or conspiracy to defraud or conceal the dangers of asbestos, including asbestos-containing/contaminated talc products, are specifically set forth and their conduct specifically described hereinafter in the section which, in addition to negligence or strict liability, identifies other forms of specified misconduct as set out herein and similarly identified by name of the particular Defendant(s) above the specific counts of misconduct.

15.     As a direct and proximate result of having inhaled, ingested or otherwise been exposed to asbestos as described in the preceding paragraphs, Petitioner contracted malignant pleural mesothelioma, an incurable and terminal cancer, a cause being asbestos exposure, and suffers physically, financially, mentally and emotionally as direct result of that condition.  Mrs. Chenet was diagnosed with mesothelioma on or around October 26, 2018.

16.     Because of the latency period prior to the manifestation of asbestos injuries, and because of the active concealment by some defendants of the causes and effects of exposure to asbestos, Petitioner did not know nor could she have reasonably known of her injuries, or that her injuries were caused by her exposure to asbestos until recently, and not more than one year preceding the filing of this Petition for Damages.

## FACTS AND ALLEGATIONS SPECIFIC TO THE "TALC DEFENDANTS"
### (All Defendants)

17.     Talc is a magnesium trisilicate and is mined from the earth. Talc is an inorganic mineral. Additionally, Talc is (historically and currently) regularly contaminated with asbestos and/or asbestiform contaminants that distinctly give rise to an increased risk in the potential for certain cancers, including but not limited to mesothelioma.

18.     Talc is the primary ingredient in talcum powders. The specific talc products at issue herein were manufactured by the Talc Defendants, and include Cashmere Bouquet, J&J Baby Powder, J&J Shower-to-Shower, and/or K&B talc products. These products are composed primarily of talc, but also have, and have historically had asbestos and/or asbestiform minerals as contaminant content.

19.     At all pertinent times, a feasible alternative to these talc products has existed. Cornstarch is an organic carbohydrate that is quickly broken down by the body with no known health effects. Cornstarch powders have been sold and marketed for the same uses with nearly the same effectiveness.

20.     For many decades, the Talc Defendants have continually advertised and marketed talc as safe for human use.  At all pertinent times, the aforementioned Talc Defendants have collectively been in the

business of mining, refining, producing and distributing talcum powder for use in a variety of talcum powder based products in all States of the United States, including the State of Louisiana.

21.    Some of these Talc Defendants have supplied their customers with material safety data sheets for talc. These material safety data sheets are supposed to convey adequate health and warning information to its customers.

22.    Historically, "Johnson's Baby Powder" has been a symbol of freshness, cleanliness, and purity. During the time in question, the Johnson & Johnson Defendants advertised and marketed this product as the beacon of "freshness" and "comfort", eliminating friction on the skin, absorbing "excess wetness" helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild". The Johnson & Johnson Defendants compelled women through advertisements to dust themselves with this product to mask odors. The bottle of "Johnson's Baby Powder" specifically targets women by stating, "For you, use every day to help feel soft, fresh, and comfortable."

23.    For all relevant time periods, the Johnson & Johnson Defendants advertised and marketed the product "Shower to Shower" as safe for use by women as evidenced in its slogan "A sprinkle a day keeps odor away", and through advertisements such as "Your body perspires in more places than just under your arms. Use SHOWER to SHOWER to feel dry, fresh, and comfortable throughout the day." And "SHOWER to SHOWER can be used all over your body." At all pertinent times, Johnson & Johnson was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing these talc products. At all pertinent times, Johnson & Johnson regularly transacted, solicited, and conducted business in all States of the United States, including the State of Louisiana.

24.    Defendant Colgate-Palmolive manufactured Cashmere Bouquet talcum powder from approximately 1871 through and including 1985, and continued marketing the product until at least 1995, which is approximately when the United States Environmental Protection Agency reported that the presence of asbestos in talc makes it a human carcinogen. Based on present information and belief, the talc Defendant Colgate-Palmolive used in its Cashmere Bouquet talcum powder came from three different sources: the Val Chisone mine in Italy; a mine in Regal, North Carolina; and the Willow Creek mine, in Montana. Any individual using and/or applying Colgate's Cashmere Bouquet talc from 1948 to 1977 would have used talc that originated from one or all of those locations. Numerous releaseability tests have been performed with Cashmere Bouquet's talcum powder, and those tests have repeatedly demonstrated that significant concentrations of airborne asbestos, including the same three asbestos mineral species that have been historically identified, chrysotile, anthophyllite, and tremolite asbestos, are released when these historic products were used/applied in the same manner as they were used/applied by Petitioner, Vita Chenet.

25.    From infancy (1934) through approximately 2016, Petitioner Vita Chenet used, applied and inhaled/ingeseted the Defendants talc products (Cashmere Bouquet, Johnson & Johnson's Baby Powder, Johnson & Johnson's Shower-to-Shower, and/or K&B talcum powder) on a daily basis to dust herself for

hygiene purposes. This was an intended and foreseeable use of the Talc Defendants' products based on the advertising, marketing, and labeling of their talc products, including but not limited to Cashmere Bouquet, K&B talcum powder, J&J Baby Powder, and/or J&J Shower-to-Shower talc products.

26.    It has been known since the early 1940's that a considerable amount of the talc mined in the United States had tremolite asbestos in it. In 1976, an independent study tested a variety of consumer products labeled as talc or talcum powder, including body powders, baby powders, facial talcums, and a pharmaceutical talc.  Of the approximately twenty talc products tested, half of them were found to contain tremolite and anthophyllite asbestos, most of which were asbestiform (a known carcinogen).   The talc products that were tested, include some of the same talc products manufactured, produced, sold, distributed and/or supplied by the Talc Defendants.

27.    In 1993, the United States National Toxicology Program published a study on the toxicity of non-asbestiform talc and found clear evidence of carcinogenic activity. Talc was found to be a carcinogen, with or without the presence of asbestos-like fibers.

28.    In response to the United States National Toxicology Program's study, the Cosmetic Toiletry and Fragrance Association (CTFA) formed the Talc Interested Party Task Force (TIPTF). Defendants Johnson & Johnson, Inc., Johnson & Johnson Consumer Companies, Inc. and Luzenac (Imerys) were members of the CTFA and were the primary actors and contributors of the TIPTF. The stated purpose of the TIPTF was to pool financial resources of these companies in an effort to collectively defend talc use at all costs and to prevent regulation of any type over this industry. The TIPTF hired scientists to perform biased research regarding the safety of talc, members of the TIPTF edited scientific reports of the scientists hired by this group prior the submission of these scientific reports to governmental agencies, members of the TIPTF knowingly released false information about the safety of talc to the consuming public, and used political and economic influence on regulatory bodies regarding talc. All of these activities have been well coordinated and planned by these companies and organizations over the past four (4) decades in an effort to prevent regulation of talc and to create confusion to the consuming public about the true hazards of talc relative to cancer.

29.    In approximately 2006, the Canadian government under The Hazardous Products Act and associated Controlled Products Regulations classified talc as a  "D2A", "very toxic", "cancer causing" substance under its Workplace Hazardous Materials Information System (WHMIS). Asbestos is also classified as "D2A".

30.    In 2006, Defendant Imerys Talc America Inc. began placing a warning on its Material Safety Data Sheets (MSDS) it provided to the Johnson & Johnson Defendants regarding the talc it sold to them to be used in their respective talc products. These MSDSs not only provided the warning information about the IARC classifications but also including warning information regarding "States Rights to Know" and warning information about the Canadian Government's "D2A" classification of talc as well. These

7

warnings were inadequate, and ultimately were not passed on by the Defendants, and consequently did not reach consumers and end user's of the Defendant's talc products, including Petitioner Vita Chenet.

31.     All of these Talc Defendants had a duty to know and warn about the hazards associated with the use of their talc products.

32.     The Talc Defendants failed to inform its customers and end users of their talc products of known catastrophic health hazards associated with the use of its products.

33.     In addition, the Talc Defendants procured and disseminated false, misleading, and biased information regarding the safety of their talc product to the public and used influence over governmental and regulatory bodies regarding talc with or without asbestos or asbestiform mineral content.

34.     As a direct and proximate result of the Talc Defendants' calculated and reprehensible conduct, Petitioner was injured and has suffered and will continue to suffer damages, namely by her diagnosis of mesothelioma, and resulting damages, as fully alleged herein.

35.     Each of the Defendants knew or should have known through industry and medical studies, the existence of which were unknown to Petitioner, of the health hazards inherent in the their talc products that they were selling and/or using. Instead of warning Petitioner and the general public about these dangers, the Talc Defendants ignored or actively concealed such information, or condoned such concealment, in order to sell their talc product and to avoid litigation by those who were injured from use of their talc products. Those Talc Defendants who have engaged in intentional misconduct, fraud or concealment or conspiracy to defraud or conceal the dangers of these their talc products are specifically set forth and their conduct specifically described hereinafter in the section which, in addition to negligence or strict liability, identifies other forms of specified misconduct as set out herein.

36.     At all pertinent times, certain Supplier/Seller/Miner Talc Defendant's, including but not limited to **CYPRUS AMAX MINERALS CO.**, Individually, D/B/A and as successor in interest to, Amoco Minerals Co., Cyprus Minerals Co., Cyprus Mines Corp., Cyprus Georesearch Co., Charles Mathieu Inc., American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.; **CYPRUS MINES CORP.**, Individually, D/B/A and as Successor in Interest to, Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co., a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.; **IMERYS TALC AMERICA, INC.**, Individually and as Successor in Interest to and f/k/a Luzenac America, Inc., and f/k/a Luzenac Inc.(f/k/a Rio Tinto America Inc., Luzenac America Inc., RTZ America Inc., and Cyprus Mines Corp. (d/b/a Cyprus Industrial Minerals Co. and Cyprus Talc Corporation), individually and as successor to Imerys Talc Ohio Inc. (f/k/a Luzenac Canfield Inc.), Imerys Talc Delaware Inc. (f/k/a U.S. Talc Company), Imerys Talc Vermont Inc. (f/k/a Windsor Minerals Inc., Cyprus Windsor Minerals Corp. and Vermont Talc Inc.), Imerys Talc California Inc. (f/k/a

Luzenac Western Source Corporation), and Cyprus Georesearch Co., a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc., American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.; **IMERYS USA INC.,** Individually, as dominating parent of and as successor in interest to Imerys Refractory Minerals USA Inc., Imerys Carbonates USA Inc., Imerys Clays Inc., Imerys Minerals California Inc., S&B Industrial Minerals North America Inc., Kentucky Tennessee Clay Co., and Imerys Talc America Inc.; and **IMERYS TALC VERMONT INC.** Individually and f/k/a Windsor Minerals Inc., Cyprus Minerals Windsor Corp., Windsor Minerals Inc., and Eastern Magnesia Talc Co. Inc. mined and sold/supplied talc to certain Seller/Manufacturer/Distributor Talc Defendants, including but not limited to **COLGATE-PALMOLIVE CO., JOHNSON & JOHNSON CONSUMER COMPANIES INC., K&B LOUISIANA CORP., and JOHNSON & JOHNSON,** which they (collectively and individually) knew and/or should have known was then being packaged and sold to consumers as a finished and refined cosmetic talc products, including but not limited to Cashmere Bouquet, J&J Baby Powder, K&B Talcum Powder, and/or J&J Shower-to-Shower talc products. Further, all of these Talc Defendants knew or and/or should have known that consumers of these talcum powder products were using it to hygienically powder themselves

37.    At all pertinent times, the Talc Defendants had a duty to exercise reasonable care to consumers, including Petitioner herein, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling and/or sale of the talc products.

38.    At all pertinent times, the Talc Defendants knew or should have known that their products were or may be contaminated with asbestos, and that the use of talcum powder based products contaminated with asbestos and/or asbestiform minerals significantly increases the risk of developing various cancers, including but not limited to mesothelioma, based upon scientific knowledge dating back to the 1960s and well prior.

39.    At all pertinent times, the Talc Miner/Supplier/Seller Defendants named in Paragraph 2 above, **CYPRUS AMAX MINERALS CO.,** Individually, D/B/A and as successor in interest to, Amoco Minerals Co., Cyprus Minerals Co., Cyprus Mines Corp., Cyprus Georesearch Co., Charles Mathieu Inc., American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.; **CYPRUS MINES CORP.,** Individually, D/B/A and as Successor in Interest to, Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co., a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.; **IMERYS TALC AMERICA, INC.,** Individually and as Successor in Interest to and f/k/a Luzenac America, Inc., and f/k/a Luzenac Inc.(f/k/a Rio Tinto America Inc., Luzenac America Inc., RTZ America Inc., and Cyprus Mines Corp. (d/b/a Cyprus Industrial Minerals Co. and Cyprus Talc Corporation), individually and as successor to Imerys Talc Ohio Inc. (f/k/a Luzenac Canfield

Inc.), Imerys Talc Delaware Inc. (f/k/a U.S. Talc Company), Imerys Talc Vermont Inc. (f/k/a Windsor Minerals Inc., Cyprus Windsor Minerals Corp. and Vermont Talc Inc.), Imerys Talc California Inc. (f/k/a Luzenac Western Source Corporation), and Cyprus Georesearch Co., a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc., American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.; **IMERYS USA INC.**, Individually, as dominating parent of and as successor in interest to Imerys Refractory Minerals USA Inc., Imerys Carbonates USA Inc., Imerys Clays Inc., Imerys Minerals California Inc., S&B Industrial Minerals North America Inc., Kentucky Tennessee Clay Co., and Imerys Talc America Inc.; and **IMERYS TALC VERMONT INC.** Individually and f/k/a Windsor Minerals Inc., Cyprus Minerals Windsor Corp., Windsor Minerals Inc., and Eastern Magnesia Talc Co. Inc. knew and/or should have known that the Talc Seller/Manufacturer/Distributor Defendants, including but not limited to **COLGATE-PALMOLIVE CO., JOHNSON & JOHNSON CONSUMER COMPANIES INC., K&B LOUISIANA CORP., and JOHNSON & JOHNSON**, were not providing, and to this day still have not provided, warnings to consumers, regarding the asbestos and asbestiform contamination of their talcum powder products, nor of the risk of various cancers, including but not limited to mesothelioma, posed by the use of talc contained therein.

40.     At all pertinent times, the Talc Miner/Supplier/Seller Defendants listed above were negligent in providing talc to the Talc Seller/Manufacturer/Distributor Defendants, including when they knew or should have known that the talc would be used in talc products, without adequately taking steps to ensure that ultimate consumers of the talc products, including Petitioner, received the information that the Talc Defendants possessed on the carcinogenic properties of talc, including its risk of causing various types of cancer, whether contaminated with asbestos (and/or asbestiform mineral content) or not.

41.     All of these Talc Defendants are liable to Petitioner Vita Chenet as professional vendors of these talc products and as such, because of the Talc Defendants' size, volume of business and merchandising practices, knew or should have known of the defects of the products they sold, and are strictly liable and negligent for failing to warn the users of potential health hazards from the use of said products.

42.     Further, collectively, all of the Talc Defendants knew the specific use for which their talc/talcum products would be used and/or incorporated into other talcum products, and had unique expertise into the physical and chemical properties of their specially refined talcum products and their health hazards. The Talc Defendants unsafely marketed their talcum products as uniquely safe and non-carcinogenic, at times when the Talc Defendants knew or should have known such claims were false and/or without adequate scientific support. As a consequence of the Talc Defendants' collective misrepresentations, customers and ultimate users of the products (users, including Petitioner Vita Chenet) were deceived as to the true nature and extent of the health hazards posed by the Talc Defendants' talc products. The Talc Defendants are liable to Petitioner, Vita Chenet, for the suffering and injuries from a disease, namely, mesothelioma, caused

by her foreseeable use of the Talc Defendants' asbestiform and asbestos-containing/contaminated talc products, because the Talc Defendants' fraudulent misrepresentations were detrimentally relied upon by Petitioner, Vita Chenet, who used, applied, inhaled/ingested, and was exposed to their finished asbestos-contaminated/containing cosmetic talcum powder products.

43.     Finally, the Talc Defendants are liable to Petitioner because they knew or should have known that their talcum products, which they sold and supplied, were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence.  This negligence was the cause of Petitioner Vita Chenet's injuries including, but not limited to, mesothelioma and other ill health effects.

**COUNT ONE:**
**STRICT LIABILITY and NEGLIGENCE**
**(All Defendants)**

44.     The Defendants named in Paragraph 2 above were all miners, manufacturers, sellers, users, distributors and/or suppliers of asbestos-containing/contaminated talc products, and were engaged in the business of using, manufacturing or facilitating the manufacture of said asbestiform and asbestos-containing/contaminated talc products, or representing themselves as manufacturers of said asbestiform and asbestos-containing/contaminated talc products, or were professional vendors of said asbestiform and asbestos-containing/contaminated talc products, which were expected to and did reach retailers/suppliers in and around the State of Louisiana, including, but not limited to, Defendant K&B Louisiana Corporation, from which Petitioner Vita Chenet, purchased various asbestos-containing/contaminated talc products as enumerated above, throughout the relevant time period.

45.     These asbestos-containing/contaminated talc products, which were manufactured, sold, distributed, supplied, produced, mined and/or designed by the Defendants were defective, unreasonably dangerous, and unreasonably dangerous per se to Petitioner who was an intended and foreseeable user and who was exposed to these asbestos-containing/contaminated talc products.  These defects include, without limitation, the following:

A.     The mining, manufacture, sale, supply, distribution and use of products, including talc/talc products, that are unreasonably dangerous, or unreasonably dangerous per se;

B.     The mining, manufacture, sale, supply, and distribution of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to the Petitioner who would be and was foreseeably exposed to them in as a result of their intended use;

C.     Lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

D.  Lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

E.  Failure of defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

F.  Failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users;

G.  Failure to truthfully report, adequately report, or EVER report the results of product testing and/or medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

H.  Failure to properly design these products when the nature of the product did not require use of asbestos mineral(s), or where alternate, equally suitable substances were readily available, such as cornstarch;

I.  Defects in the composition and construction of these products;

J.  Failure to recall these products that they mined, manufactured, sold, distributed and/or supplied;

K.  Failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

L.  Over-warranting the safety of these products that were manufactured, sold, supplied and/or distributed by Defendants; and

M.  Liability to Petitioner in strict liability for things in their garde, possession, custody or control, pursuant to article 2317 of the Louisiana Code of Civil Procedure, which have caused harm to Petitioner.

N.  Other defects or fault as may be revealed in discovery or at trial.

46.   The defective conditions of defendants' asbestos-containing/contaminated talc products and fault, as noted above, are a proximate cause of Petitioner's injuries complained of herein.

47.   Petitioner also alleges that each and every one of the foregoing defendants were also negligent in engaging in the substandard conduct enumerated above, and that this negligence was also a proximate cause of Petitioner's injuries.

**COUNT TWO:**
**SELLERS/DISTRIBUTORS/MANUFACTURERS/SUPPLIERS**
**(All Defendants)**

48.   Against _all_ of the Defendants listed in Paragraph 2 above, including Defendant K&B Louisiana Corporation, Petitioner asserts causes of action in strict liability for the manufacture and sale of unreasonably dangerous asbestos-containing/contaminated (talc) products, thereby substantially contributing to Petitioner's asbestos exposure and resultant mesothelioma. At all pertinent times, Defendant K&B Louisiana Corporation ("K&B") purchased, sold, manufactured, repackaged, rebranded, distributed

and held itself out as the manufacturer of a variety of talc products, which Petitioner Vita Chenet, purchased, used, applied and inhaled/ingested, causing Petitioner's injuries and illnesses.

49.   As to all of these Defendants, Petitioner asserts causes of action in negligence for the sale and supply of asbestos, asbestiform and asbestos-containing/contaminated (talc) products and failure to warn, thereby substantially contributing to Petitioner's asbestos exposure and resultant mesothelioma.

50.   As to all of these Defendants, Petitioner asserts causes of action in strict products liability as commercial suppliers/sellers/distributors/manufacturers of asbestos-containing/contaminated talc products, thereby substantially contributing to Petitioner's asbestos exposure and resultant mesothelioma.

51.   As to all of these Defendants, Petitioner asserts causes of action in negligence for the lack of reasonable care in the handling and/or use of asbestos-containing/contaminated products in the vicinity of Petitioner and failure to warn, and strict *garde* liability for damages caused by products within their care, custody, and control, thereby substantially contributing to Petitioner's asbestos exposure and resultant mesothelioma.

52.   These Defendants sold, and some even continue to sell to this day, asbestiform and asbestos-containing/contaminated talcum powder products in and around the State of Louisiana, including (but, unfortunately, not just limited to) the entire relevant time period of Petitioner's use and exposure. These Defendants knew or should have known they were selling unreasonably dangerous products and failed to warn the buyer/user about those dangers. In addition, these Defendants were and are liable as "professional vendors" of asbestos-containing/contaminated products. In addition, these Defendants are liable for "manufacturing" asbestos containing/contaminated products, including but not limited to Cashmere Bouquet, Johnson & Johnson Baby Powder, K&B Talcum Powder, and J&J Shower-to-Shower talcum powders, and Petitioner was exposed to said products. Said products were unreasonably dangerous *per se*, unreasonably dangerous in normal use, and dangerous in design or composition. In addition, said products were unreasonably dangerous because these Defendants failed to properly warn persons, including Petitioner, of those dangers. Petitioner's normal use of these products, including the daily hygienic dusting and powdering of herself, which had the direct result of releasing into the atmosphere, and within Petitioner's breathing zone, dangerous levels of asbestos dust and fibers. Consequently, Petitioner was exposed to, and inhaled, said asbestos dust and fibers, sustaining injury to her lungs, culminating in development of mesothelioma.

53.   In addition, these Defendants held out to the public, by their representations and packaging, including the use of boxes, cartons or bags bearing the name or logo of their company, that they were the manufacturers of the asbestos-containing/contaminated talc products. Consequently, under Louisiana law, these Defendants are deemed to be "manufacturers" of the asbestos-containing/contaminated talc products they sold, and are strictly liable for the injury they caused to Petitioner.

54.     The asbestos-containing/contaminated talc products manufactured, distributed, and/or sold by these Defendants were unreasonably dangerous in normal use, were defective in design or composition, were dangerous *per se* and/or were dangerous because of a lack of a proper warning regarding their dangers.  In addition, these Defendants made various representations and warranties regarding the safety, efficacy or desirability of using their asbestos-containing/contaminated talc products.  These Defendants are liable for breaching these warranties because, in fact, their asbestos-containing/contaminated talc products are extremely dangerous and are not particularly useful due to the availability of asbestos-free cornstarch substitute products.  Further, these Defendants failed to properly warn the Petitioner of the dangers associated with the use of such products, including the risk of developing mesothelioma, cancer and other lung diseases.

55.     These Defendants are strictly liable for manufacturing and selling dangerous and defective products.  Alternatively, they are liable for their negligence in manufacturing and selling dangerous and defective asbestos-containing/contaminated talc products and for failing to properly warn regarding their dangers.

56.     As a result of the defective and unreasonably dangerous condition, design and composition of the asbestos-containing/contaminated talc products manufactured, distributed and/or sold by these Defendants, Petitioner Vita Chenet was exposed to and caused to inhale and/or ingest and/or absorb, from infancy (1934) through approximately 2016, dangerous amounts of asbestos dust and asbestos fibers.  As a direct result, she developed mesothelioma from which she currently suffers, and will continue to suffer from.

57.     The aforementioned acts and omissions of the defendants, for which they are solidarily and jointly liable, under a strict liability or negligence standard, proximately caused the Petitioner's injuries, damages and losses.

### COUNT THREE:
### CIVIL CONSPIRACY
### (All Defendants)

58.     The Talc Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Petitioner's injuries, disease, and/or illnesses by exposing the Petitioner to harmful and dangerous asbestiform and asbestos-containing/contaminated talc products. Defendants further knowingly agreed, contrived, confederated and conspired to deprive the Petitioner of the opportunity of informed free choice as to whether to use their talc products or to expose her to said dangers.  The Talc Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to their asbestiform and asbestos-containing/contaminated talc products.

59.     In furtherance of said conspiracies, the conspiracy Talc Defendants performed the following overt acts:

        A.      For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly

indicated that use by persons resulting from ordinary and foreseeable use of their talcum products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

B.     Despite the medical and scientific data, literature, and test reports possessed by and available to the Talc Defendants, these Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

     i.     Withheld, concealed and suppressed said medical information regarding the increased risk of cancer from Petitioner (as set out in the "Facts & Allegations Regarding certain Talc Defendants' section of this pleading); In addition, on July 27, 2005, certain Talc Defendants as part of the TIPTF corresponded and agreed to edit and delete portions of scientific papers being submitted on their behalf to the United States Toxicology Program in an attempt to prevent talc from being classified as a carcinogen;

     ii.    Some of the Talc Defendants through the TIPTF instituted a "defense strategy" to defend talc at all costs. Admittedly, the Defendants through the TIPTF used their influence over the NTP Subcommittee, and the threat of litigation against the NTP to prevent the NTP from classifying talc as a carcinogen on its 10th RoC. According to the Defendants, "...we believe these strategies paid off:"

     iii.   Caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of certain cancers which the Talc Defendants knew were incorrect, incomplete, outdated, and misleading. Specifically, the Defendants through the TIPTF collectively agreed to release false information to the public regarding the safety of talc on July 1, 1992; July 8, 1992; and November 17, 1994. In a letter dated September 17, 1997, certain Talc Defendants were criticized by their own Toxicology consultant for releasing this false information to the public, yet nothing was done by certain Talc Defendants to correct or redact this public release of knowingly false information.

C.     By these false and fraudulent representations, omissions, and concealments, the Talc Defendants intended to, and did in fact, induce Petitioner to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose her to the dangers inherent in the use of and exposure to their asbestos-containing/contaminated talc products.

60.     Petitioner reasonably and in good faith relied upon the aforementioned false and fraudulent representations, omissions, and concealments made by the conspiracy between and amongst the Talc Defendants regarding the nature of their asbestos-containing/contaminated talc products, and was deprived of an opportunity to make an informed decision concerning her use of, exposure to and contact with, the Talc Defendants' asbestos containing/contaminated talc products.

61.     These Talc Defendants, whether acting individually or in concert with others violated their duty of care owed to the Petitioner, or otherwise engaged in culpable activity against the Petitioner.

62.     The actions and inactions of the Talc Defendants independently, and/or collectively, constitutes a pattern or practice of intentional wrongful conduct and/or malice resulting in damage and injury to Petitioner.

63.     By reason of the above, the Talc Defendants are jointly and severally liable to Petitioner for the injuries and damages sustained by virtue of industry-wide or 'enterprise liability.'

64.     As a direct, foreseeable and proximate result of the Talc Defendants' breaches of implied warranties, including the Warranty against Redhibitory Defects, Petitioner Vita Chenet purchased, applied, inhaled and used, as aforesaid, their asbestos-containing/contaminated talc products, which directly and

proximately caused her to develop mesothelioma; Ms. Chenet has and will continue to incur medical bills, conscious pain and suffering, and other damages for the duration of her life.

**COUNT FOUR:**
**REDHIBITION**
**(All Defendants)**

65.    The Defendants asbestos-containing/contaminated talc products contained a vice or defect which rendered it useless or its use so inconvenient that buyers would not have purchased it.

66.    The Defendants sold and promoted their asbestos-containing/contaminated talc products, which defendants placed into the stream of commerce. Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520. The asbestos-containing/contaminated talc products sold and promoted by Defendants, possessed a redhibitory defect because they were not manufactured and marketed in accordance with industry standards and/or were (and some still are) unreasonably dangerous, as described above, which rendered their asbestos-containing/contaminated talc products useless or so inconvenient that it must be presumed that a buyer would not have bought the them had she known of the defect. Pursuant to La. C.C. art. 2520, Petitioner is entitled to obtain a rescission of the sale of the subject product.

67.    Alternatively, the Defendants asbestos-containing/contaminated talc products possessed a redhibitory defect because the they were not manufactured and/or marketed in accordance with industry standards and/or are/were unreasonably dangerous, as described above, which diminished the value of the their talc products so that it must be presumed that a buyer may still have bought it, but for a lesser price.

68.    Defendants are liable as bad faith sellers for selling a defective product with knowledge of the defect, and thus, are liable to Petitioner for the price of the subject product, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the subject product, namely their asbestos-containing/contaminated talc products, and attorneys fees. As a manufacturer of these products, under Louisiana law, Defendants are deemed to know that their asbestos-containing/contaminated talc products possessed a redhibitory defect. La. C.C. art. 2545.

**PUNITIVE DAMAGES**
**(Colgate-Palmolive Co., Cyprus Amax Minerals Co., Cyprus Mines Corp.,  Imerys Talc America, Inc., Imerys USA, Inc., Imerys Talc Vermont, Inc., Johnson & Johnson Consumer Companies Inc., Cyprus Amax Minerals Co., and Johnson & Johnson)**

69.    The aforementioned Talc Defendants, namely  **Colgate-Palmolive Co., Cyprus Amax Minerals Co., Cyprus Mines Corp.,  Imerys Talc America, Inc., Imerys USA, Inc., Imerys Talc Vermont, Inc., Johnson & Johnson Consumer Companies Inc., Cyprus Amax Minerals Co., and Johnson & Johnson** acted maliciously, wantonly and recklessly, and demonstrated a conscious indifference and utter disregard of the health, safety and rights of others, by acting with an improper motive or vindictiveness and with outrageous or oppressively intentional misconduct, such actions representing a high degree of immorality and showing wanton dishonesty as to imply a criminal indifference to civil obligations, in one or more of the following ways:

A.    Defendants knew of the unreasonably high risk of cancer posed by asbestos and asbestos-containing/contaminated talc products before manufacturing, marketing, distributing

and/or selling their asbestos-containing/contaminated talc products, yet purposefully proceeded with such action;

B. Despite their knowledge of the high risk of cancer associated with exposure to and use of the asbestos and asbestos-containing/contaminated talc products, Defendants affirmatively minimized this risk through marketing and promotional efforts and product labeling.

C. Through asbestos and asbestos-containing/contaminated talc products, yet purposefully proceeded with such action; to the safety of users of the asbestos and asbestos-containing/contaminated talc products, including Petitioner. Defendants' conduct, as described herein, knowing the dangers and risks of asbestos and asbestos-containing/contaminated talc products, yet concealing and/or omitting this continues to be outrageous because of Defendants' evil motive or a reckless indifference to the safety of users of their asbestos-containing/contaminated talc products.

70. As a direct and proximate result of the willful, wanton, evilly motivated and/or reckless conduct of the Defendants, an award of punitive damages is warranted.

WHEREFORE, Petitioner prays for a judgment for punitive damages against the Defendants in a fair and reasonable amount sufficient to punish these Defendants and deter them and others from engaging in similar conduct in the future, costs expended herein, and such further and other relief as the Court deems just and appropriate.

## DAMAGES

71. The conduct of the Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from asbestos-related mesothelioma of Petitioner , and of the following general and special damages, including, to-wit:

A. All past, present and future medical costs or expenses related thereto;

B. All past, present and future mental suffering, anguish, and pain;

D. Fear of dying;

E. All past, present and future physical pain and suffering;

F. Loss of quality and enjoyment of life

G. Punitive damages;

H. Special Damages;

I. All other forms of relief provided by law or equity together with interest from the date of judicial demand until paid, and costs of these proceedings.

**WHEREFORE**, Petitioner prays that after due proceedings had, that there be judgment herein in favor of Petitioner, and against the Defendants, jointly, severally and/or *in solido* for all damages, costs, judicial interest from date of judicial demand, and for such other and further relief, both at law and in equity, to which Petitioner may show herself justly entitled.

Respectfully submitted,

THE CHEEK LAW FIRM LLC

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

Lindsey A. Cheek, LA Bar No.34484
Bridget B. Truxillo LA Bar No. 36982
Rubi L. Brown LA Bar No.36398
650 Poydras Street, Suite 2310
New Orleans, LA 70130
Tel: (504) 304-4333
Fax: (504) 324-0629
LCheek@thecheeklawfirm.com
BTruxillo@thecheeklawfirm.com
RBrown@thecheeklawfirm.com

-And-


**MARTZELL, BICKFORD & CENTOLA P.C.**
SCOTT R. BICKFORD, T. A (#1165)
SPENCER R. DOODY (#27795)
338 Lafayette Street
New Orleans, Louisiana 70130
Tel: (504) 581-9065
Fax: (504)581-7635


**COUNSEL FOR PETITIONER VITA C. CHENET**

## SERVICE INSTRUCTIONS AND IDENTIFICATION OF DEFENDANTS

**PLEASE SERVE THE FOLLOWING DEFENDANTS WITH PETITIONER'S ORIGINAL PETITION FOR DAMAGES:**

**A. COLGATE-PALMOLIVE CO.**
A Delaware Corporation, with a registered agent for service of process in the State of Louisiana, which may be served at:
C.T. Corporation,
3867 Plaza Tower Drive,
Baton Rouge, LA 70816.

**B. CYPRUS AMAX MINERALS CO., Individually, D/B/A and as successor in interest to, Amoco Minerals Co., Cyprus Minerals Co., Cyprus Mines Corp., Cyprus Georesearch Co., Charles Mathieu Inc., American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.;**
A Colorado Corporation, which may be served via the Louisiana Long Arm Statute at 9100 East Mineral Circle,
Englewood, CO 80112.

**C. CYPRUS MINES CORP., Individually, D/B/A and as Successor in Interest to, Sierra Talc Company, Amoco Minerals Co., Cyprus Industrial Minerals Co., and Cyprus Georesearch Co., a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc. (d/b/a Charles Mathieu & Co. and Chas. Mathieu Inc.), American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc.;**
A Colorado Corporation, which may be served via the Louisiana Long Arm Statute at 9100 East Mineral Circle
Englewood, CO 80112

**D. IMERYS TALC AMERICA, INC., Individually and as Successor in Interest to and f/k/a Luzenac America, Inc., and f/k/a Luzenac Inc.(f/k/a Rio Tinto America Inc., Luzenac America Inc., RTZ America Inc., and Cyprus Mines Corp. (d/b/a Cyprus Industrial Minerals Co. and Cyprus Talc Corporation), individually and as successor to Imerys Talc Ohio Inc. (f/k/a Luzenac Canfield Inc.), Imerys Talc Delaware Inc. (f/k/a U.S. Talc Company), Imerys Talc Vermont Inc. (f/k/a Windsor Minerals Inc., Cyprus Windsor Minerals Corp. and Vermont Talc Inc.), Imerys Talc California Inc. (f/k/a Luzenac Western Source Corporation), and Cyprus Georesearch Co., a wholly-owned subsidiary of Cyprus Mines Corp. and successor to Charles Mathieu Inc., American Talc Company Inc., Metropolitan Talc Company Inc., Imperial Products Co. Inc., and Resource Processors Inc. ;**
A Delaware Corporation, which may be served through via the Louisiana Long Arm Statute on its registered agent for service of process: The Corporation Trust Company, Corporation Trust Center,
1209 Orange St.
Wilmington, DE 19801.

**E. IMERYS USA INC., Individually, as dominating parent of and as successor in interest to Imerys Refractory Minerals USA Inc., Imerys Carbonates USA Inc., Imerys Clays Inc., Imerys Minerals California Inc., S&B Industrial Minerals North America Inc., Kentucky Tennessee Clay Co., and Imerys Talc America Inc.;**
A Delaware Corporation, which may be served through its registered agent for service of process in Louisiana:
CT Corporation System at
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**F. IMERYS TALC VERMONT INC. Individually and f/k/a Windsor Minerals Inc., Cyprus Minerals Windsor Corp., Windsor Minerals Inc., and Eastern Magnesia Talc Co. Inc.**
A Vermont Corporation, which may be served through the Louisiana Long Arm Statute on its registered agent for service of process:
CT Corporation System at
17 GW Tatro Dr.
Jeffersonville, VT 05464

19

G. **JOHNSON & JOHNSON CONSUMER COMPANIES, INC.**
A New Jersey Corporation, which may be served via the Louisiana Long Arm on its registered agent for service of process:
Steven M. Rosenberg,
One Johnson & Johnson Plaza,
New Brunswick, N.J. 08933.

H. **JOHNSON & JOHNSON**
A New Jersey Corporation, which may be served via the Louisiana Long Arm on its registered agent for service of process:
Steven M. Rosenberg,
One Johnson & Johnson Plaza,
New Brunswick, N.J. 08933.

I. **K&B LOUISIANA CORPORATION (D/B/A RITEAID CORPORATION), Individually and as Successor in Interest to Katz & Bestoff, Inc.**
A Louisiana Corporation, which may be served via its registered agent for service of process in Louisiana:
CT Corporation,
3867 Plaza Tower Drive
Baton Rouge, LA 70816.

20

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

FILED
JAN 17 2019
CLERKS OFFICE
CIVIL DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DOCKET NO. 2018-12536          SECTION: 6          DIVISION: L

VITA C. CHENET

VERSUS

COLGATE-PALMOLIVE CO, ET AL

FILED:_____

CHELSEY RICHARD NAPOLEON
DEPUTY CLERK
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
NEW ORLEANS, LA ROOM 402
1-504-407-0000

Receipt Date          1/22/2019 12:07:00 PM
Receipt Number        737319
Cashier               cwaughn
Register              CDC Cashier Register

Case Number           2018-12536
Grand Total           $ 103.00
Amount Received        $ 103.00
Balance Due           $ 0.00
Over Payment          $ 0.00

Payment/ Transaction List

| Item | Charged | Paid | Bal |
| --- | --- | --- | --- |
| Tax Fees | $65.00 | $65.00 | $0.00 |
| Exhibits (Paper) | $38.00 | $38.00 | $0.00 |

### JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED TRIAL AND INCORPORATED MOTION TO CONTINUE HEARING

MAY IT PLEASE THE COURT:

NOW INTO COURT, through undersigned counsel, come Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively, the "Johnson & Johnson Defendants"), who appear solely for the purpose of opposing the pending motion and reserve all objections, exceptions, and defenses. For the reasons more fully set forth *infra*, the Johnson & Johnson Defendants oppose Plaintiff's motion for expedited trial pursuant to Louisiana Code of Civil Procedure Article 1573 and move to continue the hearing due to Plaintiff's failure to properly serve the Rule to Show Cause upon Defendants.

### FACTS AND SUMMARY OF THE ARGUMENT

Plaintiff Vita C. Chenet filed this action against the Johnson & Johnson Defendants and various other defendants on December 14, 2018, alleging that she developed mesothelioma as a result of exposure to asbestos-containing materials mined, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, tested, purchased, or promoted by the Defendants. Petition, ¶¶ 8-11. Plaintiff filed the instant motion alleging that she is entitled to preference in scheduling trial because she is 84 years old, she has been diagnosed with mesothelioma, and, in general, people suffering from mesothelioma are not likely to survive beyond six months. None of the defendants have been served with notice of the hearing on this motion via the Civil Sheriff or via certified mail, and the record does not show any returns on service.

1

VERIFIED

This is a complex products liability case asserting novel claims of asbestos-related disease, and pursuant to Louisiana Code of Civil Procedure 1573, Plaintiff's request for preferential trial setting must be tempered by the "interests of justice." While the Johnson & Johnson Defendants are sympathetic to Plaintiff's alleged medical condition and diagnosis, this case is still in its infancy. Defendants have not filed answers yet, and the Johnson & Johnson Defendants were just recently served with the petition on January 4, 2019 – less than two weeks ago.   Moreover, Plaintiff has not provided the Johnson & Johnson Defendants with any authorizations for obtaining medical and other records.[1]

Accordingly, this case is not ripe for trial setting, and Plaintiff's request for expedited trial setting should be denied for the reasons set forth herein.

## LAW AND ARGUMENT

### A.  Plaintiff Failed to Properly Serve Defendants With the Rule to Show Cause, and Any Judgment Resulting Therefrom Will Be Null

None of the defendants have been properly served with notice of the hearing on this motion. The Rule to Show Cause does not request service on the defendants via the Civil Sheriff. None of the defendants have been served via the Civil Sheriff or via certified mail, and the record does not show any returns on service.

Article 1313 requires that "if a pleading or order sets a court date, then service shall be made either by registered or certified mail or as provided in Article 1314, or by actual delivery by a commercial courier." La. C.C.P. Art. 1313 (C). Under Article 1314, electronic service is *not* proper service of an Order setting a court date.

"The obvious purpose of Articles 1313 and 1314 is to fulfill the constitutional requirements of due process notice." *Adair Asset Mgmt., LLC/US Bank v. Honey Bear Lodge, Inc.*, 2012-1690 (La. App. 1 Cir. 2/13/14), 138 So.3d 6, 11. Defendants will have been deprived of due process if the hearing proceeds on January 25, 2019.

Failure to effect proper service pursuant to Articles 1313 and 1314 renders a judgment or ruling based on improper service *null*. *Id.* at 11; *see also In re 601 Canal St. Tr.*, 2003-0481 (La. App. 4 Cir. 4/30/03), 847 So.2d 650, 653, citing *White v. White*, 398 So.2d 1257, 1259 (La. App.

---

[1] Plaintiff's motion incorrectly states that medical authorizations have been provided to all Defendants in this action.

4 Cir. 1981). The hearing on Plaintiff's motion should be continued until proper service can be effected. Otherwise, any ruling on the motion for expedited trial will be null.

### B. Plaintiff Misstates the Applicable Law

While Defendants are sympathetic to Plaintiff's alleged medical condition and diagnosis, Plaintiff's age and diagnosis, standing alone, do not entitle her to a preferential trial setting. Louisiana Code of Civil Procedure Article 1573 requires that the prerequisites of age and diagnosis be balanced against the interests of justice. Plaintiff ignores Louisiana Code of Civil Procedure Article 1571, which provides that district court rules *"shall not allow the assignment of ordinary proceedings for trial except after answer filed."* No answers have been filed into the record yet, and service of process has not been effected on a number of the Defendants.

Plaintiff also ignores Civil District Local Rule 9.14, which prohibits a case from being set for trial *until after all exceptions have been disposed of, all defendants have filed answers, and all discovery and depositions have been completed,* or, alternatively, that a sufficient amount of discovery has been completed to allow the parties to select a trial date and pretrial cutoffs. The Johnson & Johnson Defendants were just recently served with the petition on January 4, 2019 – less than two weeks ago. Discovery is in its infancy, as Plaintiff has not yet provided the Johnson & Johnson Defendants with any authorizations for obtaining medical and other records.

Plaintiff glosses over the language in Article 1573 providing that a preference in scheduling may be granted only *"if the court finds that the interests of justice will be served by granting such preference"* (emphasis added). The case that plaintiff cites to support her argument states that the "trial court has the discretion to set the trial date." *Curole v. Avondale Indus., Inc.*, 2001-1808 (La. App. 4 Cir. 10/17/01), 798 So.2d 319, 321 (emphasis added). The facts of *Curole* are not on point here. In *Curole*, the party opposing expedited trial had months during which it could have undertaken discovery. *Id.* Here, Plaintiff only filed her lawsuit one month ago, Plaintiff's deposition was just recently conducted, no physicians have been deposed, and to date, Plaintiff has not furnished the necessary authorizations for the Johnson & Johnson Defendants to commence medical records collection.

Plaintiff also suggests that a one sentence writ grant from the Louisiana Supreme Court in *Jasmin v. Huntington Ingalls, Inc.*, 2017-0715 (La. 5/19/17), 219 So. 3d 334, supports her

position, but she omits key aspects of *Jasmin*'s procedural history. There, a living mesothelioma plaintiff moved for a preferential trial setting on December 6, 2016, and the trial court denied the motion, setting trial for June 11, 2018, about a year and a half after the plaintiff filed her motion.[2] The Louisiana Supreme Court granted the plaintiff's writ application and, based on the facts of that case, directed the trial court to schedule the trial no later than "early 2018", *i.e.*, approximately 13 to 16 months after the plaintiff's motion for preferential trial was filed. *Jasmin v. Huntington Ingalls, Inc.*, 2017-0715 (La. 5/19/17), 219 So. 3d 334. The Supreme Court did not provide reasons for its ruling. *Id.* Thus, *Jasmin* does not require a trial setting any sooner than approximately mid-February to mid-April 2020.

Article 1573 requires a party seeking preferential trial setting on the basis of terminal illness to "present[] to the court medical documentation that the party suffers from an illness or condition because of which [she] is not likely to survive beyond six months[.]" However, while Plaintiff attached a pathology report confirming her mesothelioma diagnosis and a 2013 affidavit from Dr. Arnold Brody *from another case* stating that, in his opinion, most mesothelioma patients survive for nine to twelve months after initial diagnosis, she did not attach any evidence, such as an affidavit from her treating physician or a medical report stating her prognosis, to support her claim that she is not likely to survive beyond six months. Dr. Brody's affidavit, which is inadmissible hearsay pursuant to Louisiana Code of Evidence Article 804(B)(1), does not address *Plaintiff's* diagnosis or anticipated life expectancy *in this case* and is, therefore, irrelevant.

### C. It is Premature to Set This Case for Trial

The case is not ready to be set for trial. This is not a soft tissue injury fender bender case. Rather, it is a complex products liability case where the alleged injury is mesothelioma. Extensive medical records acquisition and fact and expert discovery is necessary, and motion practice will be significant. Trial is expected to last 4-8 weeks.

Plaintiff claims to have developed mesothelioma as a result of alleged exposure to asbestos-containing materials mined, produced, processed, designed, manufactured, marketed,

---

[2] *See* Exhibit A, Transcript from February 13, 2017 hearing in *John J. Jasmin, Sr. v. Huntington Ingalls, Inc., et al.*, Docket No. 37,877, 23rd Judicial District Court for the Parish of St. James, State of Louisiana, p. 36, 37.

supplied, delivered, distributed, tested, purchased, or promoted by the Defendants. Petition, ¶¶ 8-11. This is not, however, a typical asbestos case. A typical asbestos case involves alleged exposure to products known to contain asbestos because asbestos was an intended component of the product. Plaintiff's allegations in this case are different. Plaintiff claims that she used talcum powder products and that some of those products may have contained asbestos-contaminated talc. Talc is not asbestos. Thus, unlike a traditional asbestos case, Plaintiffs must establish not only the traditional element of exposure to Defendants' products but also that those products were actually contaminated with asbestos.

The petition contains 71 paragraphs spanning over 18 pages, and several paragraphs make specific references to scientific studies, research, and literature, including allegations about regulatory classifications, that will require research and analysis by retained experts.  Given the sheer volume of discovery, including medical records acquisition, company document production, depositions of company witnesses, and expert discovery involved in such a complex case, an expedited trial setting is neither practical nor in the interest of justice. Specifically, once medical authorizations are furnished by Plaintiff, medical records collection is likely to span six to twelve weeks, not the least because Plaintiff alleges exposure occurred from 1934 through 2016 – an 82-year timespan. Petition, ¶ 6.  Collection of medical records in this complicated product liability case is the fundamental first step that must be undertaken before depositions of fact witnesses and treating physicians proceed. Moreover, because the issue of medical cause will be subject to significant scientific and expert challenges by Defendants, significant time is anticipated for the development of expert witnesses and other expert discovery.

While Plaintiff claims to want her day in court, the Johnson & Johnson Defendants respectfully submit that they are entitled to an opportunity to engage in meaningful discovery in this complex products liability case prior to setting the trial date. Pursuant to Article 1573, Local Rule 9.14, and in the interest of justice, Plaintiff's request for expedited trial should be denied.

## CONCLUSION

It is contrary to the interest of justice to subject Defendants to an expedited trial date that does not allow adequate time to conduct the substantial amount of discovery that will be required to properly prepare for trial. The Johnson & Johnson Defendants respectfully request that

Plaintiff's motion for expedited trial be continued without date due to lack of valid service of the Rule to Show Cause setting this motion for hearing.  Alternatively, if the Court elects to set a trial date, the Johnson & Johnson Defendants respectfully request that a realistic date be chosen that allows the parties adequate time to complete meaningful discovery in this complex case.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

BY:

KIM E. MOORE (La. Bar No. 18653)
JOHN W. SINNOTT (La. Bar No. 23943)
LEILA A. D'AQUIN (La. Bar No. 18884)
MEERA U. SOSSAMON (La. Bar No. 34797)
CLAIRE A. NOONAN (La. Bar No. 35940)
CARLOS A. BENACH (La. Bar No. 36797)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone:  (504) 310-2100
Fax: (504) 310-2101

*Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all counsel of record by facsimile, electronic mail and/or by United States mail, properly addressed, postage prepaid on this the 17th day of January 2019.

Claire A. Noonan

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

6



CLERKS OFFICE
CIVIL DISTRICT COURT

JJ021317.txt

1

2

3                          23RD JUDICIAL DISTRICT COURT

4                            PARISH OF ST. JAMES

5                             STATE OF LOUISIANA

6

7

8

9

10    JOHN J. JASMIN, SR.              )
                                       )
11    VERSUS                           ) NO. 37,877
                                       ) DIVISION "D"
12    HUNTINGTON INGALLS,              )
      INC., ET AL                      )
13                                     )

14

15

16

17                              THIS MATTER came up on Rule
to                              Show Cause for Expedited Trial at the St.
18                              James Parish Courthouse, Convent, Louisiana,
                                before Honorable Jessie M. LeBlanc, judge
19                              presiding, on Monday, February 13, 2017,
                                commencing at 9:00 a.m.
20

21

22

23

24
      B E F O R E :             Gina Boudreaux Lee
25                              Certified Court Reporter
                                State of Louisiana
26

27

28

29                                     EXHIBIT

                      Page 1           A

26

JJ021317.txt

30
31
32

1

1                                APPEARANCES:
2

3

4    For the Plaintiff, John J. Jasmin, Sr.:

5              MESSRS. BARON & BUDD, PC
               Attorneys at Law
6              1515 Poydras Street, Suite 1400
               New Orleans, Louisiana 70112
7              BY:    DAVID R. CANNELLA, ESQ.

8    For the Defendant, Huntington Ingalls, Incorporated:

9              MESSRS. BLUE WILLIAMS, LLP
               Attorneys at Law
10             3421 North Causeway Boulevard
               Suite 900
11             Metairie, Louisiana 70002
               BY:    PATRICK K. SHOCKEY, ESQ.
12

13   For the Defendant, Avondale Shipyard Company:

14             MESSRS. LEE, FUTRELL & PERLES, LLP
               Attorneys at Law
15             201 St. Charles Avenue, Suite 4120
               New Orleans, Louisiana 70170
16             BY:    RICHARD M. PERLES, ESQ.

17

18   For the Defendant, Amchem, Incorporated and Union
                 Carbide Corporation:

19             MESSRS. KUCHLER, POLK, SCHELL,
               WEINER & RICHESON, LLC
20             Attorneys at Law
               1615 Poydras Street, Suite 1300
21             New Orleans, Louisiana 70112
               BY:    PERREYCLEAR S. LEE, ESQ.
22

23   For the Defendant, McCarty Corporation:

24             MESSRS. SIMON, PERAGINE,
               SMITH & REDFEARN, LLP
25             Attorneys at Law
                            Page 2

```
                         JJ021317.txt
                    1100 Poydras Street, 30th Floor
 26                 New Orleans, Louisiana  70163
                    BY:    JANICE M. CULOTTA, ESQ.
 27

 28    For the Defendant, Insurers of B&B, Hopeman Interests:

 29                 MESSRS. COURINGTON, KIEFER & SOMMERS, LLC
                    Attorneys at Law
 30                 616 Girod Street
                    New Orleans, Louisiana  70130
 31                 BY:    JAMES M. MATHERNE, ESQ.

 32
```

```
  1    For the Defendant, Taylor-Seidenbach, Inc.:

  2                 MESSRS. HAILEY, MCNAMARA,
                    HALL, LARMANN & PAPALE, LLP
  3                 Attorneys at Law
                    1 Galleria Boulevard, Suite 1400
  4                 Metairie, Louisiana  70001
                    BY:    RICHARD J. GARVEY, JR., ESQ.
  5

  6

  7    For the Defendant, Goulds Pumps, LLC:

  8                 MESSRS. MORGAN, LEWIS & BOCKIUS, LLP
                    Attorneys at Law
  9                 1000 Louisiana Street, Suite 4000
                    Houston, Texas  77002
 10                 BY:    LAUREN A. MCCULLOCH, ESQ.

 11

 12    For the Defendant, Reilly-Benton Company, Inc.:

 13                 MESSRS. WILLINGHAM, FULTZ & COUGILL, LLP
                    Attorneys at Law
 14                 8550 United Plaza Boulevard
                    Suite 702
 15                 Baton Rouge, Louisiana  70809
                    BY:    JAMIE M. ZANOVEC, ESQ.
 16

 17    For the Defendant, Anco Insulations, Inc.:

 18                 MESSRS. PUGH, ACCARDO, HAAS,
                    RADECKER & CAREY, LLC
 19                 Attorneys at Law
                    1100 Poydras Street, Suite 3200
 20                 New Orleans, Louisiana  70163-0200
                    BY:    DONNA M. YOUNG, ESQ.
 21
                            Page 3
```

JJ021317.txt

22

23  For the Defendant, Riley Power, Inc.:

24                    MESSRS. DEUTSCH, KERRIGAN & STILES, LLP
                      Attorneys at Law
25                    755 Magazine Street
                      New Orleans, Louisiana  70130
26                    BY:    BARBARA B. ORMSBY, ESQ.

27

28  For the Defendant, Crane Co.:

29                    MESSRS. DOGAN & WILKINSON, PLLC
                      Attorneys at Law
30                    3900 North Causeway Boulevard
                      Suite 1200
31                    Metairie, Louisiana  70002
                      BY:    ALETA W. BARNES, ESQ.

32

3

1  For the Defendant, Lamorek Insurance Company:

2                    MESSRS. TAYLOR, WELLONS,
                     POLITZ & DUHE, APLC
3                    Attorneys at Law
                     1515 Poydras Street, Suite 1900
4                    New Orleans, Louisiana  70112
                     BY:    ADAM D. deMAHY, ESQ.

5

6

7  ALSO PRESENT:

8                    ERIN GROS, COURT'S CLERK

9

10

11

12

13                                          Gina Boudreaux Lee,
                                            Certified Court
Reporter
14

15

16

Page 4

29

JJ021317.txt

```
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
```

4

```
1                              INDEX
        Page
2                          WITNESSES
3    (NONE)
4
5
6
7
8
9
10
11
12
```

Page 5

JJ021317.txt

```
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
```

5

```
1
2
3
4
5
6
```

INDEX

EXHIBITS

Page

"Plaintiff 1"
15

"Plaintiff 2"
15

Medical Record of John J.
Jasmin, Sr.

Copy of Birth Certificate
and/or Driver's License of
John J. Jasmin, Sr.

Page 6

JJ021317.txt

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

6

1          MONDAY, FEBRUARY 13, 2017
2     AT 9:00 A.M. THE HEARING WAS COMMENCED.
              Page 7

JJ021317.txt

3

4

5      THE COURT:

6              John Jasmin, Sr. versus Huntington Ingalls.  Is

7          everybody here on that?

8      MR. CANNELLA:

9              My name is David Cannella.  I'm here for the

10         plaintiff, and I believe everyone is here.  I will make a

11         quick check of my roster.

12     THE COURT:

13             Okay.  And then I'll come back to you, and we'll

14         take you up.

15     MR. CANNELLA:

16             Thank you.

17     THE COURT:

18             Okay.  You're welcome.

19 (RECESS IN THIS MATTER WHILE OTHER MATTERS WERE

20 HEARD.)

21     THE COURT:

22             Let's go back to John Jasmin versus Huntington

23         Ingalls.

24             Were you able to check?

25     MR. CANNELLA:

26             Yes, ma'am, I did check, and it appears that

27         everyone is here.

28     THE COURT:

29             Okay.  Let's go ahead and take that up now.

30 (OFF-THE-RECORD DISCUSSION.)

31     THE COURT:

32             Hang on.  Is Donna Young here?

7

JOHN J  JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
                    Page 8

JJ021317.txt

NO. 37,877

```
1      MS. YOUNG:
2              I'm here.  Thank you, Your Honor.
3      THE COURT:
4              Okay.  All right.  I was just getting a message.
5              Are you all going to designate one person to
6      speak for the defendants?
7      MR. PERLES:
8              I'll be happy to do so, Judge.  I'm Rick Perles --
9      THE COURT:
10             Okay.
11     MR. PERLES:
12             -- for the Avondale interests.  One of our
13     co-counsel, Mr. deMahy went to Donaldsonville, and
14     I know he's on his way.  I don't see him yet.
15     THE COURT:
16             Okay.  If you would like to wait for him, I have
17     several other statuses I can take up before you.
18     MR. CANNELLA:
19             Okay, Your Honor.  Well, and that is the
20     Avondale interest, so --
21     THE COURT:
22             Right.
23     MR. CANNELLA:
24             -- Mr. Perles can speak --
25     THE BAILIFF:
26             Can you keep it down over here?  Ma'am?
27     MR. CANNELLA:
28             -- speak on their behalf.
```

Page 9

JJ021317.txt

29       THE COURT:

30           Okay.

31       MR. PERLES:

32           Why don't we proceed.

8

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,

NO. 37,877

1       MR. CANNELLA:

2           Yes.

3       THE COURT:

4           Okay.  All right.  Thank you.

5           Gina, did they all sign in with you?

6       THE REPORTER:

7           I didn't realize.

8       THE COURT:

9           No?  Okay.

10           Erin is going to bring a legal pad down there

11      and ask everybody to sign in so we'll have it for a

12      minute entry, as well as for the transcript.  Okay?

13           All right.  You may proceed.

14      MR. CANNELLA:

15           Good morning, Your Honor.  My name is David

16      Cannella.  I'm here on behalf of the plaintiff, Mr.

17      Jasmin.  I am moving for an expedited trial setting

18      on the basis that Mr. Jasmin has been diagnosed

19      with a terminal illness, mesothelioma,

20      asbestos-related mesothelioma.  In addition, Mr.

21      Jasmin is 72 years old, so we qualify under the

22      statute, 1573, and we pray that the Court set this

23      matter on an expedited basis such that he may have

Page 10

JJ021317.txt

24          a reasonable expectation to have his day in court
25          before he passes away.
26     THE COURT:
27          Thank you.
28          Mr. Perles?
29     MR. PERLES:
30          Judge, we anticipate that this case will take
31          three weeks to try, so while the judge is considering
32          what the most expeditious date would be to set the

9

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877

1          trial, we would anticipate we need 15 days of trial to
2          complete the matter.
3     THE COURT:
4          Okay. And has the deposition of the plaintiff
5          been taken?
6     MR. PERLES:
7          Yes, it has.
8     THE COURT:
9          Okay.
10    MR. PERLES:
11          That is, I think, about the only thing that has
12          happened in discovery. There is a lot of work to do
13          on this case. Those of us who are familiar with the
14          Avondale based asbestos litigation in Orleans Parish
15          know the drill pretty well. But Mr. Jasmin spent
16          most of his career at Kaiser, which we're less familiar
17          with, so there's a whole body of coworkers and

Page 11

JJO21317.txt

18    products and suppliers which is going to require
19    more discovery than we're used to doing in the
20    Orleans Parish cases, and that's part of the reason
21    we think this will be a longer trial than some others.
22    THE COURT:
23          Okay.  And the petition was filed December 1st,
24    2016, correct?
25    MR. CANNELLA:
26          That is correct, Your Honor.  And, Your Honor,
27    despite what counsel for Avondale is saying, in fact
28    this is actually going to be a more streamline version
29    of the trial because there's only two job sites.  It's
30    very different than most cases where there may be
31    10, 15 different job sites.  It's Avondale and Kaiser
32    Gramercy, and that is it.  And so I would represent

10

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877

1    to the Court that this is going to be actually safe to
2    say 10 trial days, but it's not going to be a
3    three-week trial.
4    THE COURT:
5          Okay.
6    MR. PERLES:
7          Judge, there are 23 defendants.  Issue has not
8    been joined by most parties yet, and believe me,
9    we're not trying to deny Mr. Jasmin his day in court
10   or unduly delay the proceedings.  I just want to give
11   Your Honor a sense of the scope of the litigation.  It's
12   going to take a while for all these parties to present.
          Page 12

JJ021317.txt

13  And even if some of the parties settle because this is

14  under the old law -- it's a virile share liability -- we

15  will have to prove up the fault of any of the settling

16  defendants. So, to the extent that there were

17  witnesses who are going to testify about certain

18  defendants who may have settled out, we're going to

19  have to page, line those depositions and bring them

20  in and present them to the jury anyway. It doesn't

21  really speed up the litigation any if there are

22  settlements because everybody's fault is going to

23  have to be put into the record.

24  THE COURT:

25        Thank you.

26        Anyone else wants to speak with regard to the

27  defendants? Kaiser or anyone? (No response.)

28  Okay.

29        All right. Anything else?

30  MR. CANNELLA:

31        No, ma'am.

32

11

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877

1  THE COURT:

2        Okay.

3  MR. CANNELLA:

4        Thank you.

5  THE COURT:

6        While I am certainly sympathetic to Mr.

                    Page 13

JJ021317.txt

7     Jasmin's illness, his age, and recognizing that his

8     time certainly is limited, and not wanting to deprive

9     him of his day in court, the Court's calendar, one,

10    simply is not -- I recognize that it's supposed to be

11    held in an expedited manner, but for a two-week or

12    three-week trial, it is virtually impossible to do that

13    in a relatively short period of time.  Furthermore, I

14    just think that with the number of defendants that

15    we do have, the discovery that needs to take place,

16    for me to set a trial date at this juncture would be

17    premature to determine that.  I can tell you, looking

18    at my calendar to free up three weeks right now,

19    you're looking at the first part of 2018.  I have a

20    five-week jury trial scheduled in August, a

21    three-week jury trial scheduled in September, and it

22    is jam-packed.

23         What I would like to do is ask that once you've

24    signed in, if you all could discuss amongst

25    yourselves one attorney that can be a contact person

26    for my law clerk, and then that attorney will contact

27    everyone else.  She'll get in touch with plaintiff's

28    attorney, counsel.  We will start looking at some

29    dates that we can possibly work towards with some

30    deadlines as well and certainly try to move it as

31    quickly as we possibly can but without getting ahead

32    of ourselves as well and setting dates, me giving you

12

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,

NO. 37,877

1     three dates and then it's taken away from someone

Page 14

JJ021317.txt

2 else and we're not ready to go.

3   So, again, I fully understand, and as

4 sympathetic as I am, I just don't see where with this

5 many defendants that this can be tried any sooner

6 than probably January of 2018.  But I'm going to ask

7 you to pick someone amongst yourselves.

8 MR. PERLES:

9   I'll volunteer --

10 THE COURT:

11   You'll do it?

12 MR. PERLES:

13   -- for that duty, Judge.

14 THE COURT:

15   All right.  If you would, whenever you sign in,

16 put your e-mail address and your telephone

17 numbers, and then, that way, my law clerk will have

18 it to be able to communicate with all of you.

19 MR. PERLES:

20   Happy to do it.

21 THE COURT:

22   She'll be in touch with you by the end of the

23 week.

24 MR. CANNELLA:

25   Your Honor, I certainly understand and respect

26 Your Honor's ruling.

27 THE COURT:

28   Yes.

29 MR. CANNELLA:

30   The problem is, is that much like the phrase

31 "it's like herding cats," if we don't set the case for

32 trial, it will not get set for trial and Mr. Jasmin will

Page 15

40

JJ021317.txt

13

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877

```
 1              not have his opportunity in court.  So, I'm asking,
 2              and this isn't the type of deal where I'm going back
 3              and I'm saying, "Please reconsider," but I'm saying if
 4              we don't set this, it's not going to get done.  Please.
 5      THE COURT:
 6              You're going to get a trial date set.  That's what
 7              my law clerk's going to be contacting all of you with,
 8              and then I usually back up all of my deadlines from
 9              that trial date.  So, you will get a trial date set.
10              Okay?
11      MR. CANNELLA:
12              Thank you, Your Honor.
13      THE COURT:
14              All right.  Thank you.
15      MR. PERLES:
16              Okay, Judge.
17      THE COURT:
18              And, Mr. Perles, if you all would submit a
19              judgment to the effect of today's ruling as well, just
20              stating that the motion is denied and we will
21              coordinate via e-mail dates and who's designated as
22              the contact person for you.
23      MR. PERLES:
24              Yes, Judge, I'll submit that.
25      THE COURT:
26              Okay.  Thank you.
27      MR. CANNELLA:
```
                              Page 16

JJ021317.txt

28             Your Honor, just for the record --

29    THE COURT:

30             Yes.

31    MR. CANNELLA:

32             -- please note my objection.

14

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,

NO. 37,877

1    THE COURT:

2             Your objection is so noted.

3    MR. CANNELLA:

4             And I would also like to offer, file, and

5        introduce the diagnosing medical showing that he

6        was diagnosed with a terminal illness, and to the

7        extent that it hasn't been done, I'm going to

8        supplement the record with a copy of a birth

9        certificate and/or driver's license to show that --

10    THE COURT:

11             Verify the age?

12    MR. CANNELLA:

13             -- he is over 70 years old.

14    THE COURT:

15             No problem.

16             Any objection to those documents being offered

17        into evidence?

18    MR. PERLES:

19             No.

20    THE COURT:

21             Without objection, let them be received.

              Page 17

JJ021317.txt

22

23   ...Thereupon, the proceedings had herein were concluded...

24

25

26

27

28

29

30

31

32

15

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877

1                          C E R T I F I C A T E

2

3

4              I, Gina Boudreaux Lee, Official Court

5      Reporter within and for the State of Louisiana,

6      employed as an official court reporter by the 23rd

7      Judicial District Court for the State of Louisiana,
as

8      the officer before whom this testimony was taken, do

9      hereby certify that this testimony was reported by

10     me in the stenotype reporting method complimented

11     with digital recording, was prepared and transcribed

12     by me or under my direction and supervision, and is

13     a true and correct transcript to the best of my
ability

14     and understanding, the foregoing Hearing on Rule

15     to Show Cause for Expedited Trial had herein in
                          Page 18

JJ021317.txt

16    the captioned matter on the 13th day of February,

17    2017, that the transcript has been prepared in

18    compliance with transcript format guidelines

19    required by statute or by rules of the board or by

the

20    Supreme Court of Louisiana.

21        I further certify that I am not an attorney

or

22    counsel for any of the parties; that I am neither

23    related to nor employed by any attorney or counsel

24    connected with this action; nor am I otherwise

25    interested in the outcome of this matter.

26        St. Amant, Louisiana, this 15th day of

27    February, 2017.

28

29

30               ————————————————

31               Gina Boudreaux Lee, C.C.R.

32

16

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877

Page 19

44

FILED
DEC 20 2018
CLERKS OFFICE
CIVIL DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO. 2018-12536      **SECTION: 6**      **DIVISION: L**

**VITA C. CHENET**

**VERSUS**

**COLGATE-PALMOLIVE CO., ET AL.**

FILED: _____      _____

**DEPUTY CLERK**

**PLAINTIFF'S MOTION FOR STATUS CONFERENCE FOR
ISSUANCE OF EXPEDITED TRIAL SETTING AND
SCHEDULING ORDER PURSUANT TO LA. CODE CIV. P. ART. 1573**

**COMES NOW**, Plaintiff, Vita Chenet, who files this Motion for Status Conference for Issuance of

Expedited Trial Setting and Scheduling Order.  In support thereof, Plaintiff respectfully submits the

following:

     According to the Louisiana Code of Civil Procedure, Article 1573:

     The court **shall** give preference in scheduling upon the motion of any party to the action
who presents to the court documentation to establish that the party has reached the age of
seventy years or who presents to the court medical documentation that the party suffers
from an illness or condition because of which he is not likely to survive beyond six months,
if the court finds that the interests of justice will be served by granting such preference.

     Ms. Chenet meets the requirements for an expedited trial setting due to her age (84), AND due to

her diagnosis of malignant pleural mesothelioma.  Ms. Chenet was born on June 5, 1934, and is currently

84 years old.  (See Exhibit A – Vita Chenet's Driver's License).  Additionally, on or about October 26,

2018, after a biopsy was performed at East Jefferson General Hospital, Ms. Vita Chenet  was diagnosed

with malignant pleural mesothelioma, an invariably fatal cancer caused by exposure to asbestos (See

Exhibit B – October 26, 2018 Vita Chenet-Diagnosing Pathology Report).  Plaintiff Vita Chenet suffers

from a terminal illness (malignant mesothelioma) with no known cure and, unfortunately, her prognosis is

poor.  Persons who suffer from mesothelioma generally are not likely to survive beyond six months.  In

fact, most mesothelioma patients survive only 6-12 months after their initial diagnosis of mesothelioma

(See Exhibit C, Affidavit of Dr. Brody).  As such, Ms. Chenet is clearly entitled to preference in the

scheduling of her claims in the interests of justice.

     Plaintiff anticipates that the Defendants will oppose the instant motion and will try to advance the

'discovery is not complete' argument. The Court should not be persuaded by this disingenuous assertion as

this is not the correct application of controlling law and precedent in Louisiana with regard to preferential

trial settings for a living 84-year old mesothelioma Plaintiff, like Ms. Chenet.

     In *Curole, et al. v. Avondale Industries Inc., et al.*, the Fourth Circuit determined that where a party

is not expected to live beyond six months, it is appropriate to set a trial date within six months of filing suit. *See Curole, et al. v. Avondale Industries Inc., et al.*, 798 So.2d 319, 321 (La. App. Ct. 2001). In *Curole,* the Fourth Circuit opined that a trial setting within six months of filing suit comports with the requirements of the L.A.C.C.P, and is in the interests of justice. *Id.* The *Curole* Court stated:

> Both La. C.C.P. arts. 1571 and 1673 include mandatory language by using the word "shall." In *Chamerlain v State, Through Department of Transp. And Development*, 621 So.2d 333 (La. 1993), *writ denied*, 615 So.2d 334 (La. 1993), *reversed on other grounds*, 624 So.2d 874 (La. 1993), *on remand*, 91-1942 (La. App. 1 Cir. 3/11/94), 633 So.2d 871, the First Circuit held that **art. 1571 does not prohibit the setting of a trial date before an answer has been filed so long as an answer has been filed before the trial commences.** La. C.C.P. art. 1573 is an exception to the requirements of La. C. C.P. art. 1571. *Id* at 321.

The Court further held that **discovery need not be completed prior to setting the matter for trial.** *Id.* Notably, the Court in *Curole* reached this conclusion in spite of the defendant's argument that discovery was too extensive and could not possibly be completed by that date. *Id.*

Additionally, the Louisiana Supreme Court recently granted a writ application and ordered the trial court to issue a scheduling order for a 72-year old living mesothelioma plaintiff, and to set the case for trial as soon as possible, no later than approximately eight months from the date of its ruling. ("Pursuant to La. Code Civ. P. art. 1573, the trial court is ordered to schedule the trial at the earliest possible date and in no event later than early 2018.") *Jasmin v. Huntington Ingalls, Inc.*, 2017-0715 (La. 5/19/17), 219 So. 3d 334, 335.

Plaintiff submits that she is entitled to preference in the scheduling of her claims in the interest of justice. Ms. Chenet filed her original petition for damages on December 14, 2018, and she meets the La. C. C. P. art. 1573 requirements for a preferential trial setting due to: 1) her age (84), and, 2) her poor prognosis related to her October 2018 diagnosis of malignant mesothelioma. Counsel for Ms. Chenet represents that all Defendants have been or will soon be served with Plaintiff's Original Petition for Damages, and that anticipated counsel for all of the Defendants have also received courtesy copies of same via email and/or fax. Additionally, the exigent deposition of Ms. Chenet was completed on December 20, 2018. Each of the Defendants was present at Ms. Chenet's deposition, and each was given ample opportunity to cross-examine Ms. Chenet over the course of her three-day-long deposition. Further, discovery is under way as Plaintiff has responded to and distributed master discovery responses to all of the Defendants, including various executed authorizations, which were attached thereto.

WHEREFORE, Plaintiff Vita Chenet respectfully requests that, in the interest of justice, and pursuant to L.A.C.C.P. 1573, this Court grant the instant motion, and set a status conference for issuance of an expedited trial setting and scheduling order as soon as possible, such that Plaintiff Vita Chenet is afforded a reasonable opportunity to see her day in court.

Respectfully submitted,

**THE CHEEK LAW FIRM LLC**

_____

LINDSEY A. CHEEK, LA Bar No. 34484
Bridget B. Truxillo, LA Bar No. 36982
Rubi L. Brown, LA Bar No. 36398
650 Poydras Street, Suite 2310
New Orleans, LA 70130
Telephone:  504-304-4333
Fax:  504-324-0629
LCheek@thecheeklawfirm.com
BTruxillo@thecheeklawfirm.com
RBrown@thecheeklawfirm.com

-And-

**MARTZELL  BICKFORD  &  CENTOLA,
A.P.C.**
Scott R. Bickford, T.A. (#1165)
Spencer Doody (#27795)
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone: (504) 581-9065
Fax: (504) 581-7635

**COUNSEL FOR PLAINTIFF VITA CHENET**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all known counsel of record via one or more of the following methods, in accordance with the Louisiana Code of Civil Procedure: by depositing same in the U.S. Mail, properly addressed and postage prepaid; by Certified Mail; electronic mail; and/or facsimile transmission this the 20th day of December, 2018.

_____
Lindsey A. Cheek

3

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA



CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2018-12536                          SECTION 6                     DIVISION "L"

VITA C. CHENET

VERSUS

COLGATE-PALMOLIVE CO., ET AL

FILED: _____

_____
DEPUTY CLERK

### ORDER

**ON MOTION** of Plaintiff Vita Chenet,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that PLAINTIFF'S MOTION FOR STATUS CONFERENCE FOR ISSUANCE OF AN EXPEDITED TRIAL SETTING AND SCHEDULING ORDER is hereby GRANTED.

**IT IS FURTHERED ORDERED, ADJUDGED AND DECREED** that all parties appear on the _25_ day of _January_, 2019, at _9:00_ o'clock a.m. for a status conference for the issuance of an expedited trial setting and scheduling order.

New Orleans, Louisiana this the _14_ day of _January_ 2019.

_S/ Cynthia B Delgess_

HON. KERN REESE

A TRUE COPY

_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA



4



tabbies

EXHIBIT

A



## ANATOMIC PATHOLOGY
### • • • CONSULTATION REPORT • • •
## EAST JEFFERSON GENERAL HOSPITAL
METAIRIE, LOUISIANA 70011

EJGH

FILED
2018 DEC 21  A 11: 40

PATHOLOGISTS

BARRY W. SMITH, M.D.          EMILE MCKNAIR, M.D.
KELLY N. McGILL, M.D.         CALVIN MARTIN, M.D.

DISTRICT COURT

## Surgical Outpatient Pathology Report

| | | | |
|---|---|---|---|
| Patient Name: | CHENET, VITA C. | | |
| Med. Rec. #: | 4362896 | | |
| DOB: | 6/5/1934 (Age: 84) | Case #: | OP18-6341 |
| Gender: | F | Date Collected: | 10/25/2018 |
| Location: | SDS | Received: | 10/25/2018 |
| Account #: | 43823960860 | Reported: | 10/26/2018 |
| Physician(s): | JACKSON, HENRY   M.D. | | |
| | Henderson, Benjamin R MD | | |

### Final Pathologic Diagnosis
Mediastinal mass, left anterior, CT-guided needle biopsies:
   MALIGNANT MESOTHELIOMA.   SEE NOTE

Note:   The patient has a history of asbestos exposure and has multiple pleural nodules.   A previous pleural fluid (C18-562) was suspicious for malignant mesothelioma.   A panel of immunohistochemical stains (examined with the appropriate controls) was performed on the current biopsy to further evaluate the tumor and the results are as follows:

| | |
|---|---|
| D2-40 | Positive |
| CK5/6 | Positive |
| WT1 | Positive |
| Gata3 | Positive |
| Calretinin | Positive |
| MOC31 | Negative |
| BerEP4 | Negative |
| P63 | Negative |
| TTF-1 | Negative |

This immunohistochemical staining pattern is consistent with the current impression of mesothelioma.

***Electronically Signed Out***
Millet, Kelly N MD

ssv 10/26/2018

### Pre-Op Diagnosis
Mediastinal mass. ? mesothelioma

### Post-Op Diagnosis
Left anterior mediastinal mass.

### Procedure
CT-guided mediastinal mass biopsy.

### Specimen(s) Received
Left anterior mediastinal mass biopsy.

EXHIBIT
**B**

| | | |
|---|---|---|
| CHENET, VITA C. | JACKSON MD/CHENET/Main | Page 1 of 2 |
| | | PERMANENT REPORT |

*FILED*

2018 DEC 21 A 11: 40

CIVIL
DISTRICT COURT

AFFIDAVIT OF DR. ARNOLD R. BRODY, Ph.D.

STATE OF __NC_____

COUNTY OF __Wake____

BEFORE ME, the undersigned authority, personally appeared Arnold R. Brody, who, being by me first duly sworn, on oath deposes and states as follows:

"My name is Arnold R. Brody, I am over 21 years of age, of sound mind, and am in all ways competent to make this Affidavit. I have personal knowledge of the facts stated herein, all of which are true and correct.

My current academic position is **Professor Emeritus, Department of Pathology, Tulane University Medical School.** I am a professor in the Department of Molecular Biomedical Sciences at North Carolina State University. I am a former professor of pathology and vice chairman of the Department of Pathology at Tulane University. I have studied, taught and I currently testify regarding the physiological design and function of the lungs, the effect of asbestos on the lungs and others part of the body, and on the body's defense mechanisms.

I also study, teach and testify about asbestos, the diseases it causes, the progressive, irreversible effects of asbestos disease and the prognosis for an asbestos exposed individual.

It is my professional opinion that mesothelioma is an incurable, progressive and often rapidly fatal disease. Most mesothelioma patients survive only nine (9) to twelve (12) months after their initial diagnosis of mesothelioma."

_____
ARNOLD R. BRODY, Ph.D.

SWORN TO AND SUBSCRIBED BEFORE ME on this the __22nd__ day of __January_____, 2013, to certify which witness my hand and seal of office.

_____
Notary Public in and for The State of __North Carolina__
My Commission expires: __8|29|16__

CHRISTY M. BROWN
Notary Public, North Carolina
Harnett County
My Commission Expires

**EXHIBIT**
tabbies®
*C*

Civil District Court for the Parish of Orleans
**STATE OF LOUISIANA**

No: 2018 - 12536

Division/Section: L-06

CHENET, VITA C.
versus
COLGATE-PALMOLIVE CO. ET AL

Date Case Filed: 12/14/2018

NOTICE OF PRETRIAL CONFERENCE

TO:

Lindsey A Cheek Esq     34484
650 Poydras Street, Suite 2519
New Orleans, LA 70130

Mover to notice all parties no service information attached, rule to show
cause & pretrial conf. are set for January 25/19 @9 :00

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

PLEASE TAKE NOTICE: The above numbered and entitled cause has been fixed for pretrial conference
on January 25, 2019 , at 9:00 o'clock  AM, and appears on the Docket.

New Orleans, Louisiana
January 14, 2019

MINUTE CLERK

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO. 2018-12536       **SECTION: 6**

**VITA C. CHENET**

**VERSUS**

**COLGATE-PALMOLIVE CO., ET AL.**

FILED: _____     _____
                                                     **DEPUTY CLERK**

FILED 2019 JAN 10 P 1: 51 CIVIL DISTRICT COURT

DIVISION: L

**ENTERED RULE DOCKET**

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ISSUANCE OF EXPEDITED TRIAL SETTING AND SCHEDULING ORDER PURSUANT TO LA. CODE CIV. P. ART. 1573

**COMES NOW,** Plaintiff, Vita Chenet, whom respectfully renews and reiterates her previously filed

Motion for Status Conference for Issuance of Expedited Trial Setting and Scheduling Order, and whom

further requests that this Court set this matter for contradictory hearing given the November 9, 2019

letter/correspondence to this Court from Defendants Johnson & Johnson Consumer Inc., and Johnson &

Johnson, whom, despite not citing any authority or basis for such, stated therein that they oppose

Plaintiff's Motion for Status Conference for Issuance of Expedited Trial Setting and Scheduling Order.

In support thereof, Plaintiff respectfully (re-)submits the following:

According to the Louisiana Code of Civil Procedure, Article 1573:

> The court **shall** give preference in scheduling upon the motion of any party to the action who presents to the court documentation to establish that the party has reached the age of seventy years or who presents to the court medical documentation that the party suffers from an illness or condition because of which he is not likely to survive beyond six months, if the court finds that the interests of justice will be served by granting such preference.

Ms. Chenet meets the requirements for an expedited trial setting due to her age (84), AND due to

her diagnosis of malignant pleural mesothelioma. Ms. Chenet was born on June 5, 1934, and is currently

84 years old. (See Exhibit A – Vita Chenet's Driver's License). Additionally, on or about October 26,

2018, after a biopsy was performed at East Jefferson General Hospital, Ms. Vita Chenet was diagnosed

with malignant pleural mesothelioma, an invariably fatal cancer caused by exposure to asbestos (See

Exhibit B – October 26, 2018 Vita Chenet-Diagnosing Pathology Report). Plaintiff Vita Chenet suffers

from a terminal illness (malignant mesothelioma) with no known cure and, unfortunately, her prognosis is

poor. Persons who suffer from mesothelioma generally are not likely to survive beyond six months. In

fact, most mesothelioma patients survive only 6-12 months after their initial diagnosis of mesothelioma

(See Exhibit C, Affidavit of Dr. Brody). As such, Ms. Chenet is clearly entitled to preference in the

scheduling of her claims in the interests of justice.



VERIFIED
JAN 10 2019

Plaintiff anticipates that the Defendants will oppose the instant motion and will try to advance the 'discovery is not complete' argument. The Court should not be persuaded by this disingenuous assertion as this is not the correct application of controlling law and precedent in Louisiana with regard to preferential trial settings for a living 84-year old mesothelioma Plaintiff, like Ms. Chenet.

In *Curole, et al. v. Avondale Industries Inc., et al.*, the Fourth Circuit determined that, where a party is not expected to live beyond six months, it is appropriate to set a trial date within six months of filing suit. *See Curole, et al. v. Avondale Industries Inc., et al.*, 798 So.2d 319, 321 (La. App. Ct. 2001). In *Curole*, the Fourth Circuit opined that a trial setting within six months of filing suit comports with the requirements of the L.A.C.C.P, and is in the interests of justice. *Id.* The *Curole* Court stated:

> Both La. C.C.P. arts. 1571 and 1673 include mandatory language by using the word "shall." In *Chamerlain v State, Through Department of Transp. And Development*, 621 So.2d 333 (La. 1993), *writ denied*, 615 So.2d 334 (La. 1993), *reversed on other grounds*, 624 So.2d 874 (La. 1993), *on remand*, 91-1942 (La. App. 1 Cir. 3/11/94), 633 So.2d 871, the First Circuit held that **art. 1571 does not prohibit the setting of a trial date before an answer has been filed so long as an answer has been filed before the trial commences.** La. C.C.P. art. 1573 is an exception to the requirements of La. C. C.P. art. 1571. *Id* at 321.

The Court further held that **discovery need not be completed prior to setting the matter for trial.** *Id.* Notably, the Court in *Curole* reached this conclusion in spite of the defendant's argument that discovery was too extensive and could not possibly be completed by that date. *Id.*

Additionally, the Louisiana Supreme Court recently granted a writ application and ordered the trial court to issue a scheduling order for a 72-year old living mesothelioma plaintiff, and to set the case for trial as soon as possible, no later than approximately eight months from the date of its ruling. ("Pursuant to La. Code Civ. P. art. 1573, the trial court is ordered to schedule the trial at the earliest possible date and in no event later than early 2018.") *Jasmin v. Huntington Ingalls, Inc.*, 2017-0715 (La. 5/19/17), 219 So. 3d 334, 335.

Plaintiff submits that she is entitled to preference in the scheduling of her claims in the interest of justice. Ms. Chenet filed her original petition for damages on December 14, 2018, and she meets the La. C. C.P. art. 1573 requirements for a preferential trial setting due to: 1) her age (84), and, 2) her poor prognosis related to her October 2018 diagnosis of malignant mesothelioma. Counsel for Ms. Chenet represents that all Defendants have been or will soon be served with Plaintiff's Original Petition for Damages, and that anticipated counsel for all of the Defendants have also received courtesy copies of same via email and/or fax. Additionally, the exigent deposition of Ms. Chenet was completed on December 20, 2018. Each of the Defendants was present at Ms. Chenet's deposition, and each was given ample opportunity to cross-examine Ms. Chenet over the course of her three-day-long deposition. Further, discovery is under way as Plaintiff has responded to and distributed master discovery responses to all of

2

the Defendants, including various executed authorizations, which were attached thereto.

WHEREFORE, Plaintiff Vita Chenet respectfully requests that, in the interest of justice, and pursuant to L.A.C.C.P. 1573, this Court grant the instant motion, and set this case for an expedited trial setting and issue a scheduling order as soon as possible, such that Plaintiff Vita Chenet is afforded a reasonable opportunity to see her day in court.

Respectfully submitted,

THE CHEEK LAW FIRM LLC

LINDSEY A. CHEEK, LA Bar No. 34484
Bridget B. Truxillo, LA Bar No. 36982
Rubi L. Brown, LA Bar No. 36398
650 Poydras Street, Suite 2310
New Orleans, LA 70130
Telephone:  504-304-4333
Fax:  504-324-0629
LCheek@thecheeklawfirm.com
BTruxillo@thecheeklawfirm.com
RBrown@thecheeklawfirm.com

-And-

MARTZELL  BICKFORD  &  CENTOLA,
A.P.C.
Scott R. Bickford, T.A. (#1165)
Spencer Doody (#27795)
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone: (504) 581-9065
Fax: (504) 581-7635

**COUNSEL FOR PLAINTIFF VITA CHENET**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon all known counsel of record via one or more of the following methods, in accordance with the Louisiana Code of Civil Procedure: by depositing same in the U.S. Mail, properly addressed and postage prepaid; by Certified Mail; electronic mail; and/or facsimile transmission this the 10TH  day of January, 2019

Lindsey A. Cheek

3

**A TRUE COPY**

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2018-12536                    SECTION 6                    DIVISION "L"

VITA C. CHENET

VERSUS

COLGATE-PALMOLIVE CO., ET AL

FILED: _____          _____
                                                      DEPUTY CLERK

## RULE TO SHOW CAUSE ON PLAINTIFF'S MOTION FOR AN EXPEDITED TRIAL SETTING PURSUANT TO LA C.C.P. ART. 1573 AND FOR ISSUANCE OF SCHEDULING ORDER

CONSIDERING the foregoing Motion for an Expedited Trial Setting Pursuant to LA C.C.P. Art. 1573 and for Issuance of Scheduling Order, filed on behalf of Plaintiff, Vita C. Chenet:

IT IS HEREBY ORDERED that Defendant(s) appear and show cause on the **25th day of January, 2019 at 9:00 a.m.** why Plaintiff's Motion for Expedited Trial Setting Pursuant to La. C.C.P. Art. 1573 and for Issuance of Scheduling Order should not be granted.

New Orleans, Louisiana this ____ day of _____, 2019.

_____
HON. KERN A. REESE

A TRUE COPY

_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

VERIFIED

4

FILED

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DOCKET NO.: 2018-12536            SECTION: 6            DIVISION: "L"

VITA C. CHENET

VERSUS

COLGATE-PALMOLIVE CO., ET AL

FILED: _____

_____
DEPUTY CLERK

IMERYS TALC AMERICA, INC.'S OPPOSITION TO
PLAINTIFF'S MOTION FOR ISSUANCE OF EXPEDITED TRIAL SETTING AND
INCORPORATED MOTION TO CONTINUE HEARING

NOW INTO COURT, through undersigned counsel, comes Defendant, *Imerys Talc America, Inc. ("ITA"),* who appears solely for the purpose of opposing Plaintiff's Motion for Issuance of Expedited Trial Setting ("Plaintiff's Motion"), and reserves all rights, exceptions, defenses, and affirmative defenses, including objections to personal jurisdiction. Johnson & Johnson and Johnson & Johnson Consumer, Inc. have filed an Opposition to Plaintiff's Motion for Issuance of Expedited Trial Setting, filed on January 10, 2019 and set for hearing on January 25, 2019 (attached hereto as Exhibit "A"). ITA opposes Plaintiff's Motion and hereby adopts Johnson & Johnson and Johnson & Johnson Consumer, Inc.'s Opposition as if copied herein *in extenso,* along with the incorporated Motion to Continue Hearing.

Additionally, in the event Plaintiff's Motion is granted, ITA respectfully suggests that in the interests of justice, the trial date should be set at the earliest, six months from the date of this hearing. At least this much time will be needed for the parties to conduct the necessary fact and expert discovery in order to prepare this unique case for trial. It is unique in that to date, no case involving allegations of asbestos-contaminated talc exposure being the cause of mesothelioma has been tried in Louisiana. In addition, many of the same parties and same counsel, including counsel for Plaintiff, have a previously set trial on June 10, 2019 in Marilyn Rousseau v. American Talc Company, et al, CDC No. 2018-1136 DIV "B", SEC. 5. Furthermore, ITA will be filing very shortly its Exceptions, including an Exception of Lack of Personal Jurisdiction, which if granted will remove ITA from this litigation.

[SIGNATURE PAGE TO FOLLOW]

VERIFIED

Respectfully submitted:

_John D. Person, La. Bar No. 10531_
Lezly L. Petrovich, La. Bar No. 25825
W. Glenn Burns, La. Bar No. 03698
Courtney H. Payton, La. Bar No. 30663
**_AARON & GIANNA, PLC_**
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

**_Attorneys for Imerys Talc America, Inc._**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 22nd day of January, 2019, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States mail, and/or via e-mail transmission.

_John D. Person_

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

2

*FILED*

*2018 JAN 22 P 1:49*

*CIVIL*
*DISTRICT COURT*

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

### STATE OF LOUISIANA

DOCKET NO. 2018-12536          SECTION: 6          DIVISION: L

### VITA C. CHENET

### VERSUS

### COLGATE-PALMOLIVE CO, ET AL

FILED:_____          _____
                                          **DEPUTY CLERK**

### JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED TRIAL AND INCORPORATED MOTION TO CONTINUE HEARING

MAY IT PLEASE THE COURT:

NOW INTO COURT, through undersigned counsel, come Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively, the "Johnson & Johnson Defendants"), who appear solely for the purpose of opposing the pending motion and reserve all objections, exceptions, and defenses. For the reasons more fully set forth *infra*, the Johnson & Johnson Defendants oppose Plaintiff's motion for expedited trial pursuant to Louisiana Code of Civil Procedure Article 1573 and move to continue the hearing due to Plaintiff's failure to properly serve the Rule to Show Cause upon Defendants.

### FACTS AND SUMMARY OF THE ARGUMENT

Plaintiff Vita C. Chenet filed this action against the Johnson & Johnson Defendants and various other defendants on December 14, 2018, alleging that she developed mesothelioma as a result of exposure to asbestos-containing materials mined, produced, processed, designed, manufactured, marketed, supplied, delivered, distributed, tested, purchased, or promoted by the Defendants. Petition, ¶¶ 8-11. Plaintiff filed the instant motion alleging that she is entitled to preference in scheduling trial because she is 84 years old, she has been diagnosed with mesothelioma, and, in general, people suffering from mesothelioma are not likely to survive beyond six months. None of the defendants have been served with notice of the hearing on this motion via the Civil Sheriff or via certified mail, and the record does not show any returns on service.

1

**VERIFIED**

EXHIBIT
*"A"*

This is a complex products liability case asserting novel claims of asbestos-related disease, and pursuant to Louisiana Code of Civil Procedure 1573, Plaintiff's request for preferential trial setting must be tempered by the "interests of justice." While the Johnson & Johnson Defendants are sympathetic to Plaintiff's alleged medical condition and diagnosis, this case is still in its infancy. Defendants have not filed answers yet, and the Johnson & Johnson Defendants were just recently served with the petition on January 4, 2019 – less than two weeks ago.  Moreover, Plaintiff has not provided the Johnson & Johnson Defendants with any authorizations for obtaining medical and other records.[1]

Accordingly, this case is not ripe for trial setting, and Plaintiff's request for expedited trial setting should be denied for the reasons set forth herein.

## LAW AND ARGUMENT

### A. Plaintiff Failed to Properly Serve Defendants With the Rule to Show Cause, and Any Judgment Resulting Therefrom Will Be Null

None of the defendants have been properly served with notice of the hearing on this motion. The Rule to Show Cause does not request service on the defendants via the Civil Sheriff. None of the defendants have been served via the Civil Sheriff or via certified mail, and the record does not show any returns on service.

Article 1313 requires that "if a pleading or order sets a court date, then service shall be made either by registered or certified mail or as provided in Article 1314, or by actual delivery by a commercial courier." La. C.C.P. Art. 1313 (C). Under Article 1314, electronic service is *not* proper service of an Order setting a court date.

"The obvious purpose of Articles 1313 and 1314 is to fulfill the constitutional requirements of due process notice." *Adair Asset Mgmt., LLC/US Bank v. Honey Bear Lodge, Inc.*, 2012-1690 (La. App. 1 Cir. 2/13/14), 138 So.3d 6, 11. Defendants will have been deprived of due process if the hearing proceeds on January 25, 2019.

Failure to effect proper service pursuant to Articles 1313 and 1314 renders a judgment or ruling based on improper service *null*. *Id.* at 11; *see also In re 601 Canal St. Tr.*, 2003-0481 (La. App. 4 Cir. 4/30/03), 847 So.2d 650, 653, citing *White v. White*, 398 So.2d 1257, 1259 (La. App.

---

[1] Plaintiff's motion incorrectly states that medical authorizations have been provided to all Defendants in this action.

4 Cir. 1981). The hearing on Plaintiff's motion should be continued until proper service can be effected. Otherwise, any ruling on the motion for expedited trial will be null.

### B. Plaintiff Misstates the Applicable Law

While Defendants are sympathetic to Plaintiff's alleged medical condition and diagnosis, Plaintiff's age and diagnosis, standing alone, do not entitle her to a preferential trial setting. Louisiana Code of Civil Procedure Article 1573 requires that the prerequisites of age and diagnosis be balanced against the interests of justice. Plaintiff ignores Louisiana Code of Civil Procedure Article 1571, which provides that district court rules *"shall not allow the assignment of ordinary proceedings for trial except after answer filed."* No answers have been filed into the record yet, and service of process has not been effected on a number of the Defendants.

Plaintiff also ignores Civil District Local Rule 9.14, which prohibits a case from being set for trial *until after all exceptions have been disposed of, all defendants have filed answers, and all discovery and depositions have been completed,* or, alternatively, that a sufficient amount of discovery has been completed to allow the parties to select a trial date and pretrial cutoffs. The Johnson & Johnson Defendants were just recently served with the petition on January 4, 2019 – less than two weeks ago. Discovery is in its infancy, as Plaintiff has not yet provided the Johnson & Johnson Defendants with any authorizations for obtaining medical and other records.

Plaintiff glosses over the language in Article 1573 providing that a preference in scheduling may be granted only *"if the court finds that the interests of justice will be served by granting such preference"* (emphasis added). The case that plaintiff cites to support her argument states that the "trial court has the discretion to set the trial date." *Curole v. Avondale Indus., Inc.*, 2001-1808 (La. App. 4 Cir. 10/17/01), 798 So.2d 319, 321 (emphasis added). The facts of *Curole* are not on point here. In *Curole*, the party opposing expedited trial had months during which it could have undertaken discovery. *Id.* Here, Plaintiff only filed her lawsuit one month ago, Plaintiff's deposition was just recently conducted, no physicians have been deposed, and to date, Plaintiff has not furnished the necessary authorizations for the Johnson & Johnson Defendants to commence medical records collection.

Plaintiff also suggests that a one sentence writ grant from the Louisiana Supreme Court in *Jasmin v. Huntington Ingalls, Inc.*, 2017-0715 (La. 5/19/17), 219 So. 3d 334, supports her

position, but she omits key aspects of *Jasmin*'s procedural history. There, a living mesothelioma plaintiff moved for a preferential trial setting on December 6, 2016, and the trial court denied the motion, setting trial for June 11, 2018, about a year and a half after the plaintiff filed her motion.[2] The Louisiana Supreme Court granted the plaintiff's writ application and, based on the facts of that case, directed the trial court to schedule the trial no later than "early 2018", *i.e.*, approximately 13 to 16 months after the plaintiff's motion for preferential trial was filed. *Jasmin v. Huntington Ingalls, Inc.*, 2017-0715 (La. 5/19/17), 219 So. 3d 334. The Supreme Court did not provide reasons for its ruling. *Id.* Thus, *Jasmin* does not require a trial setting any sooner than approximately mid-February to mid-April 2020.

Article 1573 requires a party seeking preferential trial setting on the basis of terminal illness to "present[] to the court medical documentation that the party suffers from an illness or condition because of which [she] is not likely to survive beyond six months[.]" However, while Plaintiff attached a pathology report confirming her mesothelioma diagnosis and a 2013 affidavit from Dr. Arnold Brody *from another case* stating that, in his opinion, most mesothelioma patients survive for nine to twelve months after initial diagnosis, she did not attach any evidence, such as an affidavit from her treating physician or a medical report stating her prognosis, to support her claim that she is not likely to survive beyond six months. Dr. Brody's affidavit, which is inadmissible hearsay pursuant to Louisiana Code of Evidence Article 804(B)(1), does not address *Plaintiff's* diagnosis or anticipated life expectancy *in this case* and is, therefore, irrelevant.

**C.  It is Premature to Set This Case for Trial**

The case is not ready to be set for trial. This is not a soft tissue injury fender bender case. Rather, it is a complex products liability case where the alleged injury is mesothelioma. Extensive medical records acquisition and fact and expert discovery is necessary, and motion practice will be significant. Trial is expected to last 4-8 weeks.

Plaintiff claims to have developed mesothelioma as a result of alleged exposure to asbestos-containing materials mined, produced, processed, designed, manufactured, marketed,

---

[2] *See* Exhibit A, Transcript from February 13, 2017 hearing in *John J. Jasmin, Sr. v. Huntington Ingalls, Inc., et al.*, Docket No. 37,877, 23rd Judicial District Court for the Parish of St. James, State of Louisiana, p. 36, 37.

4

supplied, delivered, distributed, tested, purchased, or promoted by the Defendants. Petition, ¶¶ 8-11. This is not, however, a typical asbestos case. A typical asbestos case involves alleged exposure to products known to contain asbestos because asbestos was an intended component of the product. Plaintiff's allegations in this case are different. Plaintiff claims that she used talcum powder products and that some of those products may have contained asbestos-contaminated talc. Talc is not asbestos. Thus, unlike a traditional asbestos case, Plaintiffs must establish not only the traditional element of exposure to Defendants' products but also that those products were actually contaminated with asbestos.

The petition contains 71 paragraphs spanning over 18 pages, and several paragraphs make specific references to scientific studies, research, and literature, including allegations about regulatory classifications, that will require research and analysis by retained experts. Given the sheer volume of discovery, including medical records acquisition, company document production, depositions of company witnesses, and expert discovery involved in such a complex case, an expedited trial setting is neither practical nor in the interest of justice. Specifically, once medical authorizations are furnished by Plaintiff, medical records collection is likely to span six to twelve weeks, not the least because Plaintiff alleges exposure occurred from 1934 through 2016 – an 82-year timespan. Petition, ¶ 6. Collection of medical records in this complicated product liability case is the fundamental first step that must be undertaken before depositions of fact witnesses and treating physicians proceed. Moreover, because the issue of medical cause will be subject to significant scientific and expert challenges by Defendants, significant time is anticipated for the development of expert witnesses and other expert discovery.

While Plaintiff claims to want her day in court, the Johnson & Johnson Defendants respectfully submit that they are entitled to an opportunity to engage in meaningful discovery in this complex products liability case prior to setting the trial date. Pursuant to Article 1573, Local Rule 9.14, and in the interest of justice, Plaintiff's request for expedited trial should be denied.

## CONCLUSION

It is contrary to the interest of justice to subject Defendants to an expedited trial date that does not allow adequate time to conduct the substantial amount of discovery that will be required to properly prepare for trial. The Johnson & Johnson Defendants respectfully request that

Plaintiff's motion for expedited trial be continued without date due to lack of valid service of the Rule to Show Cause setting this motion for hearing. Alternatively, if the Court elects to set a trial date, the Johnson & Johnson Defendants respectfully request that a realistic date be chosen that allows the parties adequate time to complete meaningful discovery in this complex case.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

BY: _____

KIM E. MOORE (La. Bar No. 18653)
JOHN W. SINNOTT (La. Bar No. 23943)
LEILA A. D'AQUIN (La. Bar No. 18884)
MEERA U. SOSSAMON (La. Bar No. 34797)
CLAIRE A. NOONAN (La. Bar No. 35940)
CARLOS A. BENACH (La. Bar No. 36797)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Fax: (504) 310-2101

*Counsel for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served on all counsel of record by facsimile, electronic mail and/or by United States mail, properly addressed, postage prepaid on this the 17th day of January 2019.

_____
Claire A. Noonan

JJ021317.txt

```
 1
 2                                          -
 3                          23RD JUDICIAL DISTRICT COURT
 4                             PARISH OF ST. JAMES
 5                             STATE OF LOUISIANA
 6
 7
 8
 9
10   JOHN J. JASMIN, SR.                )
                                        )  NO. 37,877
11   VERSUS                             )
                                        )  DIVISION "D"
12   HUNTINGTON INGALLS,                )
     INC., ET AL                        )
13                                      )
14
15
16
17                               THIS MATTER came up on Rule
to
18        Show Cause for Expedited Trial at the St.
          James Parish Courthouse, Convent, Louisiana,
19        before Honorable Jessie M. LeBlanc, judge
          presiding, on Monday, February 13, 2017,
20        commencing at 9:00 a.m.
21
22
23
24
25   B E F O R E :      Gina Boudreaux Lee
                        Certified Court Reporter
26                      State of Louisiana
27
28
29
                        Page 1
```

**EXHIBIT**

**A**

26

JJ021317.txt

30

31

32

1

1                                    APPEARANCES:

2

3

For the Plaintiff, John J. Jasmin, Sr.:

4

5                 MESSRS. BARON & BUDD, PC
                  Attorneys at Law
6                 1515 Poydras Street, Suite 1400
                  New Orleans, Louisiana 70112
7                 BY:   DAVID R. CANNELLA, ESQ.

8   For the Defendant, Huntington Ingalls, Incorporated:

9                 MESSRS. BLUE WILLIAMS, LLP
                  Attorneys at Law
10                3421 North Causeway Boulevard
                  Suite 900
11                Metairie, Louisiana 70002
                  BY:   PATRICK K. SHOCKEY, ESQ.
12

13  For the Defendant, Avondale Shipyard Company:

14                MESSRS. LEE, FUTRELL & PERLES, LLP
                  Attorneys at Law
15                201 St. Charles Avenue, Suite 4120
                  New Orleans, Louisiana 70170
16                BY:   RICHARD M. PERLES, ESQ.

17
    For the Defendant, Amchem, Incorporated and Union
18           Carbide Corporation:

19                MESSRS. KUCHLER, POLK, SCHELL,
                  WEINER & RICHESON, LLC
20                Attorneys at Law
                  1615 Poydras Street, Suite 1300
21                New Orleans, Louisiana 70112
                  BY:    PERREYCLEAR S. LEE, ESQ.
22

23  For the Defendant, McCarty Corporation:

24                MESSRS. SIMON, PERAGINE,
                  SMITH & REDFEARN, LLP
25                Attorneys at Law
                          Page 2

```
                    JJ021317.txt
              1100 Poydras Street, 30th Floor
26            New Orleans, Louisiana 70163
              BY:    JANICE M. CULOTTA, ESQ.
27

28   For the Defendant, Insurers of B&B, Hopeman Interests:

29            MESSRS. COURINGTON, KIEFER & SOMMERS, LLC
              Attorneys at Law
30            616 Girod Street
              New Orleans, Louisiana 70130
31            BY:    JAMES M. MATHERNE, ESQ.

32
```

2

```
1    For the Defendant, Taylor-Seidenbach, Inc.:

2             MESSRS. HAILEY, MCNAMARA,
              HALL, LARMANN & PAPALE, LLP
3             Attorneys at Law
              1 Galleria Boulevard, Suite 1400
4             Metairie, Louisiana 70001
              BY:    RICHARD J. GARVEY, JR., ESQ.
5

6

7    For the Defendant, Goulds Pumps, LLC:

8             MESSRS. MORGAN, LEWIS & BOCKIUS, LLP
              Attorneys at Law
9             1000 Louisiana Street, Suite 4000
              Houston, Texas 77002
10            BY:    LAUREN A. MCCULLOCH, ESQ.

11

12   For the Defendant, Reilly-Benton Company, Inc.:

13            MESSRS. WILLINGHAM, FULTZ & COUGILL, LLP
              Attorneys at Law
14            8550 United Plaza Boulevard
              Suite 702
15            Baton Rouge, Louisiana 70809
              BY:    JAMIE M. ZANOVEC, ESQ.

16

17   For the Defendant, Anco Insulations, Inc.:

18            MESSRS. PUGH, ACCARDO, HAAS,
              RADECKER & CAREY, LLC
19            Attorneys at Law
20            1100 Poydras Street, Suite 3200
              New Orleans, Louisiana 70163-0200
              BY:    DONNA M. YOUNG, ESQ.
21

                    Page 3
```

28

JJ021317.txt

22

For the Defendant, Riley Power, Inc.:

23

24               MESSRS. DEUTSCH, KERRIGAN & STILES, LLP
               Attorneys at Law

25               755 Magazine Street
               New Orleans, Louisiana  70130

26               BY:    BARBARA B. ORMSBY, ESQ.

27

For the Defendant, Crane Co.:

28

29               MESSRS. DOGAN & WILKINSON, PLLC
               Attorneys at Law

30               3900 North Causeway Boulevard
               Suite 1200

31               Metairie, Louisiana  70002
               BY:    ALETA W. BARNES, ESQ.

32

3

1   For the Defendant, Lamorek Insurance Company:

2

3              MESSRS. TAYLOR, WELLONS,
              POLITZ & DUHE, APLC
              Attorneys at Law

4              1515 Poydras Street, Suite 1900
              New Orleans, Louisiana  70112

5              BY:    ADAM D. deMAHY, ESQ.

6

7   ALSO PRESENT:

8              ERIN GROS, COURT'S CLERK

9

10

11

12

13                       Gina Boudreaux Lee,
                        Certified Court

Reporter

14

15

16

Page 4

JJ021317.txt

17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

4

1                                         INDEX
2      Page                               WITNESSES
3      (NONE)
4
5
6
7
8
9
10
11
12

Page 5

JJ021317.txt

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

5
8

1                                        INDEX
2       Page
3       "Plaintiff 1"                    EXHIBITS
            15          Medical Record of John J.
4       "Plaintiff 2"   Jasmin, Sr.
            15          Copy of Birth Certificate
5                       and/or Driver's License of
6                       John J. Jasmin, Sr.

                        Page 6

31

JJ021317.txt

```
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
```

6

 1          MONDAY, FEBRUARY 13, 2017
 2      AT 9:00 A.M. THE HEARING WAS COMMENCED.

Page 7

JJ021317.txt

3

4

5      THE COURT:

6              John Jasmin, Sr. versus Huntington Ingalls. Is

7      everybody here on that?

8      MR. CANNELLA:

9              My name is David Cannella. I'm here for the

10     plaintiff, and I believe everyone is here. I will make a

11     quick check of my roster.

12     THE COURT:

13             Okay. And then I'll come back to you, and we'll

14     take you up.

15     MR. CANNELLA:

16             Thank you.

17     THE COURT:

18             Okay. You're welcome.

19  (RECESS IN THIS MATTER WHILE OTHER MATTERS WERE

20  HEARD.)

21     THE COURT:

22             Let's go back to John Jasmin versus Huntington

23     Ingalls.

24             Were you able to check?

25     MR. CANNELLA:

26             Yes, ma'am, I did check, and it appears that

27     everyone is here.

28     THE COURT:

29             Okay. Let's go ahead and take that up now.

30  (OFF-THE-RECORD DISCUSSION.)

31     THE COURT:

32             Hang on. Is Donna Young here?

7

JOHN J JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
                    Page 8

JJ021317.txt

NO. 37,877

```
1     MS. YOUNG:
2          I'm here.  Thank you, Your Honor.
3     THE COURT:
4          Okay.  All right.  I was just getting a message.
5          Are you all going to designate one person to
6       speak for the defendants?
7     MR. PERLES:
8          I'll be happy to do so, Judge.  I'm Rick Perles --
9     THE COURT:
10         Okay.
11    MR. PERLES:
12         -- for the Avondale interests.  One of our
13       co-counsel, Mr. deMahy went to Donaldsonville, and
14       I know he's on his way.  I don't see him yet.
15    THE COURT:
16         Okay.  If you would like to wait for him, I have
17       several other statuses I can take up before you.
18    MR. CANNELLA:
19         Okay, Your Honor.  Well, and that is the
20       Avondale interest, so --
21    THE COURT:
22         Right.
23    MR. CANNELLA:
24         -- Mr. Perles can speak --
25    THE BAILIFF:
26         Can you keep it down over here?  Ma'am?
27    MR. CANNELLA:
28         -- speak on their behalf.
```

                    Page 9

34

JJ021317.txt

```
29        THE COURT:
30               Okay.
31        MR. PERLES:
32               Why don't we proceed.
```

8

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877

```
1         MR. CANNELLA:
2                Yes.
3         THE COURT:
4                Okay.  All right.  Thank you.
5                Gina, did they all sign in with you?
6         THE REPORTER:
7                I didn't realize.
8         THE COURT:
9                No?  Okay.
10               Erin is going to bring a legal pad down there
11        and ask everybody to sign in so we'll have it for a
12        minute entry, as well as for the transcript.  Okay?
13               All right.  You may proceed.
14        MR. CANNELLA:
15               Good morning, Your Honor.  My name is David
16        Cannella.  I'm here on behalf of the plaintiff, Mr.
17        Jasmin.  I am moving for an expedited trial setting
18        on the basis that Mr. Jasmin has been diagnosed
19        with a terminal illness, mesothelioma,
20        asbestos-related mesothelioma.  In addition, Mr.
21        Jasmin is 72 years old, so we qualify under the
22        statute, 1573, and we pray that the Court set this
23        matter on an expedited basis such that he may have
```
                              Page 10

JJ021317.txt

| | |
|---|---|
| 24 | a reasonable expectation to have his day in court |
| 25 | before he passes away. |
| 26 | THE COURT: |
| 27 | Thank you. |
| 28 | Mr. Perles? |
| 29 | MR. PERLES: |
| 30 | Judge, we anticipate that this case will take |
| 31 | three weeks to try, so while the judge is considering |
| 32 | what the most expeditious date would be to set the |

9

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877

| | |
|---|---|
| 1 | trial, we would anticipate we need 15 days of trial to |
| 2 | complete the matter. |
| 3 | THE COURT: |
| 4 | Okay.  And has the deposition of the plaintiff |
| 5 | been taken? |
| 6 | MR. PERLES: |
| 7 | Yes, it has. |
| 8 | THE COURT: |
| 9 | Okay. |
| 10 | MR. PERLES: |
| 11 | That is, I think, about the only thing that has |
| 12 | happened in discovery.  There is a lot of work to do |
| 13 | on this case.  Those of us who are familiar with the |
| 14 | Avondale based asbestos litigation in Orleans Parish |
| 15 | know the drill pretty well.  But Mr. Jasmin spent |
| 16 | most of his career at Kaiser, which we're less familiar |
| 17 | with, so there's a whole body of coworkers and |

Page 11

JJ021317.txt

18    products and suppliers which is going to require

19    more discovery than we're used to doing in the

20    Orleans Parish cases, and that's part of the reason

21    we think this will be a longer trial than some others.

22  THE COURT:

23       Okay.  And the petition was filed December 1st,

24    2016, correct?

25  MR. CANNELLA:

26       That is correct, Your Honor.  And, Your Honor,

27    despite what counsel for Avondale is saying, in fact

28    this is actually going to be a more streamline version

29    of the trial because there's only two job sites.  It's

30    very different than most cases where there may be

31    10, 15 different job sites.  It's Avondale and Kaiser

32    Gramercy, and that is it.  And so I would represent

10

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,

NO. 37,877

1    to the Court that this is going to be actually safe to

2    say 10 trial days, but it's not going to be a

3    three-week trial.

4  THE COURT:

5       Okay.

6  MR. PERLES:

7       Judge, there are 23 defendants.  Issue has not

8    been joined by most parties yet, and believe me,

9    we're not trying to deny Mr. Jasmin his day in court

10    or unduly delay the proceedings.  I just want to give

11    Your Honor a sense of the scope of the litigation.  It's

12    going to take a while for all these parties to present.

Page 12

JJ021317.txt

13      And even if some of the parties settle because this is
14      under the old law -- it's a virile share liability -- we
15      will have to prove up the fault of any of the settling
16      defendants.  So, to the extent that there were
17      witnesses who are going to testify about certain
18      defendants who may have settled out, we're going to
19      have to page, line those depositions and bring them
20      in and present them to the jury anyway.  It doesn't
21      really speed up the litigation any if there are
22      settlements because everybody's fault is going to
23      have to be put into the record.
24  THE COURT:
25          Thank you.
26          Anyone else wants to speak with regard to the
27  defendants?  Kaiser or anyone?  (No response.)
28  Okay.
29          All right.  Anything else?
30  MR. CANNELLA:
31          No, ma'am.
32

11

    JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
    NO. 37,877

1       THE COURT:
2           Okay.
3       MR. CANNELLA:
4           Thank you.
5       THE COURT:
6           While I am certainly sympathetic to Mr.
                    Page 13

JJ021317.txt

7       Jasmin's illness, his age, and recognizing that his
8       time certainly is limited, and not wanting to deprive
9       him of his day in court, the Court's calendar, one,
10      simply is not -- I recognize that it's supposed to be
11      held in an expedited manner, but for a two-week or
12      three-week trial, it is virtually impossible to do that
13      in a relatively short period of time.  Furthermore, I
14      just think that with the number of defendants that
15      we do have, the discovery that needs to take place,
16      for me to set a trial date at this juncture would be
17      premature to determine that.  I can tell you, looking
18      at my calendar to free up three weeks right now,
19      you're looking at the first part of 2018.  I have a
20      five-week jury trial scheduled in August, a
21      three-week jury trial scheduled in September, and it
22      is jam-packed.
23              What I would like to do is ask that once you've
24      signed in, if you all could discuss amongst
25      yourselves one attorney that can be a contact person
26      for my law clerk, and then that attorney will contact
27      everyone else.  She'll get in touch with plaintiff's
28      attorney, counsel.  We will start looking at some
29      dates that we can possibly work towards with some
30      deadlines as well and certainly try to move it as
31      quickly as we possibly can but without getting ahead
32      of ourselves as well and setting dates, me giving you

12

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,

NO. 37,877

1               three dates and then it's taken away from someone
                                Page 14

39

JJ021317.txt

2       else and we're not ready to go.

3               So, again, I fully understand, and as

4       sympathetic as I am, I just don't see where with this

5       many defendants that this can be tried any sooner

6       than probably January of 2018.  But I'm going to ask

7       you to pick someone amongst yourselves.

8       MR. PERLES:

9               I'll volunteer --

10      THE COURT:

11              You'll do it?

12      MR. PERLES:

13              -- for that duty, Judge.

14      THE COURT:

15              All right.  If you would, whenever you sign in,

16      put your e-mail address and your telephone

17      numbers, and then, that way, my law clerk will have

18      it to be able to communicate with all of you.

19      MR. PERLES:

20              Happy to do it.

21      THE COURT:

22              She'll be in touch with you by the end of the

23      week.

24      MR. CANNELLA:

25              Your Honor, I certainly understand and respect

26      Your Honor's ruling.

27      THE COURT:

28              Yes.

29      MR. CANNELLA:

30              The problem is, is that much like the phrase

31      "it's like herding cats," if we don't set the case for

32      trial, it will not get set for trial and Mr. Jasmin will

                        Page 15

JJ021317.txt

13

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877

1    not have his opportunity in court.  So, I'm asking,
2    and this isn't the type of deal where I'm going back
3    and I'm saying, "Please reconsider," but I'm saying if
4    we don't set this, it's not going to get done.  Please.
5  THE COURT:
6         You're going to get a trial date set.  That's what
7    my law clerk's going to be contacting all of you with,
8    and then I usually back up all of my deadlines from
9    that trial date.  So, you will get a trial date set.
10    okay?
11  MR. CANNELLA:
12         Thank you, Your Honor.
13  THE COURT:
14         All right.  Thank you.
15  MR. PERLES:
16         Okay, Judge.
17  THE COURT:
18         And, Mr. Perles, if you all would submit a
19    judgment to the effect of today's ruling as well, just
20    stating that the motion is denied and we will
21    coordinate via e-mail dates and who's designated as
22    the contact person for you.
23  MR. PERLES:
24         Yes, Judge, I'll submit that.
25  THE COURT:
26         Okay.  Thank you.
27  MR. CANNELLA:
                              Page 16

41

JJ021317.txt

28          Your Honor, just for the record --
29      THE COURT:
30          Yes.
31      MR. CANNELLA:
32          -- please note my objection.

14

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877


1       THE COURT:
2           Your objection is so noted.
3       MR. CANNELLA:
4           And I would also like to offer, file, and
5           introduce the diagnosing medical showing that he
6           was diagnosed with a terminal illness, and to the
7           extent that it hasn't been done, I'm going to
8           supplement the record with a copy of a birth
9           certificate and/or driver's license to show that --
10      THE COURT:
11          Verify the age?
12      MR. CANNELLA:
13          -- he is over 70 years old.
14      THE COURT:
15          No problem.
16          Any objection to those documents being offered
17          into evidence?
18      MR. PERLES:
19          No.
20      THE COURT:
21          Without objection, let them be received.
                    Page 17

42

JJ021317.txt

22
23     ...Thereupon, the proceedings had herein were concluded...
24
25
26
27
28
29
30
31
32

15

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877

1                              C E R T I F I C A T E
2
3
4              I, Gina Boudreaux Lee, Official Court
5      Reporter within and for the State of Louisiana,
6      employed as an official court reporter by the 23rd
7      Judicial District Court for the State of Louisiana,
as
8      the officer before whom this testimony was taken, do
9      hereby certify that this testimony was reported by
10     me in the stenotype reporting method complimented
11     with digital recording, was prepared and transcribed
12     by me or under my direction and supervision, and is
13     a true and correct transcript to the best of my
ability
14     and understanding, the foregoing Hearing on Rule
15     to Show Cause for Expedited Trial had herein in
                            Page 18

43

JJ021317.txt

16    the captioned matter on the 13th day of February,

17    2017, that the transcript has been prepared in

18    compliance with transcript format guidelines

19    required by statute or by rules of the board or by

20    Supreme Court of Louisiana.

21        I further certify that I am not an attorney

22    counsel for any of the parties; that I am neither

23    related to nor employed by any attorney or counsel

24    connected with this action; nor am I otherwise

25    interested in the outcome of this matter.

26        St. Amant, Louisiana, this 15th day of

27    February, 2017.

28

29

30

31             Gina Boudreaux Lee, C.C.R.

32

16

JOHN J. JASMIN, SR. V. HUNTINGTON INGALLS, INC., ET AL,
NO. 37,877

Page 19

44

ATTORNEY'S NAME:    Cheek, Lindsey A 34484
AND ADDRESS:        650 Poydras Street, Suite 2519 , New Orleans, LA 70130

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2018-12536            **DIVISION: L**            **SECTION: 06**

### CHENET, VITA C.

**Versus**

### COLGATE-PALMOLIVE CO. ET AL

## CITATION

TO:      K&B LOUISIANA CORPORATION (D/B/A RITEAID CORPORATION)

ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA, CT
CORPORATION...3867 PLAZA TOWER DRIVE , BATON ROUGE, LA 70816

## YOU HAVE BEEN SUED:

You must either comply with the demand contained in the

Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the
Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15)
days after the service hereof under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New
Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast
Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.
**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the
Parish of Orleans, State of LA December 26, 2018

Clerk's Office, Room 402, Civil Courts        CHELSEY RICHARD NAPOLEON, Clerk of
421 Loyola Avenue                        The Civil District Court
New Orleans, LA                          for the Parish of Orleans
                                     State of LA
                                     by _____
                                     Pierce Moore, Deputy Clerk

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| **Petition for Damages** | **Petition for Damages** |
| ON   K&B LOUISIANA CORPORATION (D/B/A RITEAID CORPORATION) | ON   K&B LOUISIANA CORPORATION (D/B/A RITEAID CORPORATION) |
| THROUGH: | THROUGH: |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and |
| _____ No. _____ | discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said K&B LOUISIANA CORPORATION (D/B/A RITEAID CORPORATION) being absent from the domicile at time of said service. |
| Deputy Sheriff of _____ Mileage: $ _____ | |
| _____ / ENTERED / _____ | Returned the same day |
| _____ / _____ | No. _____ |
| PAPER      RETURN | Deputy Sheriff of _____ |
| SERIAL NO.    DEPUTY    PARISH | |

I made service on the named party through the
CT Corporation

JAN 15 2019

by tendering a copy of this document to
☐ Jeannine Beauregard   ☐ Brenna Beauregard
☐ Alison Reed

*E. Cummins*

Deputy Sheriff, Parish of East Baton Rouge, Louisiana

ORLEANS PARISH
SHERIFF'S OFFICE
2019 JAN -5 A 11: 22

A TRUE COPY

_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

ID: 10091911

Page 1 of 1

VERIFIED
1-31-19 *Jade Scott*

ATTORNEY'S NAME:    Cheek, Lindsey A 34484
AND ADDRESS:    650 Poydras Street, Suite 2519 , New Orleans, LA 70130

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2018-12536          **DIVISION: L**          SECTION: 06

### CHENET, VITA C.

### Versus

### COLGATE-PALMOLIVE CO. ET AL

## CITATION

TO:        COLGATE-PALMOLIVE CO.

         C.T. CORPORATION , 3867 PLAZA TOWER DRIVE, BATON ROUGE, LA 70816

### YOU HAVE BEEN SUED:

You must either comply with the demand contained in the

Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA December 26, 2018

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

CHELSEY RICHARD NAPOLEON, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by
Pierce Moore, Deputy Clerk

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| **Petition for Damages** | **Petition for Damages** |
| ON COLGATE-PALMOLIVE CO. | ON COLGATE-PALMOLIVE CO. |
| THROUGH: | THROUGH: |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said COLGATE-PALMOLIVE CO. being absent from the domicile at time of said service. |
| _____ No. _____ | |
| Deputy Sheriff of | Returned the same day |
| Mileage: $ | _____ No. _____ |
| / ENTERED / | Deputy Sheriff of _____ |
| PAPER / RETURN | |
| SERIAL NO. DEPUTY PARISH | |

I made service on the named party through the

CT Corporation

JAN 15 2019

by tendering a copy of this document to
☐ Jeannine Beauregard   ☐ Brenna Beauregard
☐ Alison Reed

C. Cummins

Deputy Sheriff, Parish of East Baton Rouge, Louisiana

ORLEANS PARISH
SHERIFF'S OFFICE

2019 JAN -5 A II: 22

RECEIVED

VERIFIED

A TRUE COPY

ID: 10091857

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

Page 1 of 1

ATTORNEY'S NAME:    Cheek, L___ y A 34484
AND ADDRESS:    650 Poyd__ Street, Suite 2519 , New Orleans, LA 70130

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2018-12536    DIVISION: L    SECTION: 06

CHENET, VITA C.

Versus

COLGATE-PALMOLIVE CO. ET AL

## CITATION

TO:    IMERYS USA INC

THROUGH:    ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA

CT CORPORATION SYSTEM, 3867 PLAZA TOWER DRIVE, BATON ROUGE, LA 70816

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

Petition for Damages

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default.

## ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF,** I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA December 26, 2018

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

CHELSEY RICHARD NAPOLEON, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA
by
Pierce Moore, Deputy Clerk

---

## SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ _____ served a copy of the within | On this _____ day of _____ served a copy of the within |
| **Petition for Damages** | **Petition for Damages** |
| ON  IMERYS USA INC | ON  IMERYS USA INC |
| THROUGH:  ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA | THROUGH:  ITS REGISTERED AGENT FOR SERVICE OF PROCESS IN LOUISIANA |
| Returned the same day _____ No. _____ | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said IMERYS USA INC being absent from the domicile at time of said service. |
| Deputy Sheriff of _____ Mileage: $ _____ | |
| / ENTERED / | Returned the same day _____ No. _____ |
| PAPER    RETURN | Deputy Sheriff of _____ |
| SERIAL NO.    DEPUTY    PARISH | |

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

ID: 10091861

I made service on the named party through the
CT Corporation

JAN 15 2019

by tendering a copy of this document to
☐ Jeannine Beauregard    ☑ Brenna Beauregard
☐ ☐ Allison Reed

Deputy Sheriff, Parish of East Baton Rouge, Louisiana

VERIFIED
2/1/19

Page 1 of 1

FILED

2019 JAN 10 A 11: 16

DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DOCKET NO.: 2018-12536          SECTION: 6          DIVISION: "L"

VITA C. CHENET

VERSUS

COLGATE-PALMOLIVE CO., ET AL

FILED: _____          _____
                                                      DEPUTY CLERK

## MOTION FOR EXTENSION OF TIME IN WHICH TO FILE
## RESPONSIVE PLEADINGS

On motion of defendant, *Imerys Talc Vermont, Inc.* (improperly named as successor in interest to and fka Luzenac, Inc.)*,* through undersigned counsel, appearing solely for the purpose of obtaining an extension of time within which to file responsive pleadings, and on suggesting to the court that defendant requires additional time to file responsive pleadings herein,

IT IS ORDERED by the court that defendant, *Imerys Talc Vermont, Inc.,* be granted an additional thirty (30) days within which to file responsive pleadings herein.

New Orleans, Louisiana, this ___23___ day of ___January___, 2019.

_____
DISTRICT COURT JUDGE

JUDGE KERN A. REESE

Respectfully submitted:

_____
John D. Person, La. Bar No. 10531
Lezly N. Petrovich, La. Bar No. 25825
W. Glenn Burns, La. Bar No. 03698
Courtney H. Payton, La. Bar No. 30663
*AARON & GIANNA, PLC*
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

*Attorneys for Imerys Talc Vermont, Inc.*

A TRUE COPY

_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

JAN 2 3 2019

VERIFIED

VERIFIED
1·16·19

FILED

2019 JAN 10  A 11: 16

CIVIL
DISTRICT COURT

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 9th day of January, 2019, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States mail, properly addressed, and first class postage prepaid, by delivering it by hand, transmitting same by facsimile and/or e-mail transmission.

John D. Person

FILED

2019 JAN 10  A 11: 16

CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

DOCKET NO.: 2018-12536          SECTION: 6          DIVISION: "L"

**VITA C. CHENET**

**VERSUS**

**COLGATE-PALMOLIVE CO., ET AL**

FILED: _____          _____
                                                            **DEPUTY CLERK**

## REQUEST FOR NOTICE

In accordance with LSA - CCP Article 1572, defendant, *Imerys Talc Vermont, Inc.,* requests that the Court give written notice, by certified mail, at least ten (10) days in advance of the date fixed for the trial or hearing of this case whether on exceptions, motions, rules or the merits.

Defendant requests immediate notice of all orders or judgment, whether interlocutory or final, made or rendered in this case upon the rendition thereof as provided by LSA - CCP Article 1913 and 1914, including notice of judgment, in the event this case be taken under advisement or if the judgment is not signed at the conclusion of the trial. Notice is to be mailed to or served upon *Imerys Talc Vermont, Inc.* through undersigned counsel.

Respectfully submitted:

_____
John D. Person, La. Bar No. 10531
Lezly J. Petrovich, La. Bar No. 25825
W. Glenn Burns, La. Bar No. 03698
Courtney H. Payton, La. Bar No. 30663
**AARON & GIANNA, PLC**
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

*Attorneys for Imerys Talc Vermont, Inc.*

A TRUE COPY

_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS

**VERIFIED**

FILED

2019 JAN 10 A 11: 16

CIVIL
DISTRICT COURT

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 9th day of January, 2019, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States mail, properly addressed, and first class postage prepaid, by delivering it by hand, transmitting same by facsimile and/or e-mail transmission.

John D. Person

FILED

2019 JAN 25  A 11: 50

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DOCKET NO.:  2018-12536          SECTION: 6          DIVISION: "L"

VITA C. CHENET

VERSUS

COLGATE-PALMOLIVE CO., ET AL

FILED: _____          _____
                                                                            DEPUTY CLERK

**MOTION FOR EXTENSION OF TIME IN WHICH TO FILE
RESPONSIVE PLEADINGS**

On motion of defendant, *Imerys USA, Inc.*, through undersigned counsel, appearing solely

for the purpose of obtaining an extension of time within which to file responsive pleadings, and

on suggesting to the court that defendant requires additional time to file responsive pleadings

herein,

IT IS ORDERED by the court that defendant, *Imerys USA, Inc.*, be granted an additional

thirty (30) days within which to file responsive pleadings herein.

New Orleans, Louisiana, this _29_ day of _January_ 2019.

_____
DISTRICT COURT JUDGE
JUDGE KERN A. REESE

Respectfully submitted:

_____
John D. Person, La. Bar No. 10531
Lezly L. Petrovich, La. Bar No. 25825
W. Glenn Burns, La. Bar No. 03698
Courtney H. Payton, La. Bar No. 30663
*AARON & GIANNA, PLC*
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel:  (504) 569-1800
Fax: (504) 569-1801

*Attorneys for Imerys USA, Inc.*

A TRUE COPY
_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

JAN 3 0 2019
VERIFIED

VERIFIED

FILED

2019 JAN 25   A 11: 50

CIVIL
DISTRICT COURT

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the <u>24th</u> day of January, 2019, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States mail, properly addressed, and first-class postage prepaid, by delivering it by hand, transmitting same by facsimile and/or e-mail transmission.

John D. Person

FILED

2019 JAN 25   A 11: 50

CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**DOCKET NO.: 2018-12536**           **SECTION: 6**              **DIVISION: "L"**

**VITA C. CHENET**

**VERSUS**

**COLGATE-PALMOLIVE CO., ET AL**

FILED: _____          _____

                                                          **DEPUTY CLERK**

## REQUEST FOR NOTICE

In accordance with LSA - CCP Article 1572, defendant, *Imerys USA, Inc.,* requests that

the Court give written notice, by certified mail, at least ten (10) days in advance of the date fixed

for the trial or hearing of this case whether on exceptions, motions, rules or the merits.

Defendant requests immediate notice of all orders or judgment, whether interlocutory or

final, made or rendered in this case upon the rendition thereof as provided by LSA - CCP Article

1913 and 1914, including notice of judgment, in the event this case be taken under advisement or

if the judgment is not signed at the conclusion of the trial. Notice is to be mailed to or served

upon *Imerys USA, Inc.* through undersigned counsel.

Respectfully submitted:

_____
John D. Person, La. Bar No. 10531
Lezly L. Petrovich, La. Bar No. 25825
W. Glenn Burns, La. Bar No. 03698
Courtney H. Payton, La. Bar No. 30663
*AARON & GIANNA, PLC*
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

*Attorneys for Imerys USA, Inc.*

A TRUE COPY

_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

VERIFIED

FILED

I 2019 JAN 25  A 11: 50

CIVIL
DISTRICT COURT

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 24th day of January, 2019, served a copy of the

foregoing pleading on counsel for all parties to this proceeding by mailing the same by United

States mail, properly addressed, and first-class postage prepaid, by delivering it by hand,

transmitting same by facsimile and/or e-mail transmission.

John D. Person

FILED

2019 FEB -8 P 6: 45

CIVIL DISTRICT COURT

## CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISANA

CASE NO. *18 -1259*      DIVISION "L"            SECTION 6

*Vita CKenet*

VERSUS

*Colgate - Palmalive*

FILED:_____   CLERK:_____

### JURY DEPOSIT ORDER PURSUANT TO LA.C.C.P.art.1734.1

Demand for trial by jury having been made herein and this matter now being set for trial.

IT IS ORDERED that the party requesting trial by jury deposit with the Clerk of Court cash in the amount of $2,000.00 for the first day of trial and $400.00 for each additional day the trial is expected to last, which sum shall be deposited no later than thirty (30) days prior to trial. Trial is set for the ____9th____ day of __September, 2019__ at 9:00am  *5 weeks*

In the event the case is resolved without the necessity of proceeding to trial by jury, the party depositing the funds shall receive a refund of this deposit as follows:

1.   All of the funds of deposit shall be refunded if the court is notified by written motion filed with the Clerk of Court, more than 30 days in advance of the trial, indicating that the case is compromised or will proceed to a trial by judge;

2.   All but $1,500.00 shall be refunded if the Court is notified by written motion filed with the Clerk Of Court more than 72 hours in advance of trial indicating that the case is compromised or will proceed to trial by judge;

3.   Thereafter, in the event the case does not proceed to trial by jury, the Court shall cast an additional $320.00 as costs for the calling of a venire. And if the trial settles on the day of trial the court shall recover the amount of $2,000.00 .

4.   The above deposit schedule only applies to the calling of a standard venire. In the event that the case requires more potential jurors because of the length of the case or other factors, the court may require an additional deposit for costs as needed.

This Order is supersedes any prior Jury Order Issued in the matter. The Court certifies that a copy of this order has been served upon all counsel of record and/or parties by hand delivery or by mail.

New Orleans,Louisiana, this __26th__ day of __January__, 2019

JUDGE

JUDGE KERN A. REESE

VERIFIED A TRUE COPY          JAN 2 8 2019

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

**Civil District Court for the Parish of Orleans**
**STATE OF LOUISIANA**

No: 2018 - 12536

Division/Section: L-06

CHENET, VITA C.

versus

COLGATE-PALMOLIVE CO. ET AL

Date Case Filed: 12/14/2018

NOTICE OF TRIAL

TO:

```
Lindsey A Cheek Esq      34484
650 Poydras Street, Suite 2519
New Orleans, LA 70130

Mover to notice all parties, scheduling order and all notices
```

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

PLEASE TAKE NOTICE: The above numbered and entitled cause has been fixed for trial
on September 9, 2019 , at 9:00 o'clock  AM, and appears  on the Docket.

New Orleans, Louisiana
January 25, 2019

VERI

MINUTE CLERK

**CASE NO:** 18-12536

**NOTICE WAIVED BY:**

| Print (Attorney's Name) | Bar No. | Phone Number | Party |
|---|---|---|---|
| 1. Spencer Doody * * notification | 27785 | 581-9065 | Plaintiff |
| 2. John D. Person | 10531 | 569-1809 | Imerys Talc Amer. |
| 3. Jeff Siemann | 34765 | 504-525-6802 | K+B |
| 4. Leila A. D'Aquin | 18884 | 504-310-2100 | Johnson & Johnson, JJCI |
| 5. John T. Balhoff, II | 24288 | 504-299-2100 | Colgate-Palmolive Co. |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

FILED

2019 FEB -4 P 1: 09

CIVIL
DISTRICT COURT

**VITA C. CHENET**

versus

**COLGATE-PALMOLIVE COMPANY,**
et al.

FILED:_____

NO. 2018-12536   DIV. "L," SEC. 6

**CIVIL DISTRICT COURT**

**PARISH OF ORLEANS**

**STATE OF LOUISIANA**

_____
**DEPUTY CLERK**

## REQUEST FOR NOTICE

Defendant, Colgate-Palmolive Company, requests the Clerk of Court to give notice to undersigned counsel of the signing of any order or judgment in this matter in accordance with the provisions of Louisiana Code of Civil Procedure articles 1913 and 1914.  Defendant also requests written notice of the trial date set for this matter, or the date set for hearing of any pleadings or motions in this matter, pursuant to Louisiana Code of Civil Procedure article 1572.

_____
JAMES M. GARNER #19589
JOHN T. BALHOFF, II #24288
BRANDON W. KEAY #36528
**SHER GARNER CAHILL RICHTER KLEIN &
  HILBERT, L.L.C.**
909 Poydras Street, Twenty-eighth Floor
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
**ATTORNEYS FOR COLGATE-PALMOLIVE
COMPANY**

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA


VERIFIED

FILED

2019 FEB -4  P 1: 09

### CERTIFICATE OF SERVICE

CIVIL
DISTRICT COURT

I hereby certify that a copy of the above and foregoing has been served on all counsel of

record by e-mail, by facsimile, and/or by depositing same in the United States Mail, properly

addressed and postage prepaid, this 4th day of February, 2019.


JOHN T. BALHOFF II

2

FILED

2019 FEB -4  P 1:09

CIVIL
DISTRICT COURT

| | |
|---|---|
| **VITA C. CHENET** | **NO. 2018-12536   DIV. "L" SEC. 6** |
| versus | **CIVIL DISTRICT COURT** |
| | **PARISH OF ORLEANS** |
| **COLGATE-PALMOLIVE COMPANY,**<br>**et al.** | **STATE OF LOUISIANA** |

**FILED:**_____        _____
                                                                **DEPUTY CLERK**

## MOTION FOR EXTENSION OF TIME

Defendant, Colgate-Palmolive Company, moves this Court for an extension of time of an

additional twenty days, or until and including February 19, 2019, to respond to Plaintiff's Original

Petition for Damages.  Plaintiff's counsel has been contacted and she does not oppose this extension.


_____
JAMES M. GARNER #19589
JOHN T. BALHOFF, II #24288
BRANDON W. KEAY #36528
**SHER GARNER CAHILL RICHTER KLEIN &**
**HILBERT, L.L.C.**
909 Poydras Street, Twenty-eighth Floor
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
**ATTORNEYS FOR COLGATE-PALMOLIVE**
**COMPANY**


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all counsel of

record by e-mail and/or by depositing same in the United States Mail, properly addressed and

postage prepaid, this _4th_ day of February, 2019.


_____
JOHN T. BALHOFF, II

FEB 0 5 2019

**VERIFIED**
FEB 0 4 2019

FILED

2019 FEB -4 ℙ 1:09

CIVIL
DISTRICT COURT

VITA C. CHENET

versus

COLGATE-PALMOLIVE COMPANY,
et al.

FILED:_____

NO. 2018-12536   DIV. "L" SEC. 6

CIVIL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA

_____
DEPUTY CLERK

## O R D E R

Considering the Motion for Extension of Time filed by Defendant, Colgate-Palmolive

Company:

IT IS ORDERED that Defendant be and it is hereby granted an additional twenty days, or

until and including February 19, 2019, to file responsive pleadings to Plaintiff's Original Petition

for Damages.

New Orleans, Louisiana, this _____ day of February, 2019.

_____
J U D G E

JUDGE KERN A. REESE
KERN A. REESE

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

VERIFIED

FILED

2019 JAN 25   A 11: 50

CIVIL DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

DOCKET NO.: 2018-12536          SECTION: 6                    DIVISION: "L"

**VITA C. CHENET**

**VERSUS**

**COLGATE-PALMOLIVE CO., ET AL**

FILED: _____        _____
                                                                    **DEPUTY CLERK**

### MOTION FOR EXTENSION OF TIME IN WHICH TO FILE RESPONSIVE PLEADINGS

On motion of defendant, *Imerys Talc America, Inc.,* through undersigned counsel, appearing solely for the purpose of obtaining an extension of time within which to file responsive pleadings, and on suggesting to the court that defendant requires additional time to file responsive pleadings herein,

IT IS ORDERED by the court that defendant, *Imerys Talc America, Inc.,* be granted an additional thirty (30) days within which to file responsive pleadings herein.

New Orleans, Louisiana, this _____ day of _____ 2019.

_____
**DISTRICT COURT JUDGE**

**JUDGE KERN A. REESE**

Respectfully submitted:

_____
John D. Person, La. Bar No. 10531
Lezly L. Petrovich, La. Bar No. 25825
W. Glenn Burns, La. Bar No. 03698
Courtney H. Payton, La. Bar No. 30663
*AARON & GIANNA, PLC*
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

*Attorneys for Imerys Talc America, Inc.*

**A TRUE COPY**

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

FEB 0 5 2019



VERIFIED

FILED

2019 JAN 25  A 11: 50

CIVIL
DISTRICT COURT

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have on the 24th day of January, 2019, served a copy of the

foregoing pleading on counsel for all parties to this proceeding by mailing the same by United

States mail, properly addressed, and first-class postage prepaid, by delivering it by hand,

transmitting same by facsimile and/or e-mail transmission.

John D. Person

FILED

2019 JAN 25  A 11: 50

CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

DOCKET NO.: 2018-12536          SECTION: 6          DIVISION: "L"

**VITA C. CHENET**

**VERSUS**

**COLGATE-PALMOLIVE CO., ET AL**

FILED: _____          _____
                                                                    **DEPUTY CLERK**

## REQUEST FOR NOTICE

In accordance with LSA - CCP Article 1572, defendant, *Imerys Talc America, Inc.,* requests that the Court give written notice, by certified mail, at least ten (10) days in advance of the date fixed for the trial or hearing of this case whether on exceptions, motions, rules or the merits.

Defendant requests immediate notice of all orders or judgment, whether interlocutory or final, made or rendered in this case upon the rendition thereof as provided by LSA - CCP Article 1913 and 1914, including notice of judgment, in the event this case be taken under advisement or if the judgment is not signed at the conclusion of the trial. Notice is to be mailed to or served upon *Imerys Talc America, Inc.* through undersigned counsel.

Respectfully submitted:

_____
John D. Person, La. Bar No. 10531
Lealy L. Petrovich, La. Bar No. 25825
W. Glenn Burns, La. Bar No. 03698
Courtney H. Payton, La. Bar No. 30663
***AARON & GIANNA, PLC***
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

*Attorneys for Imerys Talc America, Inc.*

A TRUE COPY

_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

VERIFIED

FILED

2019 JAN 25  A 11: 50

CIVIL
DISTRICT COURT

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 24th day of January, 2019, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States mail, properly addressed, and first-class postage prepaid, by delivering it by hand, transmitting same by facsimile and/or e-mail transmission.

John D. Person

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2018-12536                    SECTION: 6                    DIVISION: L

VITA C. CHENET

VERSUS

COLGATE-PALMOLIVE CO., ET AL.

FILED: _____        _____
                                              DEPUTY CLERK

## JUDGMENT

This matter came for hearing in open Court on January 25, 2019, on the Motion for an Expedited Trial Setting Pursuant to La. Code Civ. Proc. Art. 1573 and Issuance of Scheduling Order filed by the Plaintiff, Vita Chenet.

Present in Court were the following:

(a) Spencer Doody for Plaintiff Vita Chenet;

(b) John Person, for Defendant Imerys Talc America, Inc.;

(c) John T. Balhoff, for Defendant Colgate-Palmolive Company;

(d) Leila A. D'Aquin, for Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.;

(e) Jeffrey J. Siemann, for K&B Louisiana Corporation.

Having considered the pleadings, evidence, memoranda, law, and oral argument on the foregoing Motion for an Expedited Trial Setting Pursuant to La. Code Civ. Proc. Art. 1573 and Issuance of Scheduling Order,

IT IS ORDERED, ADJUDGED, AND DECREED that the foregoing Motion for an Expedited Trial Setting Pursuant to La. Code Civ. Proc. Art. 1573 and Issuance of Scheduling Order is **GRANTED** to the extent that it seeks preferential setting of the above-captioned matter, which is set for trial on September 9, 2019.  The Parties will propose a Scheduling Order to the Court.

JUDGMENT RENDERED in open Court at New Orleans, Louisiana on January 25, 2019.



FEB 0 7 2019

JUDGMENT SIGNED in Chambers at New Orleans Louisiana this 8th day of
February, 2019.

_____
HON. KERN A. REESE

**PLEASE SERVE:**

The Plaintiff, Vita Chenet , through counsel:
Spencer Doody (#27795)
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone: (504) 581-9065
Fax: (504) 581-7635

AND

Lindsey A. Cheek
650 Poydras Street; Suite 2310
New Orleans, LA 70130

Defendant, Imerys Talc America, Inc., through counsel:
John D. Person
W. Glenn Burns
Lezly L. Petrovich
Omar K. Mason
Courtney H. Payton
201 St. Charles Avenue, Suite 3800
New Orleans, LA 70170

Defendant, Colgate-Palmolive Company, through counsel:
James M. Garner
John T. Balhoff, II
Brandon W. Keay
909 Poydras Street, Twenty-eighth Floor
New Orleans, LA 70112

J.D. Horton
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Defendant, Johnson & Johnson and Johnson & Johnson Consumer Inc, through counsel:
Kim E. Moore
John W. Sinnott
Leila A. D'Aquin
Meera U. Sossamon
Claire A. Noonan
Carlos A. Benach
400 Poydras Street, Suite 2700
New Orleans, LA 70130

Defendant, K&B Louisiana Corporation, through counsel:
Lambert J. Hassinger, Jr.
Jeffrey J. Siemann
Jonathon Lewis
701 Poydras Street, 40th Floor
New Orleans, LA 70139

A TRUE COPY
_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

VERIFIED

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

FILED

**STATE OF LOUISIANA** 2019 FEB -7 P 2: 16

NO. 2018-12536          **SECTION:** CIVIL DISTRICT COURT **DIVISION: L**

**VITA C. CHENET**

**VERSUS**

**COLGATE-PALMOLIVE CO., ET AL.**

FILED: _____      _____

                                                  **DEPUTY CLERK**

## CERTIFICATE OF COMPLIANCE WITH RULE 9.5, UNIFORM DISTRICT RULES

     I hereby certify that I have complied with Rule 9.5, Uniform District Court Rules by circulating this proposed judgment to counsel of record for all parties and/or self-represented parties by electronic transmission on the _25th__ day of January 2019, and the parties have conferred and agreed upon the judgment.

                  CERTIFIED THIS 6TH DAY OF FEBRUARY 2019. .

                                       Respectfully submitted,

                                       **MARTZELL   BICKFORD   &   CENTOLA, A.P.C.**

                                       _____

                                       Scott R. Bickford, T.A. (#1165)
                                       Spencer Doody (#27795)
                                       338 Lafayette Street
                                       New Orleans, Louisiana 70130
                                       Telephone: (504) 581-9065
                                       Fax: (504) 581-7635

                                       ATTORNEYS FOR PLAINTIFF

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

**VERIFIED**

Civil District Court for the Parish of Orleans
**STATE OF LOUISIANA**

No: 2018 - 12536

Division/Section: L-06

CHENET, VITA C.
versus
COLGATE-PALMOLIVE CO. ET AL

Date Case Filed: 12/14/2018

NOTICE OF SIGNING OF JUDGMENT

TO:

```
Spencer R Doody Esq     27795
338 Lafayette St
New Orleans, LA 70130-4302

John D Person Esq     10531
201 St Charles Avenue, Suite 3800
New Orleans, LA 70170-4967

John T Balhoff Esq     24288
909 Poydra St.
28th Floor
New Orleans, LA 70112-1033

Leila A DAquin Esq     18884
639 Loyola Ave
Ste 26
New Orleans, LA 70113

Jeffrey J Siemann Esq     34765
400 Poydras St Ste 1200
40th Floor
New Orleans, LA 70130
```

**A TRUE COPY**

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

FEB 1 1 2019

In accordance with Article 1913 C.C.P., you are hereby notified that Judgment
in the above entitled and numbered cause was signed on February 8, 2019

New Orleans, Louisiana
February 11, 2019

MINUTE CLERK

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**DOCKET NO.: 2018-12536**            **SECTION: 6**            **DIVISION: "L"**

**VITA C. CHENET**

**VERSUS**

**COLGATE-PALMOLIVE CO., ET AL**

FILED: _____            _____

                                          **DEPUTY CLERK**

**NOTICE OF SUGGESTION OF PENDENCY OF BANKRUPTCY AND AUTOMATIC STAY OF PROCEEDINGS**

PLEASE BE ADVISED that on February13, 2019, Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada Inc. (collectively, the "**Debtors**") commenced bankruptcy cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq.* (the "**Bankruptcy Code**"). The Debtors' chapter 11 cases are now pending before The Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, and are being jointly administered for procedural purposes only under the caption *In re Imerys Talc America, Inc., et al.*, Chapter 11 Case No. 19-10289 (Imerys Talc America, Inc.), No. 19-10291 (Imerys Talc Vermont, Inc.), and No. 19-10292 (Imerys Talc Canada Inc.).

PLEASE BE FURTHER ADVISED that pursuant to Section 362 of the Bankruptcy Code, as of the commencement of the Debtors' chapter 11 cases, the above-captioned action has been automatically stayed as against the Debtor-defendant(s). Section 362 of the Bankruptcy Code provides, in part, that the filing of a petition to commence a chapter 11 case operates as a stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [chapter 11], or to recover a claim against the debtor that arose before the commencement of the case under [chapter 11]" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case…" 11 U.S.C. §§ 362(a)(1) & (6).

PLEASE BE FURTHER ADVISED that additional information regarding the status of the Debtors' chapter 11 cases may be obtained by reviewing the docket of the chapter 11 cases, available electronically at https://ecf.deb.uscourts.gov (PACER login and password required) or free of charge via the website maintained by the Debtors' proposed Claims and Noticing Agent, Prime Clerk, LLC, at https://cases.primeclerk.com/imerystalc, or by contacting counsel for the Debtors: (a) Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, (302) 651-7700 (Attn: Mark D. Collins, Esq., Michael J. Merchant, Esq., and Amanda R. Steele, Esq.) and (b) Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, California 90071 (Attn: Jeffrey E. Bjork, Esq. and Helena G. Tseregounis, Esq.), Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800 Chicago, Illinois 60611 (Attn: Richard A. Levy, Esq.), and Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Attn: George A. Davis, Esq. and Keith A. Simon, Esq.).

Dated: February 21, 2019

Respectfully submitted:

John D. Person, La. Bar No. 10531
Lezly L. Petrovich, La. Bar No. 25825
W. Glenn Burns, La. Bar No. 03698
Courtney H. Payton, La. Bar No. 30663
**AARON & GIANNA, PLC**
A Professional Law Corporation
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

**Attorneys for Imerys Talc America, Inc. and Imerys Talc Vermont, Inc.**

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 21<u>st</u> day of February, 2019, served a copy of the foregoing *Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceedings* on counsel for all parties to this proceeding by mailing the same by United States mail, properly addressed, and first-class postage prepaid, by delivering it by hand, transmitting same by facsimile and/or e-mail transmission.

John D. Person

FILED

2019 FEB 20 P 4: 02

VITA C. CHENET

NO. 2018-12536   DIV. COURT SEC. 6

CIVIL DISTRICT COURT

versus

PARISH OF ORLEANS

COLGATE-PALMOLIVE CO., et al.

STATE OF LOUISIANA

JURY

FILED: _____

_____
DEPUTY CLERK

## ANSWER TO PETITION FOR DAMAGES

Defendant, Colgate-Palmolive Company, in answer to the Petition for Damages ["Petition"]

filed by Plaintiff, Vita C. Chenet, avers as follows:

I.

The allegations of Paragraph 1 are denied for lack of sufficient information to justify a belief

therein.

II.

To the extent the allegations of Paragraph 2 pertain to Colgate, those allegations are admitted.

To the extent the allegations of Paragraph 2 pertain to defendants other than Colgate, those

allegations are denied for lack of sufficient information to justify a belief therein.

III.

The allegations of Paragraphs 3 and 4 are denied.

IV.

To the extent the allegations of Paragraph 5 are directed to Colgate, those allegations are

denied. To the extent those allegations of Paragraph 5 are directed to defendants other than Colgate,

those allegations are denied for lack of sufficient information to justify a belief therein.

V.

To the extent the allegations of Paragraph 6 are directed to Colgate, those allegations are

denied. To the extent the allegations of Paragraph 6 are directed to defendants other than Colgate,

those allegations are denied for lack of sufficient information to justify a belief therein.



## VI.

To the extent the allegations of Paragraph 7 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 7 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## VII.

To the extent the allegations of Paragraph 8 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 8 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## VIII.

To the extent the allegations of Paragraph 9 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 9 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## IX.

To the extent the allegations of Paragraph 10 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 10 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## X.

To the extent the allegations of Paragraph 11 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 11 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## XI.

To the extent the allegations of Paragraph 12 are directed to Colgate, those allegations are denied. To the extent the allegations in Paragraph 12 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## XII.

To the extent the allegations of Paragraph 13 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 13 are directed to defendants other than Colgate,

those allegations are denied for lack of sufficient information to justify a belief therein.

### XIII.

To the extent the allegations of Paragraph 14 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 14 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XIV.

To the extent the allegations of Paragraph 15 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 15 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XV.

To the extent the allegations of Paragraph 16 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 16 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XVI.

The allegations pertaining to the properties of talc in Paragraph 17 are denied for lack of sufficient information to justify a belief therein. The remaining allegations in Paragraph 17 are denied.

### XVII.

In response to Paragraph 18, Colgate admits only that Colgate manufactured Cashmere Bouquet talcum powder, which was formulated to contain nothing but cosmetic-grade talc and perfume as well as anti-caking and antibacterial agents. Cashmere Bouquet did not contain asbestos. To the extent the remaining allegations relate to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein.

### XVIII.

The allegations of Paragraph 19 are denied.

XIX.

To the extent the allegations of Paragraph 20 are directed to Colgate, those allegations are denied. To the extent the allegations in Paragraph 20 are directed to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein.

XX.

To the extent the allegations in Paragraph 21 are directed to Colgate, those allegations are denied. To the extent the allegations in Paragraph 21 are directed to other defendants, those allegations are denied for lack of sufficient information to justify a belief therein.

XXI.

The allegations in Paragraph 22 are directed to defendants other than Colgate and therefore no response is required from Colgate. But to the extent a response is required from Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

XXII.

The allegations in Paragraph 23 are directed to defendants other than Colgate, and therefore no response is required from Colgate. But to the extent a response is required from Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

XXIII.

In response to Paragraph 24, Colgate responds that it began manufacturing Cashmere Bouquet talcum powder for sale in the United States at its plants as early as the early 1870s and continued manufacturing Cashmere Bouquet talcum powder for sale in the United States until the mid-1980s. The Charles Mathieu, Inc. family of companies was the sole supplier of the talc used in Cashmere Bouquet talcum powder from at least 1940 to 1979. The talc that Charles Mathieu, Inc. sold to Colgate was sourced from Societa Talco E Grafite Val Chisone, which mined the talc in the Pinerolo region of Italy. Additionally, Charles Mathieu, Inc. may have supplied Colgate with talc that Colgate used to produce Cashmere Bouquet talcum powder in the United States from sources in Regal, North Carolina from 1968-1970 and from sources in Willow Creek, Montana from 1970-1979. Mathieu and/or its assets were acquired by Cyprus Industrial Minerals Co. as early as 1979,

4

and at the latest, by 1981. In or about 1979, Cyprus Industrial Minerals Co. began supplying Colgate with talc that Colgate used to produce Cashmere Bouquet talcum powder in the United States. Cyprus Industrial Minerals Co. may have supplied talc from the Beaverhead mine in Montana, in addition to the same source in Italy used by Charles Mathieu, Inc. Colgate stopped manufacturing Cashmere Bouquet talcum powder after the mid-1980s. Colgate sold Cashmere Bouquet talcum powder in the United States until 1995. In 1995, Colgate licensed the Cashmere Bouquet product line to The Stephan Company. The remaining allegations of Paragraph 24 are denied.

### XXIV.

The allegations of Paragraph 25 are denied for lack of sufficient information to justify a belief therein.

### XXV.

The allegations of Paragraph 26 are denied for lack of sufficient information to justify a belief therein. Colgate further specifically denies that it manufactured, produced, sold, distributed, and/or supplied talc products that contained tremolite or anthophyllite asbestos.

### XXVI.

The allegations of Paragraph 27 are denied for lack of sufficient information to justify a belief therein.

### XXVII.

The allegations of Paragraph 28 are denied for lack of sufficient information to justify a belief therein.

### XXVIII.

The allegations in Paragraph 29 are denied for lack of sufficient information to justify a belief therein.

### XXIX.

The allegations in Paragraph 30 are directed to defendants other than Colgate, and therefore no response is required from Colgate. But to the extent a response is required from Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XXX.

The allegations of Paragraph 31 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, they are denied. To the extent the allegations of Paragraph 31 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XXXI.

To the extent the allegations of Paragraph 32 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 32 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XXXII.

To the extent the allegations of Paragraph 33 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 33 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XXXIII.

To the extent the allegations of Paragraph 34 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 34 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XXXIV.

To the extent the allegations of Paragraph 35 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 35 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XXXV.

To the extent the allegations in Paragraph 36 are directed to Colgate, Colgate admits that it manufactured Cashmere Bouquet through the mid-1980s and sold Cashmere Bouquet through the mid-1990s. Colgate further admits that in or about 1979, Cypress Industrial Minerals Co. began supplying Colgate with talc that Colgate used to produce Cashmere Bouquet talcum powder in the United States. To the extent the remaining allegations in Paragraph 36 are directed to Colgate, those

allegations are denied.  To the extent the remaining allegations in Paragraph 36 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XXXVI.

The allegations of Paragraph 37 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations pertain to Colgate, those allegations are denied.  To the extent the allegations of Paragraph 37 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XXXVII.

To the extent the allegations of Paragraph 38 are directed to Colgate, those allegations are denied.  To the extent the allegations of Paragraph 38 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XXXVIII.

To the extent the allegations of Paragraph 39 are directed to Colgate, those allegations are denied as written.  To the extent the allegations of Paragraph 39 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XXXIX.

To the extent the allegations of Paragraph 40 are directed to Colgate, those allegations are denied.  To the extent the allegations of Paragraph 40 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

### XL.

The allegations of Paragraph 41 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied.  To the extent the allegations of Paragraph 41 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## XLI.

To the extent the allegations of Paragraph 42 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 42 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## XLII.

The allegations of Paragraph 43 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 43 pertain to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## XLIII.

To the extent the allegations of Paragraph 44 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 44 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## XLIV.

The allegations of Paragraph 45 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 45 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## XLV.

The allegations of Paragraph 46 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 46 pertain to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## XLVI.

The allegations of Paragraph 47 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 47 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## XLVII.

To the extent the allegations of Paragraph 48 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 48 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## XLVIII.

To the extent the allegations of Paragraph 49 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 49 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## XLIX.

To the extent the allegations of Paragraph 50 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 50 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## L.

To the extent the allegations of Paragraph 51 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 51 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## LI.

To the extent the allegations of Paragraph 52 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 52 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LII.

The allegations of Paragraph 53 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 53 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LIII.

The allegations of Paragraph 54 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 54 pertain to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LIV.

The allegations of Paragraph 55 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 55 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LV.

To the extent the allegations of Paragraph 56 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 56 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LVI.

The allegations of Paragraph 57 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 57 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief

therein.

## LVII.

To the extent the allegations of Paragraph 58 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 58 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## LVIII.

To the extent the allegations of Paragraph 59 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 59 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## LIX.

The allegations of Paragraph 60 are denied for lack of sufficient information to justify a belief therein.

## LX.

To the extent the allegations of Paragraph 61 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 61 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## LXI.

To the extent the allegations of Paragraph 62 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 62 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

## LXII. –

The allegations of Paragraph 63 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 63 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LXIII.

The allegations of Paragraph 64 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations pertain to Colgate, they are denied. To the extent the allegations of Paragraph 64 pertain to defendants other than Colgate, no response is required from Colgate. But to the extent a response is required from Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LXIV.

To the extent the allegations of Paragraph 65 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 65 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LXV.

The allegations of Paragraph 66 present legal conclusions to which no response is required. Colgate further responses that the contents of Louisiana Civil Code article 2520 speak for themselves. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 66 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LXVI.

The allegations of Paragraph 67 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 67 pertain to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LXVII.

The allegations of Paragraph 68 present legal conclusions to which no response is required. But to the extent a response is required, and to the extent those allegations are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 68 pertain to defendants

12

other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LXVIII.

To the extent the allegations of Paragraph 69 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 69 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LXIX.

The allegations of Paragraph 70 are denied.

LXX.

The allegations contained in the unnumbered paragraph following Paragraph 70 present a prayer for relief to which no response is required. But to the extent a response is required, those allegations are denied.

LXXI.

To the extent the allegations in Paragraph 71 are directed to Colgate, those allegations are denied. To the extent the allegations of Paragraph 71 are directed to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LXXII.

The allegations of the final unnumbered paragraph of the Petition present a prayer for relief to which no response is required. But to the extent a response is required, and to the extent those allegations pertain to Colgate, those allegations are denied. To the extent the allegations of the final unnumbered paragraph pertain to defendants other than Colgate, those allegations are denied for lack of sufficient information to justify a belief therein.

LXXIII.

Colgate denies for lack of sufficient information to justify a belief therein any allegations of the Petition that have not been previously admitted, qualified, or denied.

13

AND NOW FURTHER answering Plaintiff's Petition, Colgate asserts the following affirmative defenses:

1.

Colgate pleads that at all times it acted with due care and reasonableness under the circumstances.

2.

Colgate pleads that at all times it complied with all applicable laws, regulations, rules, specifications, and standards.

3.

Colgate pleads that it owed no duty to Plaintiff. Alternatively, Colgate did not breach any duty owed to Plaintiff. In the further alternative, any breach of any duty owed by Colgate to Plaintiff was not the proximate cause of Plaintiff's alleged injuries, which are denied.

4.

Colgate pleads that Plaintiff's demands must be reduced due to Plaintiff's failure to mitigate, minimize, or abate any damages allegedly sustained, including, but not limited to, the continued inhalation of other substances despite actual and/or constructive knowledge of detrimental health effects. Further, Plaintiff's injuries, if any, were caused by substances other than asbestos.

5.

Colgate pleads that to the extent Plaintiff is allowed to recover damages, which is denied, such damages were caused by the fault and/or negligence of others for whom Colgate is not responsible, including, but not limited to, any responsible person named or not named as a party in this action. Colgate also avers that it is entitled to indemnity and/or contribution from all responsible defendants named in Plaintiff's Petition, and from any other responsible persons for any sums Colgate must pay to Plaintiff based on the negligence and/or fault of those other persons, or alternatively, for a reduction in any amount Colgate must pay to Plaintiff to the extent of the negligence and/or fault of any other party.

6.

Colgate alternatively pleads that the damages allegedly sustained by Plaintiff result, in whole or in part, from the contributory fault, comparative fault, and/or assumption of the risk of Plaintiff, persons acting on her behalf, other parties to this action, and/or nonparties to this action and/or the agents, servants, employees, representatives, and/or independent contractors of the foregoing persons or entities. Colgate avers that it is entitled to a reduction of any amount it may pay to Plaintiff to the extent of any such contributory fault, comparative fault, and/or assumption of the risk.

7.

Colgate further alternatively pleads that the damages allegedly sustained by Plaintiff were caused by the negligence and/or fault of persons with whom Plaintiff has settled her claims. Colgate is entitled to an off-set or reduction of any judgment rendered against it by the percentage of fault or virile share of all persons or entities with whom Plaintiff may have reached settlement.

8.

Colgate pleads accord and satisfaction, discharge, release, res judicata, collateral estoppel, informed consent, and/or offset as affirmative defenses to Plaintiff's claims.

9.

Colgate pleads that Plaintiff's demands are barred by the passage of time, have prescribed, and/or are perempted.

10.

Colgate pleads that Plaintiff's claims are barred by principles of equity, including, but not limited to, laches, unclean hands, waiver, equitable estoppel, legal estoppel, and judicial estoppel.

11.

Colgate pleads that Plaintiff has failed to join all parties necessary for a just adjudication pursuant to Louisiana Code of Civil Procedure article 641.

12.

Colgate pleads that Plaintiff has stated no cause of action nor any right of action against Colgate.

13.

Colgate denies that Plaintiff is entitled to any relief against Colgate sought in her Petition.

14.

Colgate pleads that it has no liability for the claims asserted by Plaintiff because the incidents claimed by Plaintiff directly and proximately resulted from an Act of God, a *force majeure* (for example, that the incidents resulted from natural and ordinary diseases of life), an intervening and superseding cause, and/or acts, omissions, and other fault of third parties, including Plaintiff, over whom Colgate had no control, right of control, or duty to control, and for which neither responsibility nor liability can be imputed or imposed. Plaintiff's alleged damages were, are, and will be solely and directly caused by such forces, causes, acts, omissions, and fault of third parties for whom Colgate is neither responsible nor liable. Such intervening and superseding causes include the fault of Plaintiff, her employer, and other third parties, who owed a duty to Plaintiff and over whom Colgate had no control, right of control, or duty to control. Colgate could neither anticipate nor reasonably foresee such superseding conduct, which was the sole actual cause of the injuries allegedly sustained by Plaintiff. Those injuries, if any, did not result in any way from acts, omissions, or conduct of any kind on the part of Colgate.

15.

Colgate pleads that Plaintiff's demands are subject to a setoff for any and all amounts received by Plaintiff pursuant to federal and/or state compensation laws.

16.

Colgate asserts all available defenses relating to limitations of awards, caps on recovery, and set-offs.

17.

Colgate denies that it is liable jointly, severally, and/or *in solido* with any other party, whether named or unnamed, and denies that it is liable for the fault of any party, whether named or unnamed.

16

18.

Colgate pleads that any alleged damages arose solely as a result of pre-existing medical conditions, causes, injuries, or exposures that are completely unrelated to Plaintiff's alleged exposure to asbestos-containing products.

19.

Colgate pleads that it cannot be held liable for the claims asserted by Plaintiff based on theories of market share liability or enterprise liability.

20.

Colgate denies that the theories of strict liability and strict products liability apply to Plaintiff's claims.

21.

Colgate pleads that it did not mine, manufacture, design, sell, supply, distribute, test, inspect, evaluate, package, market, furnish, store, transport, ship, process, import, convert, compound, handle, use, install, remove, disturb, dispose of, warrant, possess, have custody of, and/or have control of, and was not involved in the chain of any such activities relating to, the asbestos-containing products or materials to which Plaintiff alleges she was exposed. Those products or materials and/or any asbestos contained therein were mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of, warranted, possessed, and/or controlled by third parties over whom Colgate had no control, right of control, or duty to control.

22.

Colgate denies that Plaintiff ever used any of Colgate's products. Alternatively, Plaintiff used Colgate's products after Plaintiff's examination, approval, and acceptance of such products.

23.

Colgate pleads that any products, and any warnings, information, and safety equipment relating to such products, found to have been mined, manufactured, designed, sold, supplied,

distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of, warranted, possessed, and/or controlled by Colgate were adequate, appropriate, and free of defect or defective condition.  Further, any such warnings, information, and safety equipment were in conformity with government standards, and therefore are presumed to be free of any defect or defective condition.

24.

Colgate pleads that any products alleged to be at issue in this litigation that are alleged to be related in any manner to Colgate were at all times reasonably fit and suitable for the purposes for which they were intended, and Colgate denies that any products with which it is allegedly associated were in any way defective for the uses for which they were intended.  Any damages allegedly sustained by Plaintiff directly and proximately resulted from misuse, abuse, material modification, and/or alteration of Colgate's products by third parties over whom Colgate had no control, right of control, or duty to control.  Any such misuse, abuse, material modification, and/or alteration of those products was not reasonably foreseeable by Colgate.

25.

Colgate pleads that any products that are alleged to be related to Colgate were not defective or unreasonably dangerous because any alleged risk to users of such products was not known, and thus the alleged risk of harm was not reasonably foreseeable.  Under applicable law, Colgate is under no duty to warn of a prospective risk of harm in the absence of knowledge, actual or constructive, of the alleged risk in question.  Further, none of the alleged injuries or damages was foreseeable at the time of the acts and omissions alleged by Plaintiff.

26.

Colgate pleads that the utility of any products mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of, warranted, possessed, and/or controlled by it outweigh the risk allegedly involved, and therefore

18

Plaintiff's claims are barred.

27.

Colgate pleads that, at all material times herein, the state of medical and industrial art was such that there was no generally accepted or recognized knowledge of the potential health hazards associated with the use of any of Colgate's products. Further, any and all products mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of, warranted, possessed, and/or controlled by Colgate conformed to the then-existing state of the art with respect to such mining, manufacture, design, sale, supply, distribution, testing, inspection, evaluation, packaging, marketing, furnishing, storage, transportation, shipping, processing, importation, conversion, compounding, handling, use, installation, removal, disturbance, disposal, warranting, possession, custody, and/or control, including with respect to any warning requirement. Colgate had no knowledge or reason to know of any alleged risks associated with asbestos, any alleged risks associated with asbestos-containing products, any alleged asbestos contamination of cosmetic-grade talc, and/or alleged asbestos contamination of consumer talcum powder products during the periods complained of by Plaintiff. Moreover, the existence of any alternative design was not known or knowable to Colgate from the then-existing reasonably available scientific and technological knowledge. In the alternative, any such alternative design was not feasible.

28.

Colgate pleads that each and every claim asserted by Plaintiff, to the extent the claim pertains to Colgate, is preempted, in whole or in part, by the applicable state and/or federal statutes, rules, standards, and/or regulations.

29.

Colgate pleads that each and every claim asserted by Plaintiff, to the extent the claim pertains to Colgate, is preempted by the Federal Food, Drug, and Cosmetics Act ("FFDCA"), 21 U.S.C. §§ 301-399(f), in that the United States Food and Drug Administration ("FDA") has primary and

19

exclusive jurisdiction over the safety of cosmetic talc-containing products and primary and exclusive

jurisdiction to determine whether any warning must accompany cosmetic talc-containing products.

The FDA has ruled, on multiple occasions, that cosmetic grade talc is a safe substance when used

as intended and further has ruled that manufacturers need not provide any warnings on, or in

connection with the sale of, cosmetic grade talc-containing products.

30.

Colgate pleads that each and every claim asserted by Plaintiff, to the extent the claim pertains

to Colgate, is subject to the FDA's primary jurisdiction.  Consequently, each and every claim, to the

extent it pertains to Colgate, should be dismissed or stayed pending further FDA review of whether

any warning must accompany, or other restrictions must be placed upon the manufacture and sale

of, a cosmetic talc-containing product.

31.

Colgate pleads that each and every claim asserted by Plaintiff, to the extent the claim pertains

to Colgate, is an unauthorized and improper attempt to privately enforce a claim under the FFDCA,

21 U.S.C. §§ 301-399(f).

32.

Colgate pleads that any product mined, manufactured, designed, sold, supplied, distributed,

tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed,

imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of,

warranted, possessed, and/or controlled by Colgate was free of defect, was of merchantable quality,

and was fit for the uses and purposes for which it was intended.

33.

Colgate pleads that it gave no special warranties, either express or implied, to Plaintiff or to

anyone acting on Plaintiff's behalf.  Further, to the extent that Plaintiff alleges any claim based upon

a breach or breaches of express or implied warranties (allegations which Colgate specifically denies),

such claim is barred because at no time did Colgate enter into any contract with Plaintiff, who was

not in privity of contract with Colgate, and Plaintiff failed to give timely and adequate notice of any

20

alleged breach.

34.

Alternatively, Colgate pleads that if there were express or implied warranties, which is denied, Plaintiff and anyone acting on her behalf were not within the scope of any such alleged warranties.

35.

In the further alternative, Colgate pleads that if there were express or implied warranties, Colgate did not breach such warranties.

36.

In the further alternative, Colgate pleads that if there were express or implied warranties, the remedy for any breach of any such warranties was limited to the replacement of materials. Further, Plaintiff's claims, if any, for breach of warranty are excluded by Colgate's disclaimers of warranties and limitations of remedies.

37.

In the further alternative, Colgate pleads that any warranties, express or implied, have been fully satisfied.

38.

Colgate denies that it made any representations to Plaintiff. Alternatively, Plaintiff did not rely on any representations by Colgate.

39.

Colgate pleads that Plaintiff and anyone acting on her behalf were not third-party beneficiaries with reference to any alleged warranties, express or implied.

40.

Colgate denies that any talcum powder product that it mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of, warranted, possessed, had custody of, and/or controlled was defectively designed

21

because the manufacturing specifications for Colgate's talcum powder products did not include asbestos.

41.

Colgate denies that any product that it mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of, warranted, possessed, had custody of, and/or controlled had a defect in construction or composition because Colgate's products, at the time they left Colgate's control, conformed to Colgate's specifications and/or performance standards, as well as otherwise identical Colgate products.

42.

Colgate pleads that it did not fail to provide an adequate warning about any product that it mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of, warranted, possessed, had custody of, and/or controlled. Alternatively, at the time Colgate products left Colgate's control, those products did not possess a characteristic that may cause damage. In the further alternative, if Colgate products possessed a characteristic that may cause damage, Colgate used reasonable care to provide an adequate warning of such characteristic and its danger, which danger is denied, to users and handlers of the products. In the further alternative, if Colgate failed to provide an adequate warning, which is denied, any characteristic of Colgate products that rendered them unreasonably dangerous did not exist at the time the products left Colgate's control. In the further alternative, if an inadequate warning about any Colgate products was provided, any characteristic of those products that rendered them unreasonably dangerous resulted from alterations or modifications that Colgate could not have reasonably anticipated.

22

43.

In the further alternative, Colgate pleads that it was not required to provide adequate warnings about its products because they are not dangerous to an extent beyond what would be contemplated by the ordinary user or handler of the products, with the ordinary knowledge common to the community as to the products' characteristics. In the further alternative, the user or handler of any such product already knew or reasonably should be expected to have known of the characteristic of the product that may cause damage and the danger of such characteristic. In the further alternative, at no time after any such product left Colgate's control did Colgate acquire knowledge of any characteristic of the product that may cause damage or knowledge of the danger of such a characteristic, nor would Colgate have acquired such knowledge had it acted as a reasonably prudent manufacturer. Additionally, Colgate pleads that it acted at all times in a reasonably prudent manner. Moreover, in the further alternative, if Colgate did acquire knowledge, or reasonably should have acquired knowledge, of a dangerous characteristic of any such product, Colgate did not subsequently fail to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product. In the further alternative, if Plaintiff incurred damage due to a dangerous characteristic of any product, at the time the product left Colgate's control, Colgate did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the characteristic that caused the damage or the danger of such characteristic.

44.

Colgate pleads that it did not make any express warranty about any product that it mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of, warranted, possessed, had custody of, and/or controlled, including, but not limited to, any warranty regarding the product's nature, material, or workmanship. Alternatively, if Colgate made an express warranty, which is denied, the product is not unreasonably dangerous because it conforms to the express warranty. In the further alternative, any express

warranty did not induce Plaintiff or any other person or entity to use the product.  In the further alternative, Plaintiff's damage, if any, was not proximately caused because any express warranty about the product was true.

45.

Colgate pleads that any damage arose from uses of products by Plaintiff and/or persons acting on Plaintiff's behalf that Colgate could not have reasonably anticipated.

46.

Colgate pleads that its products are not unreasonably dangerous *per se*, including because the Federal Drug Administration has never required the manufacturers of cosmetic talcum powder to include a warning label on the product indicating any asbestos-related risk, and has never prohibited the sale of cosmetic talcum powder products.

47.

Colgate pleads that if Plaintiff was exposed to any asbestos-containing product mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of, warranted, possessed, and/or controlled by Colgate, which is denied, then the amount of any asbestos fibers that may have been released into the air was *de minimis*, well below government standards, and not a substantial contributing factor to any asbestos-related disease that Plaintiff may have developed.

48.

Colgate denies that any material or product it, or one of its suppliers, mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed of, warranted, possessed, had custody of, and/or controlled was defective, unreasonably dangerous, or negligently mined, manufactured, designed, sold, supplied, distributed, tested, inspected, evaluated, packaged, marketed, furnished, stored, transported, shipped, processed, imported, converted, compounded, handled, used, installed, removed, disturbed, disposed

24

of, warranted, possessed, and/or controlled.  Alternatively, if there was any defect or negligence on the part of Colgate, which is denied, Colgate nonetheless is not liable because it justifiably relied upon the inspections of its suppliers and certifications provided by those suppliers that the cosmetic grade talc furnished to Colgate was free of asbestos-contamination.

49.

Colgate pleads that to the extent Plaintiff and/or persons acting on her behalf were and/or are smokers and/or consumers of tobacco products, such intentional and/or negligent conduct is the sole cause, or alternatively, a proximate or producing cause and contributing factor, of Plaintiff's alleged damages.

50.

Colgate pleads that Plaintiff is not entitled to punitive damages against Colgate.

51.

Alternatively, Colgate pleads that unless liability for punitive damages and the appropriate amount of punitive damages are each established by clear and convincing evidence under Louisiana law, any award of punitive damages would violate Colgate's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and the Louisiana Constitution.  Further, any award of punitive damages without proof of every element beyond a reasonable doubt would violate Colgate's rights under Amendments IV, V, VI, VII, and XIV to the United States Constitution and under analogous provisions of the Louisiana Constitution.

52.

Colgate pleads that any liability based on legal doctrines prior to the date such doctrines were adopted in Louisiana violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

53.

Plaintiff fails to state a cause of action for fraud and/or fraudulent concealment because Plaintiff fails to plead same with particularity.

54.

Plaintiff's claims are barred, in whole or in part, due to spoliation of evidence and/or the failure to preserve evidence necessary to the determination of the claims.

55.

Except to the extent specifically admitted or modified herein, Colgate denies each and every allegation, statement, and characterization in Plaintiff's Petition against Colgate and demands strict proof.

56.

To the extent consistent with its Answer, Colgate incorporates by reference all other defenses raised or to be raised by any other defendant in this action.

57.

Colgate expressly reserves its right to reevaluate and/or assert additional defenses upon discovery and review of additional documents and information and upon the development of other pertinent facts.

**REQUEST FOR JURY TRIAL**

Colgate demands a trial by jury.

WHEREFORE, Colgate prays that its Answer and affirmative defenses be deemed good and sufficient and that, after due proceedings be had, there be judgment rendered in favor of Colgate and against Plaintiff, dismissing Plaintiff's demands with prejudice and at her cost.  Further, Colgate prays for all other general and equitable relief as the nature of this case may permit.  Colgate also demands a trial by jury as to all claims.

_____
JAMES M. GARNER #19589
JOHN T. BALHOFF, II #24288
BRANDON W. KEAY #36528
**SHER GARNER CAHILL RICHTER KLEIN &**
**  HILBERT, L.L.C.**
909 Poydras Street, Twenty-eighth Floor
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
**ATTORNEYS FOR COLGATE-PALMOLIVE**
**COMPANY**


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served on all counsel of

record by e-mail, by facsimile, and/or by depositing same in the United States Mail, properly

addressed and postage prepaid, this _20th_ day of February, 2019.


_____
JOHN T. BALHOFF, II


A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

27

FILED

2019 MAR 11 P 03:46

Page 1 of 2

CIVIL

DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2018-12536      SECTION: 6      DIVISION: L

VITA C. CHENET

VERSUS

COLGATE-PALMOLIVE CO., ET AL.

FILED: _____      _____

                                                DEPUTY CLERK

## MOTION AND ORDER FOR DISMISSAL WITHOUT PREJUDICE

**NOW INTO COURT**, through undersigned counsel, comes plaintiff, Vita C. Chenet, who hereby moves this Honorable Court for an order of dismissal, dismissing all claims of plaintiff, *without prejudice*, as against Imerys USA, Inc., each party to bear its own respective costs. It is recognized that plaintiff has specifically reserved her rights against all other defendants, solidary obligors, and other persons and/or entities named or not named herein.

**IT IS ORDERED, ADJUDGED AND DECREED,** that all claims of plaintiff, Vita C. Chenet, as against Imerys USA, Inc., are hereby dismissed, *without prejudice*, each party to bear its own costs, and specifically reserving to plaintiff all rights to prosecute claims and/or actions against *all* other defendants, solidary obligors, and other persons and/or entities named or not named herein.

New Orleans, Louisiana, this _____ day of _____, 2019.

_____
JUDGE

**JUDGE KERN A. REESE**

Respectfully submitted,

**THE CHEEK LAW FIRM**

_____
Lindsey A. Cheek (LSBA No. 34484)
Bridget B. Truxillo (LSBA No. 36982)
Jeanne L. St. Romain (LSBA No. 36035)
650 Poydras Street, Suite 2310
New Orleans, Louisiana 70130
Telephone: (504) 304-4333

E-Filed

ALL COSTS PAID AS TO
defendant named individually
THIS ___ DAY OF March 20 19
_____
DEPUTY CLERK

SHERIFFS COSTS PAID
_____
DEPUTY CLERK

VERIFIED
Ellen Chillnick
3-19-19

A TRUE COPY
_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

FILED

2019 MAR 11 P 03:46

CIVIL

DISTRICT COURT

Facsimile: (504) 324-0629

and

**MARTZELL, BICKFORD & CENTOLA**
Scott R. Bickford, T. A (LSBA No. 1165)
Spencer R. Doody (LSBA No. 27795)
338 Lafayette Street
New Orleans, Louisiana 70130
Tel: (504) 581-9065
Fax: (504)581-7635

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent to all known counsel of record via E-Mail, Facsimile and/or by placing same in the United States mail, postage prepaid and properly addressed this 11th day of March, 2019.

Lindsey A Cheek

E-Filed

FILED

2019 MAR 18  P 02:46

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2018-12536                    SECTION: 6                    DIVISION: L

VITA C. CHENET

VERSUS

COLGATE-PALMOLIVE CO., ET AL.

FILED: _____        _____
                                              DEPUTY CLERK

### FIRST SUPPLEMENTAL AND AMENDED PETITION FOR DAMAGES FOR WRONGFUL DEATH AND SURVIVAL CLAIMS WITH INCORPORATED MOTION FOR LEAVE

COMES NOW Plaintiff-Decedent Vita C. Chenet, by and through the undersigned counsel, who respectfully moves the Court for leave to file this *First Supplemental and Amended Petition for Wrongful Death and Survival Action* and represents as follows:

Plaintiff wishes to supplement and amend the Original Petition for Damages by adding the following paragraphs:

72.    Plaintiff-Decedent, Vita C. Chenet, died on or about February 20, 2019, as a result of her asbestos-related mesothelioma, leaving the following statutory survivors and wrongful death beneficiaries:

A.  Wayne Anthony Chenet, an adult resident of the State of Louisiana, and the surviving son and statutory heir of Vita C. Chenet, deceased;

B.  Henry Engler Chenet III, an adult resident of the State of Louisiana, and the surviving son and statutory heir of Vita C. Chenet, deceased;

73.    Made Plaintiffs herein and substituted in Plaintiff-Decedent Vita C. Chenet's stead and that each are the above named statutory survivors for the purpose of pursuing the survival action on behalf of Plaintiff-Decedent Vita C. Chenet.

74.    Plaintiffs, Wayne Anthony Chenet and Henry Engler Chenet III, assert wrongful death claims, on their individual behalves, for the damages each has suffered as a direct result of the death of their mother Vita C. Chenet.

75.    Plaintiffs allege all wrongful death damages allowed by Louisiana law, including but not limited to the following, to-wit:

A.    The conscious physical pain, suffering and mental anguish sustained by the Decedent and Plaintiffs (past, present and future);

B.    The physical impairment suffered by Plaintiff-Decedent (past, present and future);

1

E-Filed

FILED

2019 MAR 18   P 02:46

CIVIL

DISTRICT COURT

C.   Funeral and Burial expenses;

D.   Loss of consortium, love, affection, services and society;

E.   Loss of quality of life, and;

F.   All damages caused by witnessing intimately the suffering of their father.

To the extent that certain matters, claims, and/or parties have been dismissed in the captioned case, Plaintiffs do not re-urge those claims, allegations, and/or matters that have been the subject of joint or consent orders/judgements and/or motions to dismiss. Plaintiffs reiterate all matters contained in the Original Petition for Damages against all defendants including the prayer of their original petition as though set forth at length herein.

WHEREFORE, Plaintiff-Decedent Vita C. Chenet prays that the Original Petition for Damages be supplemented and amended in the above particulars, and that, after due proceedings are had, there be judgment herein in favor of Plaintiffs in appropriate amounts to be determined by the fact finder, said judgments against all defendants, jointly, severally, and *in solido*, said amounts to bear legal interest from the date of judicial demand until paid, for all costs of these proceedings, and for all general and equitable relief.

Respectfully submitted,

**THE CHEEK LAW FIRM LLC**

Lindsey A. Cheek, Bar No. 34484
Bridget Truxillo, Bar No. 36982
Jeanne St. Romain, Bar No. 36035
650 Poydras Street, Suite 2310
New Orleans, LA 70130
Telephone: 504-304-4333
Fax:  504-324-0629
LCheek@thecheeklawfirm.com
BTruxillo@thecheeklawfirm.com
JStromain@thecheeklawfirm.com

**-AND-**

**MARTZELL, BICKFORD & CENTOLA**
SCOTT R. BICKFORD, T. A (#1165)
SPENCER R. DOODY (#27795)
338 Lafayette Street
New Orleans, Louisiana 70130
Tel: (504) 581-9065
Fax: (504)581-7635

**COUNSEL FOR PLAINTIFFS**

2

E-Filed

**FILED**

2019 MAR 18   P 02:46

CIVIL

DISTRICT COURT

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all known counsel of record via one or more of the following methods, in accordance with the Louisiana Code of Civil Procedure: by depositing same in the U.S. Mail, properly addressed and postage prepaid; by Certified Mail; electronic mail; and/or facsimile transmission this the 18th day of March, 2019.

_____

Lindsey A. Cheek

3

E-Filed

FILED

2019 MAR 18   P 02:46

CIVIL

DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO. 2018-12536                SECTION: 6                DIVISION: L

**VITA C. CHENET**

**VERSUS**

**COLGATE-PALMOLIVE CO., ET AL.**

FILED: _____        _____
                                        **DEPUTY CLERK**

**FIRST AMENDED PETITION FOR DAMAGES**
**FOR WRONGFUL DEATH AND SURVIVAL CLAIMS AND INCORPORATED MOTION**
**FOR LEAVE**

**ORDER**

The Court having reviewed Petitioner's Motion for Leave to file her First Amended Petition for

Damages, GRANTS said Motion. It is further, ORDERED, ADJUDGED AND DECREED that

Petitioner may file their First Amended Petition for Damages.

SO ORDERED this the ____ day of _____, 2019.

_____
HON. KERN REESE

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

4

E-Filed

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

DOCKET NO. 2018-12536              SECTION: 6                    DIVISION: L

**VITA C. CHENET**

**VERSUS**

**COLGATE-PALMOLIVE CO., ET AL.**

FILED:_____

                                          _____
                                          **DEPUTY CLERK**

## MOTION TO VACATE TRIAL SETTING

NOW INTO COURT, through undersigned counsel, come Johnson & Johnson and Johnson & Johnson Consumer Inc., Defendants herein, who submit this Motion to Vacate the Order Setting this matter for trial on September 9, 2019, as follows:

Plaintiff, Vita Chenet, filed suit on December 11, 2018, and on December 21, 2018, filed a motion seeking a preferential trial setting. Defendants respectfully opposed the motion as premature, as issue had not been joined and discovery was in its infancy, such that Defendants did not believe the "interests of justice" standard for a preferential setting was satisfied by a motion filed just ten days after the suit was initiated. At the hearing on Plaintiff's motion held on January 25, 2019, this Court ruled that, in view of Ms. Chenet's age and terminal diagnosis, a preferential setting was warranted, noting that if Ms. Chenet passed prior to the trial date, the change in circumstance would warrant reconsideration of the early trial date.

On February 25, 2019, Plaintiff's counsel advised Defendants that Ms. Chenet had passed away on February 20, 2019. A copy of her obituary is attached hereto as Exhibit A. On March 19, 2019, a Supplemental and Amended Petition with Incorporated Motion for Leave was filed, naming Ms. Chenet's survivors as plaintiffs.

In light of these changed circumstances, occurring less than four weeks after the ruling granting a preferential setting, defendants submit that the Order setting this case for trial should be


VERIFIED

vacated and this matter should not be set for trial until issue has been joined, preliminary matters

disposed of, and discovery completed or substantially completed.

Respectfully Submitted:

IRWIN FRITCHIE URQUHART & MOORE LLC

KIM E. MOORE (La. Bar No. 18653)
JOHN W. SINNOTT (La. Bar No. 23943)
LEILA A. D'AQUIN (La. Bar No. 18884)
MEERA U. SOSSAMON (La. Bar No. 34797)
CLAIRE A. NOONAN (La. Bar No. 35940)
CARLOS A. BENACH (La. Bar No. 36797)
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101
Counsel for Defendants Johnson & Johnson and
Johnson & Johnson Consumer Inc.

## RULE 10.1 CERTIFICATE OF CONFERENCE

I, the undersigned party or attorney, certify to the court as follows:

Mr. Doody, counsel for Plaintiffs, advised that he opposes the motion as written and

Defendants therefore request that the motion be set for contradictory hearing.

Certified this 25TH day of March, 2019.

Leila A. D'Aquin

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 25TH day of March, 2019, served a copy of the
foregoing pleading on counsel for all parties to this proceeding via e-mail.

Leila A. D'Aquin

2

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DOCKET NO. 2018-12536          SECTION: 6          DIVISION: L

VITA C. CHENET

VERSUS

COLGATE-PALMOLIVE CO., ET AL.

FILED:_____

_____
DEPUTY CLERK

### RULE TO SHOW CAUSE

**CONSIDERING** the foregoing Motion to Vacate Trial Setting filed by Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc.;

**IT IS HEREBY ORDERED** that Plaintiff show cause on the **31** day of **May**, 2019 at **9:00** o'clock a.m./p.m. why the motion should not be granted and why the Defendants should not be awarded attorneys' fees and court costs associated with preparing, filing, and arguing this motion.

New Orleans, Louisiana this **1** day of **April**, 2019.

_____
~~JUDGE KERN REESE~~
**Alfred Parker, Minute Clerk**
**Division "L"**
BY ORDER OF THE COURT

**PLEASE SERVE:**

*Plaintiffs, Ms. Chenet's survivors, through their counsel of record:*
Scott R. Bickford, T.A.
Spencer R. Doody
**MARTZELL, BICKFORD & CENTOLA**
338 Lafayette Street
New Orleans, LA 70130
Tel: (504) 581-9065
Fax: (504) 581-7635

and



A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

VERIFIED

Lindsey A. Cheek
Bridget B. Truxillo
Jeanne L. St. Romain
650 Poydras Street, Suite 2310
New Orleans, LA 70130
Tel: (504) 304-4333
Fax: (504) 324-0629

*Counsel for K&B Louisiana Corporation*
Lambert J. Hassinger, Jr.
Jeffrey J. Siemann
Jonathan Lewis
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras Street, 40th Floor
New Orleans, LA 70139
Tel:  (504) 525-6802
Fax: (504) 525-2456

*Counsel for Colgate-Palmolive Co.*
John T. Balhoff, II
Sher Garner Cahill Richter Kelin & Hilbert, L.L.C.
909 Poydras Street, Suite 2800
New Orleans, LA 70112
Tel: (504) 299-2100

*Counsel for Imerys Talc America, Inc. and Imerys Talc Vermont, Inc.*
John D. Person
Lezly L. Petrovich
W. Glenn Burns
Courtney H. Payton
**AARON & GIANNA, PLC**
201 St. Charles Avenue, Suite 3800
New Orleans, LA 70170
Tel: (504) 569-1800
Fax: (504) 569-1801

**Vita Carnaggio Chenet(1934 - 2019)**

Vita Carnaggio Chenet went to be with her Lord and Savior on Wednesday, February 20, 2019 at the age of 84. She was married for 42 years to the late Henry E. Chenet, Jr. Daughter of the late Camille Carnaggio and Mary Perniciaro Carnaggio. She was also preceded in death by her sister, Caroline St. Pierre, and two brothers, Frank Carnaggio and Camille Carnaggio, Jr. Vita is survived by her two beloved sons, Henry E. Chenet, III (Maria) and Wayne A. Chenet; her step granddaughter, Jaclyn Sanchez; her step great-grandson, Alexander Sanchez; her sister-in-laws: Mimi Bienvenu, Joyce Ingrassia, and Trudy Carnaggio; as well as many loving nieces, nephews, great nieces and nephews, cousins, and friends. She will be loved and missed by all who knew her. Vita was born on June 5, 1934 and raised in Belmont, LA. She was a resident of Metairie, LA for the past 61 years. She was a graduate of Lutcher High School class of 1952. She was a registered nurse for 42 years graduating from Hotel Dieu School of Nursing in 1955. She loved helping others. She was a member of Faithful Word Assembly for 37 years and is now in the presence of her Lord and Savior she loved and served so faithfully. The family would like to give special thanks for the wonderful and loving care of Vita to Vital Link Home Health and her nurse, Margaret, the staff at Heart of Hospice and her nurse, Jennifer, and her personal caregivers: Bri, Mimi, Wanda, and Nina who she loved very much. The family would like to thank her church family at Faithful Word Assembly for their love and prayers. She also wanted to express her personal thanks to all of her friends for their love and support during her illness. Family and friends are invited to attend the Funeral Services at Garden of Memories Funeral Home and Cemetery, 4900 Airline Drive in Metairie, LA on Saturday, March 2, 2019. Visitation will begin at 10:00 am with a service starting at 12:00 noon followed by interment. Online condolences may be offered at www.gardenofmemoriesmetairie.com.

**Funeral Home**
**Garden of Memories Funeral Home**
4900 Airline Drive Metairie, LA 70001
(504) 833-3786
**Published in The Times-Picayune from Feb. 27 to Mar. 1, 2019**

